**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Jason J. Kilborn, | |
| Plaintiff, | Case No.: 1:22-cv-00475 |
| v. | Judge John Z. Lee |
| Michael Amiridis, Caryn A. Bills, Julie M. Spanbauer, Donald Kamm, and Ashley Davidson, | Magistrate Judge Sheila M. Finnegan |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

John F. Kennedy (jkennedy@taftlaw.com)
Elizabeth E. Babbitt (ebabbitt@taftlaw.com)
Paul J. Coogan (pcoogan@taftlaw.com)
Elizabeth A. Winkowski (ewinkowski@taftlaw.com)
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Dr., Suite 2800
Chicago, IL 60601
Phone: (312) 527-4000
Fax:  (312) 527-4011

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... i

BACKGROUND ........................................................................................................ 2

LEGAL STANDARD ................................................................................................. 4

ARGUMENT .............................................................................................................. 5

    I.    All of Kilborn's Official-Capacity Claims Are Barred by the
        Eleventh Amendment................................................................................. 5

        A.    The *Ex Parte Young* exception does not apply because
                Kilborn does not seek prospective relief for ongoing
                violations of federal law............................................................. 6

        B.    Kilborn's official-capacity state law claims are barred by the
                Eleventh Amendment, regardless of the relief sought. ............... 7

    II.    All of Kilborn's State Law Claims Against Defendants in their
        Individual Capacities Should Be Dismissed Because the Illinois
        Court of Claims Has Exclusive Jurisdiction Over Such Claims........................... 8

    III.    Kilborn's Constitutional Claims Fail Because He Does Not
        Attribute the Alleged Constitutional Deprivations to Any Particular
        Defendant and Does Not State a Claim Under the First and Fifth
        Amendments. ........................................................................................... 11

        A.    Kilborn fails to state claims against defendants in their
                individual capacities for constitutional violations under
                Section 1983............................................................................. 11

        B.    Kilborn fails to state a claim for violation of the First
                Amendment................................................................................ 12

            1.    Kilborn's First Amendment retaliation claim fails
                    because his statements were not made as a private
                    citizen, nor were they on a matter of public concern.................... 12

                a.    Kilborn's statements were not made as a
                        private citizen.................................................... 12

                  b.    Kilborn's speech did not deal with a matter of
                        public concern. ................................................... 14

            2.    Kilborn fails to state a First Amendment claim based
                    on compelled speech. .................................................. 15

        C.    Kilborn fails to state a procedural due process claim. ............................. 16

    IV.    Kilborn Cannot State a Claim Based on a Violation of the University
        of Illinois Statutes. ................................................................................. 17

V. Kilborn Cannot Sustain a Claim for Defamation or False Light Because He Does Not Allege the Substance, Speaker, or Publication of Any "False" Statement, and with Respect to False Light, He Fails to Allege Defendants Acted with Actual Malice. ................................................. 18

  A. The defamation and false light claims fail because Kilborn fails to identify the substance, speaker, or publication of any "false" statement. ..................................................................... 19

  B. Kilborn's false light claim should also be rejected because he does not adequately allege actual malice. ........................................... 20

  C. Both claims fail because the statements Kilborn purports to challenge are substantially true. .............................................. 21

VI. Kilborn's IIED Claim Fails Because He Does Not Adequately Allege "Extreme and Outrageous" Conduct or Severe Emotional Distress. ...................................................................................................... 23

CONCLUSION ................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aames Cap. Corp. v. Peterson*,
 96-cv-6073, 1997 WL 102527 (N.D. Ill. Mar. 4, 1997) ..............................................3

*Balder v. Meeder*,
 No. 19-CV-7928, 2021 WL 1172243 (N.D. Ill. Mar. 29, 2021).................................6

*Battle v. Alderen*,
 No. 14-CV-1785, 2015 WL 8330103 (N.D. Ill. Dec. 9, 2015).................................17

*Benning v. Bd. of Regents of Regency Univs.*,
 928 F.2d 775 (7th Cir. 1991) ..............................................................................5, 8, 9

*Bhalero v. Ill. Dep't of Fin. and Prof'l Regulations*,
 No. 11-CV-7558, 2012 WL 5560887 (N.D. Ill. Nov. 15, 2012) ...............................7

*Bogie v. Rosenberg*,
 705 F.3d 603 (7th Cir. 2013) ....................................................................................3

*Bowman v. Jones Coleman*,
 No. 21-CV-3015, 2021 WL 6113205 (N.D. Ill. Dec. 25 2021).................................6

*Brooks v. Ross*,
 578 F.3d 574 (7th Cir. 2009) ............................................................................21, 25

*Brown v. Chicago Bd. of Educ.*,
 824 F.3d 713 (7th Cir. 2016) ..................................................................................13

*Bryant v. Gardner*,
 587 F. Supp. 2d 951 (N.D. Ill. 2008) .....................................................................13

*Calderone v. City of Chicago*,
 979 F.3d 1156 (7th Cir. 2020) ..................................................................................4

*Coleman v. Cnty. of Cook*,
 No. 10-CV-2388, 2011 WL 2647891 (N.D. Ill. June 22, 2011)...............................12

*Doe 1 v. Marshall*,
 367 F.Supp. 3d 1310 (M.D. Ala. 2019) ..................................................................15

*Dubinsky v. United Airlines Master Exec. Council*,
 303 Ill. App. 3d 317, 708 N.E.2d 441 (Ill. App. Ct. 1999)....................................19

i

*Eilenfeldt v. United C.U.S.D. #304 Bd. of Educ.*,
   No. 12-CV-04029, 2013 WL 12248080 (C.D. Ill. Mar. 25, 2013)..........................................23

*Ent. Software Ass'n v. Blagojevich*,
   404 F. Supp. 2d 1051 (N.D. Ill. 2005) ...................................................................................15

*Esparza v. S.R. Barnum, Inc.*,
   No. 19-CV-06231, 2021 WL 1784755 (N.D. Ill. May 5, 2021)..............................................19

*Feldman v. Bahn*,
   12 F.3d 730 (7th Cir. 1993) ...................................................................................................5

*Fisher v. Lexington Health Care, Inc.*,
   188 Ill. 2d 455, 722 N.E.2d 1115 (1999) ..........................................................................17, 18

*Freeman v. Univ. of Ill. at Chicago*,
   No. 17-CV-1776, 2018 WL 701282 (N.D. Ill. Jan. 29, 2018)..................................................5

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006)...........................................................................................................12, 13

*Glob. Relief Found., Inc. v. New York Times Co.*,
   390 F.3d 973 (7th Cir. 2004) ................................................................................................22

*Gondeck v. A Clear Title & Escrow Exch.*,
   LLC, No. 11-CV-6341, 2012 WL 5200091 (N.D. Ill. Oct. 22, 2012)....................................21

*Graham v. Commonwealth Edison Co.*,
   318 Ill. App. 3d 736, 742 N.E.2d 858 (Ill. App. Ct. 2000)....................................................24

*Green v. Mansour*,
   474 U.S. 64 (1985)............................................................................................................6, 7

*Green v. Rogers*,
   234 Ill. 2d 478, 917 N.E.2d 450 (2009) ................................................................................18

*Hardeman v. Curran*,
   933 F.3d 816 (7th Cir. 2019) ................................................................................................4

