IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JASON J. KILBORN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-00475 |
| | ) | |
| MICHAEL AMIRIDIS, CARYN A. BILLS, | ) | Hon. John Z. Lee |
| JULIE M. SPANBAUER, DONALD KAMM, | ) | Magistrate Judge Sheila M. Finnegan |
| and ASHLEY DAVIDSON, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR RULE 11 SANCTIONS**

Plaintiff, Jason J. Kilborn, now responds to Defendants' motion for Rule 11 sanctions.

**I.    INTRODUCTION**

Defendants' motion is not directed to any allegation in the First Amended Complaint

("FAC"). Instead, it is directed to two sentences in Plaintiff's argument that injunctive relief is

available for Defendants' ongoing violation of federal law. Plaintiff's brief states: "While Kilborn

complied with some mandated training, Defendants have *not* said whether they deem his effort to

be an adequate 'engagement and commitment to the goals of the program' or a 'satisfactory

completion of this program.' For that reason, Kilborn's return to teaching depends on Defendants'

whim and he is *not* sure to be teaching classes in the fall semester of 2022." (Dkt. 23, Resp. at 3,

citing FAC ¶¶ 50-51).

According to Defendants, a March 2, 2022 email from Defendant Spanbauer includes a

statement of completion that renders Kilborn's fears about another suspension moot and the two

sentences false.  Defendants are incorrect:  (1) the March 2 email came before Kilborn had even

completed his mandated training; (2) Defendant Spanbauer's contemporaneous email blast to the

entire student body on March 4, 2022 (Ex. C) referenced only the "Cornell" module of the training, which was only the first portion of the mandated program; (3) Kilborn's repeated queries as to whether he had satisfied the requirement of his "engagement and commitment to the goals of the program" went unanswered; and (4) after public outcry, Defendants had earlier reneged on a prior agreement made by Defendant Spanbauer by abruptly suspending him from teaching his Spring semester classes on December 16, 2021.

The March 2, 2022 email informed Kilborn of a teaching assignment that Defendants have the power to revoke or modify at any time. As the March 4, 2022 (Ex. C) email blast confirms, Kilborn is still on probation for past speech. Defendant Spanbauer told the student body that Kilborn is "scheduled" to teach two classes, and that "Oversight by the Law School administration will include review of recordings of his class sessions and … any student complaints …." Just as happened in December 2021, Kilborn could again be suspended summarily even before the next semester if Defendants conclude he was not sufficiently "committed to the goals of the [training] program" or if Defendants deem any of his actual or alleged "interactions and communications with students" to be violative of the "antidiscrimination policy." Likewise, Kilborn could again be suspended at any time if any of his class sessions do not satisfy Defendants' view of what constitutes proper adherence to the policy being challenged in this action.

When they made their accusation of a Rule 11 violation on May 26, 2022, Defendants' counsel was apparently unaware that the Cornell module was only part of Kilborn's mandated training; they also have a different opinion about the significance of Defendant Spanbauer's March 2 email. That difference of opinion, however, does not diminish Kilborn's legitimate concerns about his probationary status, and certainly cannot satisfy the "high burden of showing that Rule 11 sanctions are warranted." *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 860 (N.D. Ill. 2015).

## II.     BACKGROUND

### A.      Statement of Facts

On December 16, 2021, UIC Legal Counsel, John Alsterda ("Alsterda"), sent a letter to Kilborn's attorney, insisting that Kilborn needed to participate in sensitivity training, which consisted of: (1) a five-week online program from Cornell University, (2) additional readings, writing assignments and weekly sessions with a trainer retained by UC on the topics covered in each of the five modules of the Cornell program, and (3) and then three weeks of "additional supplementary material" and meetings with a trainer.  (Ex. B, Alsterda letter).  Kilborn's "engagement and commitment to the goals of the program" were to be assessed with feedback provided to UIC administrators, apparently, and specifically, in the context of the final three "additional supplementary" sessions.  (*Id.*).  Kilborn was informed that satisfactory compliance with the training mandate required that three "additional supplementary" weeks would follow the online program.  (Ex. A, Kilborn Dec. at ¶ 4).  To date, despite numerous requests, Kilborn was never informed whether his "engagement and commitment to the goals of the program" were ever deemed satisfactory by the UIC administrators who mandated the training.  (*Id.* at ¶ 3).