*Harden v. Bd. of Trs. E. Ill. Univ.*,
   No. 12-CV-2199, 2013 WL 6248500 (C.D. Ill. Dec. 2, 2013).................................................7

*Harriston v. Chicago Trib. Co.*,
   992 F.2d 697 (7th Cir. 1993) ................................................................................................24

*Hatcher v. Bd. of Trs. of S. Ill. Univ.*,
   829 F.3d 531 (7th Cir. 2016) ................................................................................................13

*Healy v. Vaupel*,
133 Ill. 2d 295, 549 N.E.2d 1240 (1990) ..............................................................9

*Howell v. Millersville Univ. of Penn.*,
283 F. Supp. 3d 309 (E.D. Penn. 2017) ...............................................................14

*Jackson v. Ill. Dept. of Comm. & Econ. Opportunity*,
No. 17-CV-3106, 2019 WL 293377 (C.D. Ill. Jan. 23, 2019) ...............................10

*Judicial Watch, Inc. v. King*,
No. 23-CV-800, 2014 WL 12755049 (S.D. Ind. May 13, 2014)..............................7

*Keen v. Bluestar Energy Servs., Inc.*,
No. 11-CV-7754, 2012 WL 1118215 (N.D. Ill. Mar. 30, 2012)............................20

*Kluge v. Brownsburg Comm. Sch. Corp.*,
432 F. Supp. 3d 823 (S.D. Ind. 2020) ..................................................................14

*Kolegas v. Heftel Broad. Corp.*,
154 Ill. 2d 1, 607 N.E.2d 201 (1992) ...............................................18, 19, 20, 23

*Kroll v. Bd. of Trs. of Univ. of Ill.*,
934 F.2d 904 (7th Cir. 1991) .................................................................................5

*LaRiviere v. Bd. of Trs. of S. Ill. Univ.*,
No. 16-CV-1138, 2017 WL 706331 (S.D. Ill. Feb. 2, 2017)...................................6

*Loizon v. Evans*,
No. 18-CV-2759, 2020 WL 5253852 (N.D. Ill. Sept. 3, 2020) ............................24

*Ludlow v. Nw. Univ.*,
79 F. Supp. 3d 824 (N.D. Ill. 2015) ...............................................................19, 21

*McGrath v. Fahey*,
126 Ill. 2d 78, 533 N.E.2d 806 (1988) ..........................................................23, 25

*MCI Telecomms. Corp. v. Ill. Bell. Tel. Co.*,
222 F.3d 323 (7th Cir. 2000) .................................................................................5

*McReynolds v. Merrill Lynch & Co.*,
694 F.3d 873 (7th Cir. 2012) .................................................................................4

*Muzikowski v. Paramount Pictures Corp.*,
322 F.3d 918 (7th Cir. 2003) ...............................................................................18

*Osundairo v. Geragos*,
447 F. Supp. 3d 727 (N.D. Ill. 2020) ...................................................................19

*Palka v. Shelton*,
623 F.3d 447 (7th Cir. 2010) ...................................................................................16

*Pennhurst State School & Hosp. v. Halderman*,
465 U.S. 89 (1984) .................................................................................5, 7, 8

*Pippen v. NBC Universal Media, LLC*,
No. 11-CV-8834, 2012 WL 12903167 (N.D. Ill. Aug. 2, 2012) ...........................21

*Puppala v. Will Cnty. Comm. Health Ctr.*,
No. 09-CV-6804, 2010 WL 3893847 (N.D. Ill. Sept. 30, 2010) ...................12, 14

*Richards v. U.S. Steel*,
869 F.3d 557 (7th Cir. 2017) ...................................................................................24

*Riley v. Nat'l Fed'n of the Blind of N.C.*,
487 U.S. 781 (1988) .................................................................................15

*Rumsfeld v. Forum for Academic Instit. Rights, Inc.*,
547 U.S. 47 (2006) .................................................................................15

*Santana v. Kempfer*,
No. 13-CV-1229, 2013 WL 6670560 (S.D. Ill. Dec. 18, 2013) ...........................12

*Sanville v. McCaughtry*,
266 F.3d 724 (7th Cir. 2001) ...................................................................................11

*Seith v. Chicago Sun-Times, Inc.*,
371 Ill. App. 3d 124, 861 N.E.2d 1117 (Ill. App. Ct. 2007)...........................19, 20

*Snyder v. Phelps*,
562 U.S. 443 (2011) .................................................................................14

*Soo Line R. Co. v. St. Louis Sw. Ry. Co.*,
125 F.3d 481 (7th Cir. 1997) ...................................................................................21

*Terry v. Burke*,
589 F.Supp. 853 (N.D. Ill. 1984) ...........................7

*Thomas v. Coach Outlet Store*,
No. 16-CV-3950, 2017 WL 386656 (N.D. Ill. Jan. 27, 2017)...........................24

*Turpin v. Koropchak*,
567 F.3d 880 (7th Cir. 2009) ...........................9

*Upadhya v. Langenberg*,
834 F.2d 661 (7th Cir. 1987) ...........................17

*Wozniak v. Adesida*,
  932 F.3d 1008 (7th Cir. 2019) ...............................................................13

*Ex Parte Young*,
  209 U.S. 123 (1908).............................................................................5, 6

**Statutes**

42 U.S.C. § 1983.........................................................................................11

110 ILCS 305/1 .............................................................................................1

705 ILCS 505/8.............................................................................................8

Univ. of Ill. Stat. Art. X, § 2 ..............................................................17, 18

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Jason J. Kilborn,

      Plaintiff,

      v.

Michael Amiridis, Caryn A. Bills, Julie
M. Spanbauer, Donald Kamm, and
Ashley Davidson,

      Defendants.

Case No.: 1:22-cv-00475

Judge John Z. Lee

Magistrate Judge Sheila M. Finnegan

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

In his first amended complaint ("FAC"), Plaintiff Jason J. Kilborn ("Kilborn") brings six counts against current and former employees of the University of Illinois Chicago (the "University")[1], where Kilborn is currently employed as a law professor. Kilborn names as Defendants: (1) Michael Amiridis, University Chancellor; (2) Julie Spanbauer, Interim Dean of the University's law school; (3) Caryn Bills, Associate Chancellor of the University's Office for Access and Equity ("OAE"); (4) Donald Kamm, OAE Director; and (5) Ashley Davidson, a former Title IX and Equity Specialist for OAE. Kilborn asserts constitutional claims for violations of his First and Fifth Amendment rights (Counts I and III), as well as state-law claims for "violation of the University of Illinois Statutes," defamation, false light, and intentional infliction of emotional distress ("IIED") (Counts II, IV, V, and VI). Kilborn purports to sue Defendants "in both their official and personal capacities," but makes no distinction regarding the capacity in which each Defendant is named for each count. Defendants assume, for purposes of this Motion, that they are

---

[1] The University of Illinois Chicago is a part of the University of Illinois system. The Board of Trustees of the University of Illinois is body corporate and politic of the State of Illinois and is the formal name of the University legal entity. *See* 110 ILCS 305/1.

all being named in both capacities as to each count. Kilborn also attributes little conduct to any particular Defendant, and instead makes sweeping allegations against "Defendants" and "OAE" in general, making it impossible to distinguish which claims are attributed to which Defendant.