Defendants state that Kilborn allegedly "knew on March 2, 2022 (months before the filing of the Response), that he had satisfied his obligations of the training program" based on a March 2, 2022, email that he received from Defendant Julie Spanbauer. When Kilborn received Defendant Spanbauer's email on March 2, he still had two remaining mandated sessions, 25% of the total of eight sessions and two-thirds of the "additional supplementary" material during which his "commitment" was to be assessed.  Since the program was not completed at the time, Kilborn was, and still is, uncertain what Defendant Spanbauer was referring to when she stated, "Based on that successful outcome…." There was at that time no "successful outcome" other than Kilborn's completion of the first, five-week, Cornell portion of the program mandated by UIC

administrators. Kilborn had specifically proposed a compromise by which his completion of this Cornell portion be deemed satisfactory compliance with the training mandate, and he was told explicitly that he would have to complete the remaining three "additional supplementary" weeks. (*Id.* at ¶ 4).

On March 4, 2022, Defendant Spanbauer sent an email to the entire law school student body (Ex. C) stating that Kilborn had successfully completed the "Cornell University for Teaching Innovation's 'Teaching and Learning in the Diverse Classroom' program." As stated above, the Cornell program constituted only the first five weeks of the entire eight-week program mandated by UIC, Kilborn's compromise proposal to limit the training to this five-week Cornell portion was rejected by UIC administrators, and he had still not completed two of the three sessions of the mandated "additional supplementary" portion of the full program. (Ex. A at ¶ 5).

Kilborn asked his "trainer," Monica Khetarpal, several times (including, he believes, on March 11, 2022) how his "commitment to the goals of the program" would be assessed, and whether the UIC administration had determined whether he had demonstrated sufficient "commitment to the goals of the program." While Kilborn's trainer expressed her satisfaction with his "engagement" and promised she would report this to UIC administration, he has yet to receive an answer with respect to his "commitment to the goals of the program." (Ex. A at ¶ 6).

Kilborn asked that question because the UIC administration's official position concerning this training has been a moving target. Defendant Spanbauer originally told Kilborn in writing in July 2021 that he would not be required to undergo any training and would be assigned classes as usual. Then, on November 30, 2021, with no change in circumstances, Defendants Amidiris and Spanbauer intervened with a blast email to the entire "UIC community," declaring that "an intercultural competency training program before [Kilborn] returns to teaching ... should have been mandated instead of just strongly recommended earlier." (FAC ¶ 43; Ex. A to Response to Motion

- 4 -

to Dismiss). That same email stated, "there will be oversight of [Kilborn's] interactions and communications with students." Then, bowing to student pressure (which Defendants had themselves stoked by releasing the findings letter (FAC ¶¶ 39-40)), on December 16, 2021 (with classes scheduled to recommence on January 10, 2022), central university authorities (Defendants Amiridis, Bills and perhaps others) reneged on the July 2021 agreement and abruptly announced that Kilborn would be again suspended from teaching in the upcoming semester. (Ex. A at ¶ 6; FAC ¶¶ 47-49).

In her March 4, 2022 email blast, Defendant Spanbauer told the student body that Kilborn was "scheduled" to teach two classes, and that "Oversight by the Law School administration will include review of recordings of [his] class sessions and … any student complaints…." Just as happened in December 2021, Kilborn could again be suspended summarily even before the next semester if Defendants conclude he was not sufficiently "committed to the goals of the [training] program" or if Defendants deem any of his actual or alleged "interactions and communications with students" to be violative of the "antidiscrimination policy." Likewise, Kilborn could again be suspended at any time if any of his class sessions do not satisfy Defendants' view of the policy. (Ex. A at ¶ 7).

Kilborn is genuinely and legitimately concerned that, based on his past or future conduct, real or alleged, UIC administrators might suspend him without notice from his teaching duties in the fall 2022 semester (or thereafter). Kilborn has asked what his "commitment to the goals of the program" means, and for confirmation that his good faith completion of the readings, essays, and trainer interactions in the eight-week mandated training program fulfilled UIC administration's demands and expectations as to his "commitment," and Kilborn has received no answer. Defendant Spanbauer's reference to a "successful outcome" in the middle of this eight-week training program was and is ambiguous, confusing, and not all indicative of whether the central

university administrators who imposed this training on Kilborn are satisfied with his participation. (Ex. A at ¶ 8).