There are three principal grounds on which the FAC should be dismissed in its entirety. First, the six counts brought against Defendants in their official capacities should be dismissed with prejudice because they are barred by the Eleventh Amendment. Second, to the extent Kilborn sues Defendants in their individual capacities, the state-law claims (Counts II, IV, V, and VI) should be dismissed because they arise from alleged actions taken within the scope of Defendants' employment with the University, and are therefore claims against the University that belong exclusively in the Illinois Court of Claims—not federal court. Third, the individual-capacity claims based on alleged constitutional violations (Counts I and III) should be dismissed with prejudice because they are not adequately pleaded and cannot be cured. Kilborn's First Amendment claim fails because he was not speaking as a private citizen or on a matter of public concern, and his Fifth Amendment claim fails because he does not allege a deprivation of a cognizable property interest. For all these reasons, and others, the Court should dismiss the FAC in its entirety.

## **BACKGROUND**

According to Kilborn, this case "arises from a single final examination question" in which he used redacted racial and gender slurs. (*See* FAC ¶ 14.) The allegations of the FAC, including the exhibits Kilborn attaches to it, belie his claims.

Kilborn alleges that in a Civil Procedure II ("Civ Pro II") class, he posed a final exam question featuring redacted racial and gender slurs, which generated student criticism. (*Id.* ¶ 15.) The Findings Letter, attached to the FAC as Exhibit A, shows how Kilborn, in response to this criticism, took actions that exacerbated the situation, making students feel threatened and

intimidated. (*See* FAC, Ex. A at 3.)[2] For example, he asserts that during a meeting with a member of the Black Law Students Association ("BLSA"), he told the student that the Dean did not tell him that a student petition was critical of his exam question because she feared that if Kilborn saw the petition he might "become homicidal." (*Id.* ¶ 20.) Kilborn contacted another law student who had signed the petition, complaining it was "painful beyond description" to see she had signed "BLSA's attack letter," and that he felt his "extended hand of help has been bitten off." (*See* FAC, Ex. D at 2.) Kilborn alleges that his classes were cancelled, and that his contact with students and colleagues was temporarily restricted until he completed a fitness for duty examination that included meeting with UIC health officials. (*Id.* ¶¶ 24, 28.)

OAE investigated allegations of discrimination and harassment against Kilborn brought by multiple students and one UIC faculty member. (*See* FAC, Ex. A.) The Findings Letter demonstrates that through its investigation, OAE substantiated allegations of race-based harassment against Kilborn, in violation of UIC's nondiscrimination policy. (*Id.*) OAE's finding was based not only on the exam question, but also on, among other things, Kilborn's references to litigants as "cockroaches" and the racially-charged term "lynching" during a single class (the latter he apologized for in class), his use of the word "homicidal" in response to student criticism regarding the exam question, and his email chastising the student who had signed the petition criticizing his exam question. (*See id.* at 2-4.) OAE rejected allegations that Kilborn's grade bump policy and decision to drop a black student from Civ Pro II constituted racial discrimination. (*See id.* at 2.) Kilborn alleges that OAE's investigation report (the "Investigation Report") was

---

[2] "[D]ocuments attached to the pleadings as exhibits are considered part of the pleadings for all purposes." *Aames Cap. Corp. v. Peterson*, 96-cv-6073, 1997 WL 102527, at *2 (N.D. Ill. Mar. 4, 1997) (citing Fed. R. Civ. P. 10(c)). When an exhibit contradicts the allegations of a complaint, the exhibit controls. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

eventually released to a reporter pursuant to a Freedom of Information Act ("FOIA") request, and later, to members of the UIC community. (*Id.* ¶¶ 42-43.)

Kilborn alleges that Dean Spanbauer agreed that he would only be required to complete racial sensitivity training if a review of four semesters' of class recordings revealed that he had failed to maintain a non-harassing classroom environment. (*Id.* ¶¶ 44-45.) He further alleges that Dean Spanbauer reneged on this "agreed settlement arrangement"—which Kilborn had accepted "to avoid a lawsuit"—and he was subsequently denied a 2% merit raise and required to complete an eight-week diversity course. (*Id.* ¶¶ 46-50.)

Kilborn filed his six-count FAC against Defendants in both their individual and official capacities, asserting claims arising under the First and Fifth Amendments as well as state law. Kilborn seeks declaratory and injunctive relief, compensatory and punitive damages, and attorneys' fees and costs. (*Id.* at 20.)

## LEGAL STANDARD

To withstand a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard is met when the plaintiff pleads sufficient factual content for the court to reasonably infer that the defendant is liable for the misconduct alleged. *Calderone v. City of Chicago*, 979 F.3d 1156, 1161 (7th Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court at this stage will accept all well-pleaded factual allegations as true, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

**I.     All of Kilborn's Official-Capacity Claims Are Barred by the Eleventh Amendment.**

Kilborn's claims against Defendants in their official capacities are the equivalent of claims against the State of Illinois and, therefore, are barred by the Eleventh Amendment to the United States Constitution. "The Eleventh Amendment immunizes unconsenting states from suit in federal court." *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 777 (7th Cir. 1991). That immunity extends to state universities, which are considered "arms of the state," as well as state university officials sued in their official capacity. *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991); *Freeman v. Univ. of Ill. at Chicago*, No. 17-CV-1776, 2018 WL 701282, at *2 (N.D. Ill. Jan. 29, 2018) (same). As Defendants are sued in their official capacity, they "share the University's imperviousness to damages." *Feldman v. Bahn*, 12 F.3d 730, 732 (7th Cir. 1993).

There are only three exceptions to the Eleventh Amendment's bar on official capacity claims against state officials, and none apply here. First, Congress may abrogate sovereign immunity by enacting a statute to authorize private suits against an unconsenting state. *MCI Telecomms. Corp. v. Ill. Bell. Tel. Co.*, 222 F.3d 323, 337 (7th Cir. 2000). Second, a state may waive its sovereign immunity by consenting to a federal suit. *Id.* Finally, under *Ex Parte Young*, 209 U.S. 123 (1908), a plaintiff may sue state officials "for prospective relief to enjoin ongoing violations of federal law." *Id*; *see also Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

The first two exceptions have no application here. Kilborn may argue that the *Ex Parte Young* exception to the Eleventh Amendment saves his official-capacity claims at least to the extent they seek equitable relief. But Kilborn cannot maintain an *Ex Parte Young* argument because he does not allege an ongoing violation of federal law requiring prospective relief.

**A.** **The *Ex Parte Young* exception does not apply because Kilborn does not seek prospective relief for ongoing violations of federal law.**

To determine whether the *Ex Parte Young* exception applies, courts evaluate if the plaintiff "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, No. 16-CV-1138, 2017 WL 706331, at *3 (S.D. Ill. Feb. 2, 2017) (citation omitted). Kilborn does not allege ongoing violations of federal law or seek prospective equitable relief, and therefore, the *Ex Parte Young* exception does not apply here.