Kilborn read both the Amended Complaint (Dkt. # 9) and his Memorandum in Opposition to Defendants' Motion to Dismiss (Dkt. # 23) prior to their filing, and agreed with, and confirmed the truth of, every statement in those documents, including the ones that Defendants now allege are false. (Ex. A at ¶ 2).

### B.     The Rule 11 Accusation

On May 26, 2022, Defendants sent Plaintiff's counsel an email and a draft Rule 11 Motion (both attached as Ex. D).  Among other things, Defendants state: (1) "Kilborn and his Counsel knew, or should have known, after reasonable inquiry, that  [certain] factual contentions lacked evidentiary support"; (2) the allegedly "unsupported factual contentions are material, as they are presented to advance Kilborn's arguments in opposition to Defendants' sovereign immunity defense"; (3) in the Response, Kilborn "incorrectly claims that he has never been informed as to whether he satisfied the requirements of this training"; and (4) "Kilborn and Counsel also maintain in the Response that 'Defendants have refused to reveal whether [Kilborn] has satisfactorily complied with their mandate in order to be reinstated in the classroom.'"  (*Id.* at pgs. 1-2).

The crux of Defendants argument – the *only* support for their unfortunate accusation – was that Spanbauer's premature, March 2, 2022 email vaguely references "work in the program and with the coach" and a "successful outcome," but says *nothing* about the UIC central administrators' assessment of Kilborn's completion of the mandated program, as specifically outlined in Alsterda's letter – *nor could it*: the program was not complete, nor have the UIC administrator's *ever* provided their assessment of Kilborn's completion of the program.  Defendants' Motion continues to ignore these facts.  According to Defendants, Kilborn, allegedly, "knew on March 2, 2022 (months before the filling of the Response), that he had satisfied his obligations of the training

program." (*Id.* at pg. 3). This, of course, was untrue on March 2, 2022, and is still untrue today. At its core, Defendants motion attempts to seize on and exploit Spanbauer's erroneous March 2 email and suggest that Kilborn's (incomplete) disciplinary training program negated any threat of discipline for past conduct; this argument is unsupported in fact, does not raise a credible Rule 11 argument, and must be rejected.

### C.      The Actual Rule 11 Motion

The Rule 11 Motion that Defendants filed (Dkt. # 29) deviates from their draft motion with the addition of the following sentence in Paragraph 7:

> Spanbauer also emailed the UIC law school student body on March 4, 2022, reporting that Professor Kilborn was scheduled to teach bankruptcy and secured transactions in the Fall 2022 semester, having successfully completed the diversity training program.

(Dkt. # 29 at 3). Defendants added the reference to the March 4, 2022 email because Kilborn filed that email as additional evidence of his continuing probation (Dkt. # 28-3). Defendants' characterization of that email – stating that the email "report[ing] that Professor Kilborn…having successfully completed the diversity training program…." – is misleading. The email actually states: "after successfully completing Cornell University for Teaching Innovation's 'Teaching and Learning in the Diverse Classroom' program." (Ex. C). Again, the Cornell module was only the first, five-week portion of the eight-week training mandated by Defendants. (Ex. A, ¶ 4). Defendants reprised this tactic in their Memorandum (Dkt. # 30 at 11), swapping out Defendant Spanbauer's actual quote for "successfully completing the [diversity training]."

When they served their draft Rule 11 motion, Defendant's counsel did not know that as of March 2, 2022, Kilborn had not completed the training mandated by Defendants. Accordingly, in their Memorandum (Dkt. # 30 at 12), they make a new argument: "Moreover, there is no evidence demonstrating that anything occurred between March 4 and 11, 2022, that derailed his return to

teaching in the fall, and certainly no evidence that Defendants "refused to reveal" the status of his

training or his return to the classroom." This argument ignores the fact that on March 4, 2022,

Defendant Spanbauer confirmed that Kilborn is still on probation for past conduct (Ex. A at ¶ 7);

it also ignores the fact that to this day, the UIC administration has declined to state whether Kilborn

has demonstrated sufficient "commitment to the goals of the program." (Ex. A at ¶ 6).