Kilborn only alleges purported constitutional violations that have already occurred. His constitutional claims are based on his temporary, and now completed, teaching hiatus, and his mandated participation in a diversity training program that he also completed. (*See* FAC ¶¶ 50-51.) He does not allege that those violations are ongoing, and therefore there is nothing for the Court to enjoin. *See, e.g.*, *Green v. Mansour*, 474 U.S. 64, 73 (1985) (affirming dismissal of official-capacity claims because "[t]here is no claimed continuing violation of federal law, and therefore no occasion to issue an injunction"); *see also Balder v. Meeder*, No. 19-CV-7928, 2021 WL 1172243, at *4 (N.D. Ill. Mar. 29, 2021) (no official-capacity claims without "ongoing violation of federal law" and only allegations of "discrete retaliatory actions taken by Defendants").

Also, Kilborn's prayer for a "permanent injunction" seeks only to bar Defendants from engaging in some hypothetical and unspecified future conduct. (*See* FAC at 20 ¶ B (requesting a "permanent injunction barring Defendants from enforcing the anti-discrimination policy in a way that violates faculty and student rights")).[3] That is not the type of "prospective relief" that the *Ex*

---

[3] Additionally, Kilborn does not have standing to seek this type of hypothetical relief on behalf of other "faculty and students," (FAC at 20 ¶ A), who are not parties to this lawsuit. *See, e.g.*, *Bowman v. Jones Coleman*, No. 21-CV-3015, 2021 WL 6113205, at *4 (N.D. Ill. Dec. 25 2021) (dismissing teacher's claims

*Parte Young* exception contemplates. *See, e.g.*, *Judicial Watch, Inc. v. King*, No. 23-CV-800, 2014 WL 12755049, at *2 (S.D. Ind. May 13, 2014) (injunctive relief cannot be "based upon the possibility" of a future violation of federal law). Kilborn's request for a declaratory judgment that his "punishment and compulsion of [] speech" violated the First and Fifth Amendments and the University of Illinois Statutes, (FAC at 20 ¶ A), fares no better because it too relates only to allegations of *past* violations. *See, e.g.*, *Harden v. Bd. of Trs. E. Ill. Univ.*, No. 12-CV-2199, 2013 WL 6248500, at *8 (C.D. Ill. Dec. 2, 2013) ("sovereign immunity dooms" plaintiff's official capacity claims against university officials where plaintiff requested "a declaratory judgment that Defendants [] violated plaintiff's right to be free from discrimination in the workplace" in the past); *see also Green*, 474 U.S. at 73 (declaratory judgment improper where monetary and injunctive relief were unavailable against state officials).

**B. Kilborn's official-capacity state law claims are barred by the Eleventh Amendment, regardless of the relief sought.**

Kilborn cannot, as a matter of law, pursue his official-capacity claims to the extent they seek *any* relief, either monetary or equitable, for alleged violations of state law. *See Pennhurst*, 465 U.S. at 106 (Eleventh Amendment precludes a federal court's grant of relief against state officials on the basis of state law). State law claims against state officials are barred because "[i]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.*; *see also Terry v. Burke*, 589 F.Supp. 853, 855-56 (N.D. Ill. 1984) (applying *Pennhurst* to dismiss state law tort claims against state official); *Bhalero v. Ill. Dep't of Fin. and Prof'l Regulations*, No. 11-CV-7558, 2012 WL 5560887, at *8 (N.D. Ill. Nov. 15, 2012) (same and collecting cases). Thus, Counts II, IV, V, and

---

pleaded "on behalf of his students" because "a litigant must assert his own legal rights and cannot assert the legal rights of a third party") (internal quotation marks and citation omitted).

VI of the FAC, which allege violations of the University of Illinois Statutes and state common law must be dismissed against Defendants in their official capacities. The principles of sovereign immunity under the Eleventh Amendment also bar the relief Kilborn seeks in relation to those Counts. Kilborn seeks a declaratory judgment that Defendants violated the University of Illinois Statutes, an order of specific performance requiring Defendants to comply with their contractual obligations under the University of Illinois Statutes, and an injunction prohibiting Defendants from "enforcing the anti-discrimination policy in a way that violates" the University of Illinois Statutes. Kilborn is barred from seeking such relief, which would require this Court to order Defendants, who are state officials, to conform their conduct to state law. *See Pennhurst*, 465 U.S. at 106.

In sum, all of Kilborn's official-capacity claims are claims against the state and are barred by the Eleventh Amendment and the associated principles of state sovereign immunity. The claims against Defendants in their official capacities should be dismissed with prejudice, accordingly.

## II. All of Kilborn's State Law Claims Against Defendants in their Individual Capacities Should Be Dismissed Because the Illinois Court of Claims Has Exclusive Jurisdiction Over Such Claims.

Kilborn also purports to bring his state law claims against Defendants in their individual capacities. Those claims should be dismissed because, as alleged, all of Defendants' actions were taken within the scope of their employment. Thus, even Kilborn's individual-capacity state law claims are effectively claims against the state and cannot be pursued in this Court.

The Illinois Court of Claims has exclusive jurisdiction over any claims against the state "founded upon any law of the State of Illinois or any regulation adopted thereunder by an executive or administrative officer or agency," as well as any torts against the state. 705 ILCS 505/8(a) and (d); *see Benning*, 928 F.2d at 779 ("[S]tate rules of immunity are binding in federal court with respect to state causes of action."). Kilborn attempts to sidestep that statute by asserting his claims against Defendants in both their official and individual capacities. (*See* FAC at 1.) Under Illinois

law, however, claims against individuals acting in the scope of their state employment are suits against the state, to be brought only in the Court of Claims. *Benning*, 928 F.2d at 779 (citation omitted).

An Illinois state official is acting within the scope of her employment, and thus, the claims are deemed to be against the state, when: (1) there are no allegations that the employee acted beyond the scope of her authority through wrongful acts; (2) "the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment;" and (3) "the complained of actions involve matters within that employee's normal and official functions of the State." *Healy v. Vaupel*, 133 Ill. 2d 295, 309, 549 N.E.2d 1240, 1247 (1990) (internal quotation marks and citation omitted). Each of those elements is satisfied here.

Kilborn has not alleged that any Defendants acted beyond the scope of their authority, and all of the actions Kilborn alleges Defendants took are, on their face, actions that fell within the Defendants' normal and official functions as University employees. Bills, Kamm, and Davidson performed their duties for OAE when they reviewed and made findings regarding Kilborn's statements and student interactions, and Spanbauer acted within the scope of her position as Interim Dean when she made decisions regarding the appropriate course of action in light of OAE's findings. The only action Kilborn attributes to Amiridis is that he wrote a letter accompanying the release of OAE's Investigation Report to the "UIC Community." (FAC ¶ 43.) Drafting a letter to the "UIC Community" is undoubtedly within the scope of Amiridis's duties as University Chancellor, and Kilborn does not allege otherwise. Thus, while Kilborn has pleaded his claims nominally against Defendants in their individual capacities, they are, in fact and substance, claims against the University (*i.e.*, the state). *See, e.g.*, *Turpin v. Koropchak*, 567 F.3d 880, 884-85 (7th Cir. 2009) (affirming dismissal of individual capacity claims against university dean and noting

that "[w]hen the Illinois courts speak of an act 'beyond the scope of authority,' they contemplate an employee acting not just in a wrongful *manner*, but sticking his nose in business where it doesn't belong"); *Jackson v. Ill. Dept. of Comm. & Econ. Opportunity*, No. 17-CV-3106, 2019 WL 293377, at \*2-3 (C.D. Ill. Jan. 23, 2019) (dismissing state law claims based on allegations of "poor performance evaluations" and conduct related to "a pre-disciplinary conference").