## III.    ARGUMENT

### A.    No Rule 11 Violation Occurred

Rule 11(b) requires an attorney or unrepresented party to certify that "to the best of the

person's knowledge, information, and belief, formed after an inquiry reasonable under the

circumstances…the factual contentions [in a pleading or other paper] have evidentiary support…."

Fed. R. Civ. P. 11(b)(3). *See also Kiebala v. Boris*, 2017 U.S. Dist. LEXIS 160333, *23 (N.D. Ill.

Sept. 29, 2017) (finding Plaintiff's amended complaint was not "frivolous, nor filed in bad faith,

for an improper purpose, or without adequate investigation."). **"In determining if sanctions for**

violating Rule 11 are warranted, the court must undertake an objective inquiry into whether the

party or his counsel should have known that his position is groundless." *Infante v. Portfolio*

*Recovery Associates, LLC*, 2017 U.S. Dist. LEXIS 86156, *5 (N.D. Ill. June 6, 2017) (quoting

*Cuna Mut. Ins. Soc. v. Office & Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir.

2006)). To justify the imposition of sanctions, "the movant must satisfy the '***high burden*** of

showing that Rule 11 sanctions are warranted.'" *Osundairo v. Geragos*, 447 F. Supp. 3d 727, 745

(N.D. Ill. 2020) (emphasis added) (quoting *In re Dairy Farmers of Am., Inc.*, 80 F. Supp 3d 838,

860 (N.D. Ill. 2015)). Defendants' Motion should be denied because the two sentences are true.

As addressed above, the Cornell module was only a portion of the mandated training.

Moreover, consistent with Plaintiff's First Amended Complaint at ¶¶ 50-51 (and Dkt. # 23 Resp.

at pgs. 3, 15), Kilborn *still* has not been told whether the UIC administrators "deem his effort to

be an adequate 'engagement and commitment to the goals of the program' or a 'satisfactory completion of the program,'" despite numerous requests, including ones that post-dated Spanbauer's March 2 email. (Ex. A, Kilborn Dec. at ¶¶ 3,4,6). Given the UIC administrators' lack of communication – and prior conduct – Kilborn had no assurances that he wouldn't be reprimanded or suspended again, based on the whim of those administrators, who imposed the training on Kilborn in the first place. (Ex. A, Kilborn Dec. at ¶¶ 6-8).

Defendants chide Plaintiff's counsel, arguing that "*any* reasonable inquiry, as required by Rule 11(b)" would have negated the claim that "Defendants have refused to reveal whether [Kilborn] has satisfactory complied with their mandate in order to be reinstated in the classroom." (Dkt. 29 Motion at ¶ 10; emphasis in original). Defendants, of course, cite to no evidence of this alleged lack of due diligence *other* than Spanbauer's March 2 email. (*Id.* at ¶ 9). Kilborn and his counsel did not take any position inconsistent with that email.

The March 2 email is not conclusive evidence that disproves any statement in Kilborn's response to the motion to dismiss. Defendants are arguing that specific inferences should be drawn from the email. They are arguing disputed, not established, facts, which cannot be the basis for a Rule 11 motion. Kilborn received the email and interpreted it together with all the other facts. Kilborn's reasonable interpretation of Spanbauer's vague, premature email did *not* put him on notice that his obligation under the sensitivity training "program" was complete (because it was not). Further, nothing in Spanbauer's email reflects that she was providing a binding clearance on behalf of the other UIC administrators who mandated the training in the first place. (Ex. B).

Moreover, Defendant Spanbauer's March 4, 2022 email post-dates her March 2 email and confirms that Kilborn is on probation for past conduct. Just as happened in December 2021 after public outcry over the findings letter, Kilborn could again be suspended summarily even before the next semester if Defendants conclude he was not sufficiently "committed to the goals of the

[training] program" or if Defendants deem any of his actual or alleged "interactions and communications with students" to be violative of the policy. Likewise, Kilborn could again be suspended at any time if any of his class sessions do not satisfy Defendants' view of the policy.