Kilborn acknowledges that Defendants' alleged actions fell within their roles as University agents because he conflates the individual Defendants with the University itself. In the very first paragraph of the FAC, he alleges that "the *University of Illinois Chicago* ('UIC') has violated a school of law faculty member's rights to freedom of speech, academic freedom, and due process." (FAC ¶ 1 (emphasis added).) In the same paragraph, Kilborn alleges that the University—not the individual Defendants—"defamed him and subjected him to extreme emotional distress." (*Id.*) Throughout his complaint, Kilborn similarly attributes the alleged actions to the University's Office for Access and Equity ("OAE"), as opposed to any one Defendant. (*See, e.g.*, *id.* ¶ 29 ("OAE notified Plaintiff that it had commenced an investigation."); ¶ 32 ("OAE delivered its 4-page 'findings letter.'"); ¶ 33 ("OAE concluded that Plaintiff had nonetheless violated the harassment aspect of the UIC policy.").) Kilborn's claims are clearly based on alleged actions that Defendants took within the scope of their employment as University employees, and are thus claims against the University. Counts II, IV, V, and VI must therefore be dismissed because the Illinois Court of Claims has exclusive jurisdiction over such claims.

III.    **Kilborn's Constitutional Claims Fail Because He Does Not Attribute the Alleged Constitutional Deprivations to Any Particular Defendant and Does Not State a Claim Under the First and Fifth Amendments.**

   A.    **Kilborn fails to state claims against defendants in their individual capacities for constitutional violations under Section 1983.**

A plaintiff bringing an individual-capacity claim for a violation of constitutional rights under 42 U.S.C. § 1983 must allege each defendant's personal involvement in the wrongdoing, and only individuals "personally responsible" for the alleged constitutional violations are proper defendants. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). A defendant is personally responsible if she directed the misconduct or it occurred with her knowledge or consent. *Id.*

Kilborn does not allege each Defendant's personal responsibility. Kilborn leads with the allegation that *the University*, not the individual Defendants, violated his First Amendment and Due Process rights. (FAC ¶ 1.) That initial allegation sets the stage for vague, broad allegations that "Defendants" and "OAE" performed various acts, without any specific allegations as to how each Defendant was personally responsible for any of the purported constitutional violations. (*See, e.g.*, FAC ¶¶ 29, 30, 37, 38, 50, 55, 70, 75, 77, 80.)

The First Amendment and Due Process claims (Counts I and III) against Defendant Amiridis must be dismissed because Kilborn fails to allege that Amiridis played any role in the OAE investigation of Kilborn's conduct or the ensuing actions that the University took. Indeed, Kilborn only refers to Amiridis once in the more than 80 paragraphs of factual allegations. Counts I and III should also be dismissed as to Bills, Kamm, and Davidson, because Kilborn fails to allege that they were responsible for the alleged deprivations of Kilborn's rights.

Kilborn's broad references to "Defendants" do not satisfy the pleading requirements for his § 1983 claims. Kilborn has failed to plead with sufficient specificity that these Defendants were personally responsible for any of the constitutional deprivations he alleges, and his claims should

11

be dismissed accordingly. *See, e.g.*, *Coleman v. Cnty. of Cook*, No. 10-CV-2388, 2011 WL 2647891, at *15 (N.D. Ill. June 22, 2011) (dismissing Section 1983 claims based on insufficient allegations of personal responsibility where plaintiff alleged general First Amendment retaliation by defendants); *Santana v. Kempfer*, No. 13-CV-1229, 2013 WL 6670560, at *2 (S.D. Ill. Dec. 18, 2013) (dismissing Section 1983 due process claim where defendant "did not conduct the hearing nor was he personally involved in the deprivation of plaintiff's procedural due process protections").

      **B.**    **Kilborn fails to state a claim for violation of the First Amendment.**

           **1.**    **Kilborn's First Amendment retaliation claim fails because his statements were not made as a private citizen, nor were they on a matter of public concern.**

To state a claim for First Amendment retaliation, a plaintiff must allege that "(1) his speech was constitutionally protected; (2) he suffered a detriment likely to deter free speech; and (3) the speech was the but-for cause of the employer's action." *Puppala v. Will Cnty. Comm. Health Ctr.*, No. 09-CV-6804, 2010 WL 3893847, at *2 (N.D. Ill. Sept. 30, 2010) (citing *Gunville v. Walker*, 583 F.3d 979, 983-84 (7th Cir. 2009)). Here, Kilborn's First Amendment retaliation claim fails because the alleged speech at issue was not constitutionally protected as a matter of law.

A state employee's speech is constitutionally protected only when the employee is speaking as a citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). Kilborn does not allege he was speaking as a citizen on a matter of public concern. "Employees do not speak as citizens for First Amendment purposes when they 'make statements pursuant to their official duties.'" *Puppala*, 2010 WL 3893847 at *2 (quoting *Garcetti*, 547 U.S. at 421). Even when speaking as a private citizen, a public employee's speech is not protected if it is not related to a matter of public concern, based on the "content, form, and context" of the statements. *Id.*

          **a.**    **Kilborn's statements were not made as a private citizen.**

As an initial matter, the statements on which Kilborn relies for his First Amendment claim are not constitutionally protected because, as Kilborn alleges, he made the statements pursuant to his official duties as a University professor. The statements at issue are Kilborn's "exam question and in-class discussions," as well as the "few remarks to two individual students" as a law professor that he would become "homicidal" in response to students' complaints about his exam question. (FAC ¶¶ 57, 58.) The law school exam question and Kilborn's in-class discussions are core academic duties that clearly fall within his official job responsibilities. *See, e.g.*, *Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531, 539-40 (7th Cir. 2016) (affirming Rule 12 dismissal of professor's First Amendment claim where "her speech was made pursuant to her faculty role"), *overruled in part on other grounds by Ortiz v. Werner Ents., Inc.*, 834 F.3d 760 (7th Cir. 2016); *Brown v. Chicago Bd. of Educ.*, 824 F.3d 713, 715 (7th Cir. 2016) (teacher's "lesson on racial epithets" was not speech protected by the First Amendment because it was made during his lessons and within the scope of his teaching duties); *Bryant v. Gardner*, 587 F. Supp. 2d 951, 962-63 (N.D. Ill. 2008) (high school teacher's complaints to assistant coach and union delegate were not protected speech because they were made "in furtherance of his official duties as boys' basketball coach").The statements Kilborn made during follow-up discussions with students were also within the scope of Kilborn's official duties as a University law professor because were they made as a direct result of his exam question and his role as law professor. In other words, those statements are not protected because Kilborn concedes he made them by virtue of his employment as a University professor. *See Garcetti*, 547 U.S. at 421-22 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."); *see also Wozniak v. Adesida*, 932 F.3d 1008, 1010 (7th Cir. 2019) ("how faculty members relate to students *is* part of their job"). Kilborn did not make

13

the statements a private citizen, and his First Amendment retaliation claim must be dismissed with prejudice, accordingly.