Kilborn stands by the truth of the two sentences. Defendants' motion cannot be based on their own version of disputed facts. Finally, even if Kilborn's statements could be labeled as hyperbolic, they could not violate Rule 11. See *In re Dairy Farmers of Am., Inc., supra*, 80 F. Supp. 3d at 860-861 ("Upon reviewing each allegation in detail, the Court finds that at the time Plaintiffs' filed their second amended complaint, Plaintiffs' claims – although presented to the Court (and Schreiber) with a healthy dose of hyperbole – were neither abusive nor wholly without evidentiary support").

**B.      Even Defendants' Version of the Facts Would Not Support Dismissal**

Defendants also argue that the challenged statements in Kilborn's response are dispositive as to Defendants' Eleventh Amendment argument against Kilborn's official-capacity claim. (Dkt. # 29 Motion at ¶ 8). In that regard, Defendants have mischaracterized Kilborn's claim: "Kilborn's alleged constitutional violation in Counts I and III are based on the now-completed teaching hiatus and diversity training and have thus already occurred and concluded." (Dkt. # 30 at 3-4). Defendants are incorrect.

Kilborn's suit challenges, on constitutional grounds, Defendants' ongoing enforcement of an unconstitutional, vague, and arbitrary antiharassment policy that punishes and chills protected speech. (e.g., FAC ¶¶ 55-60, 73-77). Kilborn challenges the ruling that his past speech violated Defendants' policy (FAC ¶¶ 25-43), for which Defendants have implemented an arbitrarily shifting series of ongoing punishments. (FAC ¶¶ 44-51). The facts alleged in the FAC in no way support Defendants' conclusion that the punishments are complete. Kilborn also challenges the continued enforcement of the policy against him because it chills his important rights to speak and

teach freely as a law professor. (e.g., FAC ¶¶ 55, 57, 60, 65-66, 73-76). Defendants have not abandoned their unconstitutional antiharassment policy, by which Defendants use vague and arbitrary standards to implement the single word "harassment." (FAC ¶¶ 73-76). Consistent with countless other speech cases against state actors in federal court, the FAC requests injunctive relief both to stop Defendants' unconstitutional punishment of Kilborn's past speech and to preclude future unconstitutional enforcement of the policy against him. (FAC p. 20, Prayer for Relief at A, B).

The legal issue raised by Defendants' Rule 12 motion is whether the First Amended Complaint alleges an ongoing violation of federal law and seeks prospective relief under the *Ex Parte Young* doctrine. (Dkt. # 23 Resp. at 3). Even if one accepts Defendants' disputed version of the import of the March 2 email—that Spanbauer informed Kilborn that he *had* satisfied his obligations of the training program—there is still an ongoing violation of federal law. First, Defendants can change their minds at any time and his return to teaching is subject to their whim. (Dkt. # 23 Resp. at 3). Second, even with no more training and a return to the classroom, this Court can restrain any further punishments. (*Id.*). In fact, Kilborn is still being punished for past speech because Defendants have put him on probationary status. (Ex. C March 4, 2022 email). Third, correcting the false disciplinary record, which now labels Kilborn a convicted violator of Defendants' policy, is itself a form of prospective relief that this Court can grant under *Ex Parte Young*. (Dkt. # 23 at 4, citing *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986)). Fourth, Kilborn's future speech is being unconstitutionally chilled, so "[t]his is a classic *Ex Parte Young* case, where the threat of *future* enforcement of their policy is real and subject to the scrutiny of the federal court." (Dkt. # 23 at 4). In any event, Defendants' version of disputed facts should not be credited on a Rule 12 motion or a Rule 11 motion, so both motions should be denied.

## IV.    CONCLUSION

Plaintiff respectfully requests that the Court deny the motion for Rule 11 sanctions.

Respectfully submitted,

/s/Paul K. Vickrey
Paul K. Vickrey (vickrey@vvnlaw.com)
Patrick F. Solon (solon@vvnlaw.com)
Dylan M. Brown (brown@vvnlaw.com)
VITALE, VICKREY, NIRO, SOLON &
GASEY LLP
311 S. Wacker Dr., Suite 2470
Chicago, IL 60606
(312) 236-0733
Fax: (312) 236-3137

*Attorneys for Plaintiff, Jason J. Kilborn*