**b.     Kilborn's speech did not deal with a matter of public concern.**

Even if Kilborn spoke as a private citizen, his First Amendment claim fails because he did not speak on a matter of public concern. "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (internal citation and quotation marks omitted). Here, the FAC is clear that Kilborn's statements were not part of any civic discussion or in any way related to a matter of general interest and value to the community or public at large. Kilborn makes no such allegations. Kilborn does not allege that he made the statements as part of any broader discussion regarding the public discourse on race. Rather, Kilborn plainly alleges he made reference to a racial epithet in a civil procedure exam. *See, e.g.*, *Kluge v. Brownsburg Comm. Sch. Corp.*, 432 F. Supp. 3d 823, 839 (S.D. Ind. 2020) (dismissing teacher's First Amendment claim based on refusal to use students' chosen first names because "the only point of his speech was to address students" and not to express his "opinions about using transgender students' preferred names"). Kilborn also does not allege that he wrote the exam question at issue as part of an effort to address any broader societal issues. Moreover, as alleged in the FAC, his statements to students following their complaints about the exam question were his personal reactions to those complaints, not matters of public concern. *See Puppala*, 2010 WL 3893847 at *3 ("[E]ven speech about a public topic will not be protected where the expression addresses only the personal effect upon the employee.") (internal citation and quotation marks omitted); *see also Howell v. Millersville Univ. of Penn.*, 283 F. Supp. 3d 309, 337-38 (E.D. Penn. 2017) (dismissing professor's First Amendment claims because complaints about "his treatment

at the hands of his colleagues" were "personal grievances" not entitled to constitutional protection). Because Kilborn cannot adequately allege he engaged in protected speech, his First Amendment retaliation should be dismissed with prejudice.

### 2. Kilborn fails to state a First Amendment claim based on compelled speech.

Kilborn also attempts to state a compelled speech claim based on a conclusory allegation that "[t]he sensitivity training which Defendants have imposed on Kilborn also violates the First Amendment, as it compels Kilborn to express his 'commitment to the goals of the program' in order to be released back to teaching." (FAC ¶ 56.) The First Amendment "prohibits the government from telling people what they must say." *Rumsfeld v. Forum for Academic Instit. Rights, Inc.*, 547 U.S. 47, 61 (2006). A First Amendment compelled speech claim requires "(1) speech; (2) to which the plaintiff objects; (3) that is compelled; and (4) that is readily associated with the plaintiff." *Doe 1 v. Marshall*, 367 F.Supp. 3d 1310 (M.D. Ala. 2019). Kilborn has failed to allege facts sufficient to establish each of those elements.

Kilborn does not allege the manner in which he was required to "express his commitment," nor does he allege what the "goals of the program" were or whether he disagreed with them. (*See* FAC ¶ 56 (alleging that Kilborn was compelled to express commitment to the goals "*even if* he disagrees with them") (emphasis added).) He also fails to allege how he was required to "alter his speech to conform" to opinions that he does not hold. *See Ent. Software Ass'n v. Blagojevich*, 404 F. Supp. 2d 1051, 1082 (N.D. Ill. 2005); *see also Riley v. Nat'l Fed'n of the Blind of N.C.*, 487 U.S. 781, 795 (1988) (compelled speech claim requires showing that plaintiff made speech he "would not otherwise make"). The vague and conclusory allegation regarding a requirement—not attributed to any individual Defendant—that Kilborn express his commitment to unspecified "goals" is insufficient to state a claim for compelled speech against any of the five Defendants.

Moreover, Kilborn's allegation that Defendants compelled him to make certain speech related to the diversity training is contradicted by the only other allegation in the FAC related to the content and requirements of the training program. Specifically, Kilborn alleges that the individual conducting the training "would provide 'feedback regarding Professor Kilborn's engagement and commitment to the goals of the program.'" (FAC ¶ 50.) That allegation provides that *the program presenter*, not Kilborn, share information regarding Kilborn's participation in the program, not that Kilborn was compelled to make or espouse certain speech with which he disagreed.

Kilborn has not sufficiently pleaded that any Defendant compelled him to make any speech with which he disagreed, nor does he plead the nature of such compulsion. Kilborn does not allege a plausible claim that any Defendant violated his First Amendment rights.

### C.      Kilborn fails to state a procedural due process claim.

To state a claim for procedural due process, a plaintiff "must allege a cognizable property interest, a deprivation of that interest, and a denial of due process." *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010). Here, Kilborn does not allege a deprivation of a cognizable property interest.

Kilborn's due process claim is premised on the allegation that "[p]rior to the two summary suspensions from teaching, Plaintiff was afforded no process of any kind." (FAC ¶ 71.) However, the suspensions Kilborn alleges do not constitute deprivations of a property interest because Kilborn does not (and cannot) allege he was suspended without pay, and his allegations make clear that his purported suspensions concluded upon his completion of the diversity training program. (*Id.* ¶¶ 50-51.) The Seventh Circuit has consistently held that "a suspension with pay does not trigger due process protections unless the suspension imposes a substantial indirect economic effect on the plaintiff." *Palka*, 623 F.3d at 452 (affirming dismissal for failure to state due process claim). Kilborn has not alleged that he has suffered any "substantial indirect economic effect" as

a result of his suspensions. He alleges only that he was temporarily suspended, which is insufficient to support a procedural due process claim. *See, e.g.*, *Battle v. Alderen*, No. 14-CV-1785, 2015 WL 8330103, at *2 (N.D. Ill. Dec. 9, 2015) (Lee, J.) (dismissing due process claim where plaintiff was suspended with pay and did not suffer any other substantial indirect economic effect as a result). Count III of Kilborn's complaint should be dismissed, accordingly.

## IV. Kilborn Cannot State a Claim Based on a Violation of the University of Illinois Statutes.

Count II of Kilborn's complaint purports to allege a claim based on a violation of Article X, Section 2(a) of the University of Illinois Statutes (the "Statutes"). While the Statutes are "bylaws having the force of administrative rules and hence 'law' in Illinois," *Upadhya v. Langenberg*, 834 F.2d 661, 663 (7th Cir. 1987), Article X, Section 2(a) is merely a general policy statement, which does not provide for a private right of action or impose any duties on the University or its employees that would be actionable if violated, *see* Univ. of Ill. Stat. Art. X, § 2(a) ("It is the policy of the University of Illinois System to maintain and encourage full freedom within the law of inquiry, discourse, teaching, research and publication.").

Further, Kilborn cannot establish that the Statutes provide an implied right of action. To demonstrate that a statute provides for a private right of action in Illinois, a plaintiff must show that, *inter alia*, a private right of action is consistent with the underlying purpose of the statute, and a private right of action is necessary to provide an adequate remedy for the violation of the statute. *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460, 722 N.E.2d 1115, 1118 (1999). Kilborn does not meet either requirement. The Article upon which Kilborn relies sets forth a procedure to resolve disputes regarding the University's adherence to the stated policy. It provides that "[a] member who believes that he or she does not enjoy the academic freedom which it is the policy of the University of Illinois System to maintain and encourage shall be entitled to a hearing

on written request before the Committee on Academic Freedom and Tenure." Univ. of Ill. Stat. Art. X, § 2(d). That provision clearly establishes that an implied private right of action in federal court is inconsistent with the underlying purposes of the Statutes and unnecessary. *See Fisher*, 722 N.E.2d at 1120 (no implied right of action in Nursing Home Care Act where Act provided for specific "sanctions and remedies" to accomplish its goals). Therefore, Count II should be dismissed with prejudice.

**V.     Kilborn Cannot Sustain a Claim for Defamation or False Light Because He Does Not Allege the Substance, Speaker, or Publication of Any "False" Statement, and with Respect to False Light, He Fails to Allege Defendants Acted with Actual Malice.**

Kilborn's allegations that Defendants disseminated "numerous false statements" about him are insufficient to state a claim for defamation *per se* or false light because they are conclusory. Kilborn fails to identify who, of the five Defendants, made which particular statement, or published any particular statement, or where the statements were published. (*See* FAC ¶¶ 83, 87.) Kilborn's false light claim also fails because he does not adequately allege actual malice. Further, both claims fail because the FAC and supporting exhibits demonstrate on their face that the statements Kilborn purports to challenge are substantially true.

A plaintiff asserting defamation under Illinois law must allege: (1) the defendant made a false statement about the plaintiff; (2) the defendant made an unprivileged publication of the statement to a third party; and (3) the publication caused damages. *Green v. Rogers*, 234 Ill. 2d 478, 491, 917 N.E.2d 450, 459 (2009). Defamation harms a person's reputation by lowering the person in the eyes of the community or deterring the community from associating with the person. *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 10, 607 N.E.2d 201, 206 (1992). Kilborn purports to allege defamation *per se* (FAC ¶ 85), meaning that the alleged statements are so harmful to his reputation that damages are to be presumed. *See Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003).

18

The tort of false light invasion of privacy is similar to defamation, but aimed at protecting a plaintiff's "interest in being let alone from false publicity." *Dubinsky v. United Airlines Master Exec. Council*, 303 Ill. App. 3d 317, 331, 708 N.E.2d 441, 452 (Ill. App. Ct. 1999). To assert false light, a plaintiff must show: (1) he was placed in a false light before the public as a result of a defendant's actions; (2) the false light was "highly offensive to a reasonable person;" and (3) the "defendants acted with actual malice . . . that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Kolegas*, 607 N.E.2d at 209-10. A false light claim predicated on an unsuccessful defamation *per se* claim fails. *See Seith v. Chicago Sun-Times, Inc.*, 371 Ill. App. 3d 124, 139, 861 N.E.2d 1117, 1130 (Ill. App. Ct. 2007).

### A. The defamation and false light claims fail because Kilborn fails to identify the substance, speaker, or publication of any "false" statement.

Claims for defamation and false light must apprise a defendant of what allegedly false statements were made, who made them, and where they were published. *See, e.g.*, *Esparza v. S.R. Barnum, Inc.*, No. 19-CV-06231, 2021 WL 1784755, at *2 (N.D. Ill. May 5, 2021) (Rule 12 dismissal of defamation claim where plaintiff did not articulate the false statements or when they were made); *Osundairo v. Geragos*, 447 F. Supp. 3d 727, 738-39 (N.D. Ill. 2020) (dismissing false light claim where plaintiffs failed to identify any particular statement). While each allegedly defamatory statement need not be set forth verbatim, its substance must be stated with "sufficient precision and particularity" to allow for judicial review. *Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 836-37 (N.D. Ill. 2015) (quoting *Rogers*, 917 N.E.2d at 459). This is not a heightened pleading standard, but simply requires plaintiffs to plead the substantive elements of defamation. *Id.*

Here, Kilborn fails to link any particular "false" statement to any one Defendant. Instead, his defamation and false light claims are based on three unattributed statements that he: (1) "was guilty of race-based 'harassment';" (2) "had 'overtly intimidate[ed] and threaten[ed]' students;"

and (3) "had 'used' racial slurs and referred to minorities as 'cockroaches.'" (FAC ¶ 84.) Because Kilborn does not allege where these statements came from, who made them, or how they were published by Defendants, his defamation and false light claims fail and should be dismissed.

Kilborn's generic references to documents in the FAC are no substitute for well-pleaded allegations. But even assuming the statements Kilborn challenges come from the Findings Letter attached to the FAC, or the Investigation Report referenced therein, Kilborn's defamation and false light claims still fail. First, the Findings Letter is addressed to Kilborn and labeled "personal and confidential," (*see* FAC, Ex. A) contrary to his allegation that Defendants sent it to BLSA and others. Kilborn's allegation that "[a]ll Defendants participated in creating the findings letter" and "then published it by, on information and belief, sending it to members of the BLSA and others" is also insufficient because Kilborn fails to allege any facts informing his belief, as required. (*See id.* ¶ 39); *Keen v. Bluestar Energy Servs., Inc.*, No. 11-CV-7754, 2012 WL 1118215, at *4-5 (N.D. Ill. Mar. 30, 2012) (where defamation *per se* is pleaded "on information and belief," the plaintiff must plead the factual basis informing that belief). Moreover, Kilborn does not allege that Defendants Amiridis, Spanbauer, and Bills played any role in creating the Findings Letter or the Report. And as Kilborn acknowledges, the Report itself was only made available to the UIC community after it was released to a journalist in response to a FOIA request. (*See* FAC ¶¶ 42-43.)

**B.      Kilborn's false light claim should also be rejected because he does not adequately allege actual malice.**

Although Kilborn's false light claim should be dismissed on the same grounds as the underlying defamation *per se* claim, *see Seith*, 861 N.E.2d at 1130, it should also be rejected for the independent reason that Kilborn has failed to sufficiently allege that Defendants acted with actual malice—"that is, with knowledge that the statements were false," or with "reckless disregard for their truth." *See Kolegas*, 607 N.E.2d at 209-10. The FAC contains only one conclusory

allegation that "Defendants acted with actual malice and reckless disregard for obvious evidence of the falsity of these statements in light of the facts above." (FAC ¶ 87.) Kilborn fails to allege any facts relating to the "obvious evidence" to which he refers, leaving an inadequate conclusory allegation. It is well-established that courts will not accept as adequate mere recitations of one of the elements of a cause of action to salvage a claim, as Kilborn attempts to do here. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *Pippen v. NBC Universal Media, LLC*, No. 11-CV-8834, 2012 WL 12903167, at \*2 (N.D. Ill. Aug. 2, 2012) (rejecting a conclusory claim of malice), *aff'd Pippen*, 734 F.3d 61 (7th Cir. 2013); *Gondeck v. A Clear Title & Escrow Exch.*, LLC, No. 11-CV-6341, 2012 WL 5200091, at \*6 (N.D. Ill. Oct. 22, 2012) (rejecting boilerplate allegations of malice in IIED context). The FAC, on its face, reveals that the Findings Letter was the result of extensive investigation, including interviews with Kilborn, students, and members of the UIC community. (*See* FAC, Ex. A at 2.) That the Findings Letter in fact did *not* substantiate certain student allegations against Kilborn negates any assertion that Defendants acted with actual malice. (*See id.*)

### C.    Both claims fail because the statements Kilborn purports to challenge are substantially true.

Kilborn cannot save his defamation and false light claims for the additional reason that the challenged statements—that he was guilty of race-based harassment, had intimidated and threatened students, and had used racial slurs—are substantially true as reflected in the four corners of the FAC. Defamation and false light claims fail where they are based upon statements that are "substantially true." *Ludlow*, 79 F. Supp. 3d at 837, 839-40 (rejecting professor's defamation and false light claims based, in part, on substantial truth of challenged statements); *see also Soo Line R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) (a plaintiff can "plead himself out of court by alleging facts which show that he has no claim"). "To establish the defense of

21

substantial truth, the defendant need only show the truth of the 'gist' or 'sting' of the defamatory material." *Glob. Relief Found., Inc. v. New York Times Co*., 390 F.3d 973, 982 (7th Cir. 2004).

Taking each of the challenged statements quoted in Paragraph 84 in turn, which were presumably derived from facts in the Findings Letter incorporated into the FAC, it is clear that the "gist" or "sting" of the challenged material is substantially true. First, Kilborn contends he was charged with using racial slurs. (FAC ¶ 84.) But, that is not what OAE actually states. Instead, the Findings Letter asserts only that Kilborn used an "explicit (abbreviated) reference to a racial epithet." (*Id.*, Ex. A at 3.) This is substantially true. Kilborn in no way disputes this finding and further admits to having used a redacted version of a racial slur on his final exam for the past ten years. (*Id.* ¶¶ 15-17). In addition, while Kilborn contends he never referred to racial minority plaintiffs as "cockroaches," that is not the conduct the Findings Letter describes. Even if media outlets reported otherwise, (*see* FAC ¶¶ 39-50), the Findings Letter substantiates only that Kilborn made inappropriate, racially-charged comments during his January 23, 2020 class, which included references to "cockroaches" and "lynching." (*Id.*, Ex. A at 2-3). Kilborn does not dispute this finding either.

Second, Kilborn asserts Defendants falsely claimed that he intimidated and threatened students. (*Id.* ¶ 84.) In his FAC and attached exhibits, however, Kilborn provides ample evidence of intimidation and threats to students. For example, Kilborn does not challenge (and in fact admits) that he told a student the law school's dean might have feared he would "become homicidal" if he saw a student petition critical of his exam question. (*Id.* ¶ 20.) Rather than dispute the truth of that remark in the FAC, Kilborn dismisses the remark by claiming it was made in jest (*id.*), ignoring OAE's conclusion that "[e]ven hinting at physical violence in jest toward a student in reaction to written or spoken criticism is completely unacceptable." (*Id.*, Ex. A at 4.) Likewise,

Kilborn admits that he, on his own initiative, emailed a law student to tell her it was "painful beyond description" to see her name on the BLSA "attack letter," and that she had caused him to feel like his "extended hand of help has been bitten off." (*See id.*, Ex. A at 3, Ex. D at 2.) Kilborn does not dispute that his statements and reactions to student criticism, which became known to the student body, demonstrated "racial insensitivity and even hostility to those voicing concerns about a racially-charged topic." (*Id.*, Ex. A at 3). It is clear from Kilborn's own pleading that he made remarks which caused students to feel threatened or intimidated. In sum, even if Kilborn adequately pleaded claims for defamation and false light (he did not), they must be dismissed because the "gist" of the statements Kilborn now challenges is "substantially true."

## VI. Kilborn's IIED Claim Fails Because He Does Not Adequately Allege "Extreme and Outrageous" Conduct or Severe Emotional Distress.

To state a claim for IIED, Kilborn must show: (1) that Defendants' conduct was "extreme and outrageous;" (2) that Defendants either intended to inflict severe emotional distress or likely knew that their conduct would cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress. *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (1988). Kilborn misses each element. Extreme and outrageous conduct is that which goes "beyond all possible bounds of decency," is "regarded as intolerable in a civilized community." *Kolegas*, 607 N.E.2d at 211. Kilborn's IIED claim suffers from the same defect as his other claims in that this conduct is not adequately attributed to any one defendant, and it should be dismissed for this reason alone. *See Eilenfeldt v. United C.U.S.D. #304 Bd. of Educ.*, No. 12-CV-04029, 2013 WL 12248080, at *3 (C.D. Ill. Mar. 25, 2013) (rejecting IIED claim "lumping 'the Defendants' together").

Further, Kilborn fails to allege conduct that was objectively extreme and outrageous. *Harriston v. Chicago Trib. Co.*, 992 F.2d 697, 703 (7th Cir. 1993). It is well-established that

workplace incidents involving employee discipline and even termination are insufficient to sustain a claim for IIED. *See Loizon v. Evans*, No. 18-CV-2759, 2020 WL 5253852, at *9 (N.D. Ill. Sept. 3, 2020) (Lee, J.) (dismissing IIED claim based on employer's "potentially embarrassing discipline, and eventual termination" of defendant because such conduct is not extreme and outrageous "as a matter of Illinois law"); *Richards v. U.S. Steel*, 869 F.3d 557, 567 (7th Cir. 2017) (courts are hesitant to find IIED claims in the workplace).

Kilborn also does not allege that Defendants engaged in extreme and outrageous conduct that violated the bounds of decency, or which Defendant(s) engaged in which extreme or outrageous conduct. At most, Kilborn takes issue with the "cancellation" of his classes, allegedly prohibiting him from contacting students and colleagues for an unspecified period of time, and requiring him to participate in a fitness for duty examination that included meeting with UIC health officials. (FAC ¶ 89.) Disciplinary actions and even termination in this context are seldom found "extreme and outrageous." *See Loizon*, 2020 WL 5253852, at *9; *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 746, 742 N.E.2d 858, 867 (Ill. App. Ct. 2000). As this Court has observed, "Illinois courts have found behavior in the workplace to rise to the level of extreme and outrageous conduct only when the behavior is truly egregious," for instance, where an employer harasses an employee into falsifying work reports, endangers an employee's safety, or threatens to seriously harm the employee. *Thomas v. Coach Outlet Store*, No. 16-CV-3950, 2017 WL 386656, at *4 (N.D. Ill. Jan. 27, 2017) (Lee, J.). The conduct Kilborn describes falls far short of "extreme and outrageous." There is not even an allegation that Kilborn was suspended without pay, or restricted from performing his non-teaching academic duties. In short, Kilborn has pleaded himself out of an IIED claim.

Finally, Kilborn does not sufficiently allege he suffered *severe* emotional distress. To state a claim for IIED, the distress inflicted must be "so severe that no reasonable man could be expected to endure it." *McGrath*, 533 N.E.2d at 809 (quotation marks omitted). Kilborn's claimed unspecified "depressive episodes and other conditions" of unknown severity or duration are insufficient. (FAC ¶ 92); *see Brooks*, 578 F.3d at 581. Because Kilborn has not adequately alleged extreme and outrageous conduct or severe emotional distress, his IIED claim should be dismissed.

## <u>CONCLUSION</u>

WHEREFORE, Defendants respectfully request that this Court dismiss the FAC in its entirety, and grant any other and further relief that this Court deems equitable and just.

Dated: April 25, 2022

Respectfully submitted,

**MICHAEL AMIRIDIS, CARYN A. BILLS, JULIE M. SPANBAUER, DONALD KAMM, and ASHLEY DAVIDSON**

By: */s/* John F. Kennedy
　　　One of their Attorneys

John F. Kennedy (jkennedy@taftlaw.com)
Elizabeth E. Babbitt
(ebabbitt@taftlaw.com)
Paul J. Coogan (pcoogan@taftlaw.com)
Elizabeth A. Winkowski
(ewinkowski@taftlaw.com)
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Dr., Suite 2800
Chicago, IL 60601
Phone: (312) 527-4000
Fax:  (312) 527-4011