IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JASON J. KILBORN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-00475 |
| | ) | |
| MICHAEL AMIRIDIS, CARYN A. BILLS, | ) | Judge Sara L. Ellis |
| JULIE M. SPANBAUER, DONALD KAMM, | ) | |
| and ASHLEY DAVIDSON, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF APPEAL

Plaintiff Jason J. Kilborn appeals to the United States Court of Appeals for the Seventh

Circuit from the final judgment entered on November 1, 2023.

Respectfully submitted,

_____/s/ Patrick F. Solon_____
Paul K. Vickrey (vickrey@vvnlaw.com)
Patrick F. Solon (solon@vvnlaw.com)
Dylan M. Brown (brown@vvnlaw.com)
Vitale, Vickrey, Niro, Solon & Gasey LLP
311 S. Wacker Dr., Suite 2470
Chicago, IL 60606
(312) 236-0733

*Attorneys for Plaintiff Jason J. Kilborn*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JASON J. KILBORN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-00475 |
| | ) | |
| MICHAEL AMIRIDIS, CARYN A. BILLS, | ) | Judge Sara L. Ellis |
| JULIE M. SPANBAUER, DONALD KAMM, | ) | |
| and ASHLEY DAVIDSON, | ) | |
| | ) | |
| Defendants. | ) | |

## DOCKETING STATEMENT

Plaintiff-Appellant Jason J. Kilborn respectfully submits this Docketing Statement for his appeal to the United States Court of Appeals for the Seventh Circuit, pursuant to Circuit Rules 3(c)(1) and 28(a).

### 1. Statement Concerning the District Court's Jurisdiction

Plaintiff filed claims for relief pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the First, Fifth, and Fourteenth Amendments to the United States Constitution by Defendants acting under color of state law. Plaintiff sued the Defendant administrators of the University of Illinois Chicago in their official capacities and as individuals. The district court had federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4). Plaintiff also filed related tort claims under Illinois law against the Defendants, for defamation, false light invasion of privacy, and intentional infliction of emotional distress, for which the district court had supplemental jurisdiction under 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy as the federal claims.

**2. Statement Concerning Appellate Jurisdiction**

The Court of Appeals for the Seventh Circuit has jurisdiction under 28 U.S.C. § 1291, based on the following particulars:

(i) The district court entered a final judgment on November 1, 2023, which disposed of all claims with respect to all parties.

(ii)-(iii) No post-judgment motions were filed.

(iv) Plaintiffs filed their notice of appeal on November 2, 2023.

(v) This is not an appeal from the decision of a magistrate judge.

**3. Statement Regarding Other Matters Under Circuit Rule 3(c)(1)**

(i) There are no prior or related appellate proceedings in the case.

(ii) There is no prior litigation in the district court.

(iii) There are no related criminal convictions.

(iv) The current occupant of the office of each official-capacity Defendant is stated below:

- The current Chancellor of the University of Illinois Chicago, the office formerly held by Defendant Michael Amiridis, is Marie Lynn Miranda.

- The current Associate Chancellor, Office for Access and Equity, at University Illinois Chicago is Defendant Caryn A. Bills.

- The current Dean of the University of Illinois Chicago School of Law, the office formerly held by Defendant Julie M. Spanbauer, is Nicky Boothe.

- The current Director, Office for Access and Equity, at the University of Illinois Chicago is Defendant Donald Kamm.

- The current Title IX & Equity Compliance Specialist in the Office for Access and Equity at the University of Illinois Chicago, the office formerly held by Defendant Ashley Davidson, is Matt Walsh.

Respectfully submitted,

_____/s/ Patrick F. Solon_____
Paul K. Vickrey (vickrey@vvnlaw.com)
Patrick F. Solon (solon@vvnlaw.com)
Dylan M. Brown (brown@vvnlaw.com)
Vitale, Vickrey, Niro, Solon & Gasey LLP
311 S. Wacker Dr., Suite 2470
Chicago, IL 60606
(312) 236-0733

*Attorneys for Plaintiff Jason J. Kilborn*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Jason J. Kilborn,

Plaintiff(s),

v.

Michael Amiridis, Caryn A. Bills, Julie M.
Spanbauer, Donald Kamm, and Ashley Davidson,

Defendant(s).

Case No.  22-cv-475
Judge Sara L. Ellis

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐  in favor of plaintiff(s)
and against defendant(s)
in the amount of $            ,

which ☐ includes        pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐  in favor of defendant(s)
and against plaintiff(s)

.

Defendant(s) shall recover costs from plaintiff(s).

---

☒  other: The Court grants in part Defendants' motion to dismiss. The Court dismisses Kilborn's federal claims with prejudice. The Court dismisses Kilborn's state law claims without prejudice to refiling in state court.

---

This action was *(check one)*:

☐ tried by a jury with Judge        presiding, and the jury has rendered a verdict.
☐ tried by Judge        without a jury and the above decision was reached.
☒ decided by Judge Sara L. Ellis on a motion to dismiss.

Date:  11/1/2023

Thomas G. Bruton, Clerk of Court

Rhonda Johnson, Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JASON J. KILBORN,              )
                                  )
           Plaintiff,        )
                                  )     No. 22 C 475
      v.                      )
                                  )     Judge Sara L. Ellis
MICHAEL AMIRIDIS, CARYN A. BILLS,  )
JULIE M. SPANBAUER, DONALD KAMM,  )
AND ASHLEY DAVIDSON          )
                                  )
           Defendants.     )

## OPINION AND ORDER

University of Illinois Chicago ("UIC") School of Law professor Jason Kilborn, formerly the subject of an investigation by UIC's Office of Access and Equity ("OAE"), brings this suit against Defendants Michael Amiridis, Caryn Bills, Julie Spanbauer, Donald Kamm, and Ashley Davidson, all UIC employees, in their official and individual capacities. Based on OAE's investigation and recommended sanctions, Kilborn alleges violations of the First Amendment, Fourteenth Amendment, and state law, specifically defamation and false light.

After Defendants moved to dismiss Kilborn's First Amended Complaint, Doc. 20, the Court dismissed Kilborn's First Amendment retaliation claim, First Amendment compelled speech claim against Defendants in their official capacities, and intentional infliction of emotional distress claim. Doc. 43. The Court also limited Kilborn's defamation and false light claims to certain allegedly false statements, not including the "cockroaches" reference. *Id.* Kilborn timely filed his Second Amended Complaint on March 1, 2023, alleging all the same

claims except "the dismissed claims for (1) a property interest in the 2% across-the-board merit raise, and (2) intentional infliction of emotional distress." Doc. 47 at 1 n.1.[1]

Because Kilborn has again failed to sufficiently plead that his speech involved matters of public concern, the Court dismisses his First Amendment retaliation claim. The Court finds that sovereign and qualified immunity shield Defendants from Kilborn's First Amendment compelled speech claim and dismisses that claim against Defendants in their official and personal capacities. Additionally, the Court dismisses Kilborn's Fourteenth Amendment due process claims because they fail to state a cognizable claim. Without any viable federal claims remaining, the Court declines to exercise supplemental jurisdiction over his state law claims and dismisses those claims without prejudice.

## BACKGROUND[2]

Kilborn is a tenured professor at UIC School of Law. In December of 2020, Kilborn gave his Civil Procedure II class a final exam, which included a hypothetical employment discrimination scenario that Kilborn had used on his exam for ten years. The scenario focused on an employee who "quit her job at Employer after she attended a meeting in which other managers expressed their anger at Plaintiff, calling her a 'n____' and 'b____' (profane expressions for African Americans and women) and vowed to get rid of her." Doc. 47 ¶ 15.

---

[1] The Second Amended Complaint restates a claim for Violation of University of Illinois Statute (Count II). Kilborn previously conceded that Count II did not constitute an independent claim, so the Court dismissed it for the sake of clarity. Doc. 43 at 21 n.6. The parties do not address this claim further, and so the Court again dismisses Count II for the same reasons.

[2] The Court takes the facts in the background section from Kilborn's Second Amended Complaint—which remain largely the same as those included in his First Amended Complaint—and exhibits attached thereto and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Kilborn chose the "precise setting and language" of this question to further the themes discussed throughout the semester, namely "civil rights and race discrimination." *Id.* ¶¶ 62, 64. The exam question generated student criticism, including a petition circulated by the Black Law Students Association ("BLSA") (the "BLSA Petition").

On January 4, 2021, Kilborn emailed a former student expressing his sadness and pain from the BLSA Petition. Kilborn saw the student's name on the BLSA "attack letter" against him and conveyed that it was "[s]uch a shame to see all of [his] efforts to offer comfort and encouragement . . . only to be now vilified in the most vicious, cruel, and uncompassionate way." Doc. 47-1 at 10. Kilborn said that he felt "heart . . . broken." *Id.* A few days after sending the email, Kilborn discussed the controversy over Zoom with a member of BLSA, who had not been a student in Kilborn's class. The call occurred after class hours. About an hour into the over four-hour conversation with the student, the student asked Kilborn why the law school dean did not show him the BLSA Petition. Kilborn responded, in jest, that the law school dean might not have shared the petition because she feared that if Kilborn saw what students said about him, he might "become homicidal." Doc. 47 ¶ 20. The conversation continued with no indication that the student felt distressed or threatened.

As a result of his conversation with the BLSA member, Kilborn alleges that "the law school dean, along with other Defendants" invoked UIC's Violence Prevention Plan and convened a Behavioral Threat Assessment Team to assess the purported threat of physical violence. *Id.* ¶ 22. On January 12, 2021, the first day of Kilborn's classes for the spring semester, the law school dean told Kilborn that he must take an "indefinite administrative leave"; cancelled his classes for the semester; forbade him from coming onto campus or engaging in UIC activities; prohibited him from meeting with colleagues, students, or alumni; and required

3

Kilborn to seek prior approval before speaking at external conferences. *Id.* ¶ 24. Additionally, the dean told Kilborn "not [to] discuss" the events with anyone associated with UIC. *Id.* When Kilborn asked for the reason behind these actions, the dean conveyed that students raised additional concerns regarding possible violations of UIC policies, including UIC's Nondiscrimination Policy. The dean informed Kilborn that OAE would explain more in the coming days.

On January 15, 2021, Kilborn met with OAE. Caryn Bills, OAE's Associate Chancellor, told him that his comment about becoming homicidal predicated his administrative leave. Kilborn admitted that he made the comment but emphasized that he said it in jest. To clear the administrative leave, Kilborn had to meet with UIC health officials and undergo drug testing and examination by a nurse, social worker, and doctor. A few days later, Kilborn cleared administrative leave and began unrestricted duty. His classes remained cancelled.

A month later, on February 17, 2021, OAE provided Kilborn with a notice of investigation related to allegations of race-based discrimination and harassment. The notice included a list of allegations from unidentified sources to which Kilborn attempted to respond in writing and at an interview, although he objected that he could not respond to the vague allegations.

Three months later, on May 28, 2021, OAE provided a findings letter (the "Findings Letter") to Kilborn. The Findings Letter reflected that OAE did not substantiate the allegations of race-based discrimination against Kilborn. It did, however, conclude that Kilborn's actions amounted to harassment in violation of the Nondiscrimination Policy. OAE based its determination on a variety of purported statements and actions taken by Kilborn, including that he interfered with Black students' participation in UIC's programs; made references to

4

"cockroaches" and "lynching"; used an "African American Vernacular English" ("AAVE") accent when referencing a Black artist's lyrics over the course of one class; used an exam question that included an explicit (abbreviated) reference to a racial epithet; expressed anger and displeasure when he learned students had objected to the exam question; and discussed the possibility that he might become "homicidal" as a result of BLSA's Petition, among other findings. Doc. 47-1 at 3–5. All Defendants participated in creating the Findings Letter, which Kilborn alleges they published by sending to BLSA members and others. The entire Findings Letter eventually made its way into an ABA Journal article. Other news sources picked up the story and reported that Kilborn referred to minorities as "cockroaches" and used racial slurs. Protests and a press conference were held to "denounce" Kilborn. Doc. 47 ¶ 40.

A few weeks later, on June 18, Kilborn met with Julie Spanbauer, Interim Dean of UIC's law school, to discuss next steps for Kilborn resulting from the Findings Letter. Kilborn agreed to allow someone from UIC to review his class recordings for instances of potential racial harassment and report if any instance of potential racial harassment arose. Kilborn also agreed to speak with Spanbauer before responding to any arising race-based student complaint. Based on this conversation, Spanbauer provided Kilborn with a "final resolution." *Id.* ¶ 45. The resolution consisted of requirements and recommendations for Kilborn. One requirement mandated that, if a review of his class recordings over four semesters revealed that Kilborn maintained a harassing classroom environment, Kilborn would have to undergo sensitivity training.

Spanbauer later "reneg[ed]" on their "agreed settlement arrangement," which Kilborn accepted "to avoid a lawsuit," because Kilborn did not receive a 2% merit raise and Defendants required him to complete sensitivity training, comprised of an eight-week diversity course. *Id.* ¶¶ 45–47, 50. As part of the course, Kilborn had to meet with a trainer who would provide

feedback regarding Kilborn's engagement with and commitment to the program. Kilborn could not teach his courses until he satisfactorily completed the program. Kilborn "complied with" the training program. *Id.* ¶ 51. Kilborn has since changed his curriculum to avoid cases that discuss issues of racial discrimination for fear of violating UIC's policy.

In November 2021, in response to a Freedom of Information Request, UIC released the investigation report upon which OAE based its Findings Letter. Kilborn received the report, drafted by Ashley Davidson, a Title IX and Equity Compliance Specialist in OAE during the relevant time period, for the first time on November 11, 2021. On November 30, Michael Amiridis, the Chancellor of UIC, released the report to the UIC community along with a cover letter (together, the "UIC Community Letter"). The report included many of the same statements as the Findings Letter but added statements including that "certain alleged statements [by Kilborn] and threats did occur;" that Kilborn had created "race related fears of physical safety and retaliation"; and that Kilborn was wrong to suggest killing anyone as a reaction to written or spoken criticism." *Id.* ¶ 43. Kilborn alleges each of these statements are false.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th

6

Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Waiver under Federal Rule of Civil Procedure 12(g)

As an initial matter, the Court addresses Kilborn's argument that Defendants have waived several arguments by not raising them in their first motion to dismiss. Kilborn argues that the Court should not consider Defendants' arguments regarding their immunity under the Eleventh Amendment, qualified immunity, or the constitutionality of the Nondiscrimination Policy because Rule 12(g) prohibits piecemeal litigation, and Defendants could have advanced each of these arguments in their first motion to dismiss.

Rule 12(g) "requires litigants to consolidate certain dismissal arguments in a single motion." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). Rule 12(g) provides two exceptions—Rule 12(h)(2), concerning failure to state a claim, and Rule 12(h)(3), concerning lack of subject matter jurisdiction. *Id.* Because Defendants move for dismissal solely on Kilborn's failure to state claims, and not for lack of subject matter jurisdiction, the Court only considers Rule 12(h)(2). Rule 12(h)(2) "makes it clear that a litigant need not consolidate all failure-to-state-a-claim arguments in a single dismissal motion." *Id.* Particularly where the plaintiff files an amended complaint following the dismissal of some claims, defendants may raise additional challenges to the complaint for failing to state a claim. *See id.* (permitting review of a statute of limitation defense raised for the first time in a motion to dismiss an amended complaint); *About U.S. Real Est., Inc. v. Burnley,* No. 14 C 04471, 2015 WL 3397025, at *6 (N.D. Ill. May 26, 2015) (same and distinguishing *Kramer v. American Bank & Trust Co.,*

No. 11 C 8758, 2014 WL 3638852 (N.D. Ill. July 23, 2014) by noting that in *Kramer*, plaintiffs did not file an amended complaint prior to defendant's second motion to dismiss).

The Court agrees with Defendants that Rule 12(g) does not bar the Court from considering the additional arguments that Defendants raised in this motion because they address whether Kilborn failed to state various claims. *See, e.g.*, *Roldan v. Town of Cicero*, No. 17-CV-03707, 2021 WL 3674615, at *5 (N.D. Ill. Aug. 19, 2021) (permitting review of defendants' qualified immunity defense and challenges to plaintiff's *Monell* claim raised in response to an amended complaint despite those defenses being available to defendants on plaintiff's initial complaint), *aff'd and remanded sub nom. Roldan v. Stroud*, 52 F.4th 335 (7th Cir. 2022). The Court, therefore, considers all of Defendants' arguments for dismissal.

## II.    Federal Claims

### A.    First Amendment Claims

Kilborn brings two First Amendment claims—one alleging retaliation and the other compelled speech—against Defendants in their individual and official capacities. Defendants move to dismiss both claims on the bases that sovereign immunity protects them in their official capacities and qualified immunity protects them in their individual capacities. They also move to dismiss Kilborn's claims on the merits. The Court addresses each of Defendants' arguments where relevant.

#### 1.    Retaliation

In his Second Amended Complaint, Kilborn clarifies that his retaliation claim relies on four statements: the December 2020 exam question, statements he made during his discussion with the BLSA student, an email written to a former white student, and the in-class statements he

made in January 2020.[3]  Doc. 47 ¶ 57.  To establish a First Amendment retaliation claim, a public employee must show that (1) the Constitution protects his speech, (2) his speech caused his employer to act, and (3) he suffered deprivation as a result.  *Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 792 (7th Cir. 2016).

The parties once again focus their arguments on the first factor—whether the Constitution protected Kilborn's speech.  The First Amendment protects a public employee's speech when the employee speaks as a private citizen addressing matters of public concern.  *Id.*  If the speaker is not wearing his hat "as a citizen," or if he is not speaking "on a matter of public concern," then the First Amendment does not protect him.  *Brown v. Chi. Bd. of Educ.*, 824 F.3d 713, 715 (7th Cir. 2016).  Defendants argue that Kilborn did not speak as a private citizen, relying on the Supreme Court's holding in *Garcetti v. Ceballos*, 547 U.S. 410 (2006).  In *Garcetti*, the Supreme Court established that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes."  *Id.* at 421.  However, some courts have refused to apply *Garcetti* to speech arising in public university settings given the "academic exception" alluded to in Justice Souter's *Garcetti* dissent.  *Id.* at 438 (Souter, J., dissenting) ("I have to hope that today's majority does not mean to imperil First Amendment protection of academic freedom in public colleges and universities, whose teachers necessarily speak and write 'pursuant to . . . official duties.'"); *see Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014) ("*Garcetti* does not—indeed, consistent with the First Amendment, cannot—apply to teaching and academic writing that are performed 'pursuant to the official duties' of a teacher and professor."); *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d

---

[3] While Kilborn references statements made in a class taught in Fall 2020 as one basis for his retaliation claim in his Second Amended Complaint, Doc. 47 ¶ 57, in reviewing the Exhibits attached to the Complaint, particularly Exhibits A - C, the Court finds that Kilborn actually refers to statements he made during a class he taught on January 23, 2020.

9

550 (4th Cir. 2011) (declining to apply *Garcetti* to "speech related to scholarship or teaching").

When the Court considered Defendants' first motion to dismiss, the Seventh Circuit had not

explicitly decided whether *Garcetti* applies to a professor's speech related to scholarship or

teaching. Doc. 43 at 8. It still has not done so. Meanwhile, the Second Circuit has joined the

Fourth, Fifth, Sixth and Ninth Circuits in applying the academic exception to *Garcetti*. *See Heim*

*v. Daniel*, 81 F.4th 212, 228 (2d Cir. 2023) ("Accordingly, we join those Circuits in holding that

we must evaluate claims founded on such speech outside of *Garcetti*'s 'official duties'

framework.").

     The Court does not need to decide whether the academic exception applies here because

it can resolve Kilborn's claims by evaluating whether his speech involves a matter of public

concern.[4] "Speech involves matters of public concern when it can be fairly considered as

relating to any matter of political, social, or other concern to the community, or when it is a

subject of legitimate news interest; that is, a subject of general interest and of value and concern

to the public." *Lane v. Franks*, 573 U.S. 228, 241 (2014) (citation omitted) (internal quotation

marks omitted). "The pivotal question is not the actual presence of public controversy, but

whether the speech might inform the public debate on an issue of legitimate interest to the public

at the time it is published." *Milwaukee Deputy Sheriff's Ass'n v. Clarke*, 574 F.3d 370, 381 (7th

Cir. 2009). "Whether a statement rises to the level of public concern is a question of law, and in

answering this question [courts] look to the 'content, form, and context' of the statement."

---

[4] Even in the circuits where courts have found the academic exception exempts a professor's speech from
*Garcetti*, courts still must evaluate whether the speech involved matters of public concern. *See Heim*, 81
F.4th at 228 ("Instead, in *Garcetti's* absence, we are left with the line of authority extending from
*Pickering* that instructs us to ask (1) whether the employee is speaking on a matter of 'public concern,'
and if so (2) whether the relevant government entity had an adequate justification for treating the
employee differently from any other member of the public based on the government's needs as an
employer"); *Meriwether v. Hartop*, 992 F.3d 492, 507 (6th Cir. 2021) (same); *Buchanan v. Alexander*,
919 F.3d 847, 853 (5th Cir. 2019) (same); *Demers*, 746 F.3d at 412 (same).

*Kristofek*, 832 F.3d at 984 (quoting *Chaklos v. Stevens*, 560 F.3d 705, 712 (7th Cir. 2009)).

While content carries the most weight in the analysis, "the broad subject matter is not

determinative, and [courts] must instead focus on the particular content of the speech." *Kubiak*,

810 F.3d at 483. Courts may also consider the motive of the speaker as part of the context

analysis. *Id.* at 484.

 As detailed below, the Court finds that each of the statements at issue fails to involve a

matter of public concern. The Court, thus, dismisses Kilborn's First Amendment retaliation

claim.

a. **December 2020 Exam Question**

 The Court previously dismissed Kilborn's retaliation claim as to his December 2020

exam question despite Kilborn's arguments that his question built on a significant theme of his

class—discrimination in the context of civil rights litigation. Doc. 43 at 10. Kilborn has

included additional allegations describing his class themes in his Second Amended Complaint,

alleging that his "course frequently explored (in class discussions and otherwise) civil rights and

race discrimination." Doc. 47 ¶ 62. Kilborn further explains that his exam question functioned

as a "continuation of the teaching and learning involved in the course" and that he chose the

"precise setting and language . . . for pedagogical purposes of extending learning, not simply as a

non-expressive matter of assessing prior learning." *Id.* ¶ 64.

 Even considering Kilborn's new allegations, the Court finds that the 2020 exam question

does not involve a matter of public concern. The additional allegations do not change the

speech's specific content (an abbreviated racial epithet) or its form (a final exam question), both

of which the Court previously determined counseled against finding the statement involved a

matter of public concern. Doc. 43 at 9. Instead, Kilborn's new allegations only inform his

11

motive, which "is relevant as part of the context" but "is not dispositive." *Kubiak*, 810 F.3d at 483 (remanding a claim for further evaluation of whether a statement involved a matter of public concern where the district court only considered the speaker's motive). Even with the additional context that Kilborn intended to extend learning on his exams, the use of a racial epithet on an exam "adds little to the public discourse on [racial discrimination]" because a student's response to a written exam question remains limited to the professor grading the exam; therefore, no public discourse can exist. *Kluge v. Brownsburg Cmty. Sch. Corp.*, 432 F. Supp. 3d 823, 839 (S.D. Ind. 2020); *cf. Garcetti,* 547 U.S. at 420 (emphasizing "the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion" when determining whether the First Amendment protects a public employee's speech). Considering the context, form, and specific content together, the Court again finds that the December 2020 exam question does not raise a matter of public concern. *See Kluge*, 432 F. Supp. 3d at 839 (professor's decision regarding the use of pronouns to address his students "did not involve a matter of public concern," even though "issues relating to the treatment of individuals based on their gender identity are of great public importance," because the professor "was not conveying a message concerning such matters when he refused to call students by their [preferred] names").

### b.    Conversations with Students

The Court also previously dismissed Kilborn's retaliation claim as to his post-exam conversations with students because the context, content, and form of the statements "evince[d] their personal nature." Doc. 43 at 11. Nothing in the Second Amended Complaint compels the Court to change its analysis.

The first student conversation occurred when Kilborn emailed a former student on January 4, 2021, in response to her signing the BLSA petition.  Kilborn does not allege any new facts relating to this exchange.  Kilborn's email to his prior student reflects his own personal grievance, not a matter of public concern, so it remains unactionable.  *See Clarke*, 574 F.3d at 378 (explaining that the First Amendment does not protect speech that relates to matters of public interest where it focuses "solely on the personal effect upon" an employee or the "only point of the speech was to further some purely private interest"); *Howell v. Millersville Univ. of Pa.*, 283 F. Supp. 3d 309, 337 (E.D. Pa. 2017) (finding that "the content, form, and context of [employee's] speech characterize[d] it as a personal grievance" where he complained about department decisions to raise revenue for student activities and his treatment at the hands of his colleagues, and he expressed the opinions in faculty meetings and private emails), *aff'd*, 749 F. App'x 130 (3d Cir. 2018).  The specific content of the email, which included statements from Kilborn about "how painful it was" to see the student's name on the BLSA letter, as well as its form, a personal email directed only to one former student, emphasize the personal nature of his speech.  Doc. 47-1 at 10; *see Perkins v. O'Malley*, No. 94 C 7029, 1996 WL 316894, at *6 (N.D. Ill. June 10, 1996) (statement that included charges of racism and sexism did not implicate matters of public concern where, "considering the form, context, and especially the content," it sought to "express [the employee's] unhappiness about her evaluation . . . , not to bring to the public's attention a matter in which it could expected to take an interest"); *Marshall v. Porter Cnty. Plan Comm'n*, 32 F.3d 1215, 1219 (7th Cir. 1994) ("If the speech concerns a subject of public interest but the *expression* addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern.").

The second student conversation occurred on January 9, 2021, when Kilborn spoke with a member of BLSA over Zoom. Here, Kilborn does provide new allegations informing the context of his conversations. Kilborn alleges his statement "was made in the context of a lengthy discussion of a matter of public concern: the BLSA's public petition objecting to Plaintiff's exam question." Doc. 47 ¶ 60. Kilborn still fails to establish that the specific content and form of the conversation rise to the level of public concern. As Kilborn acknowledges, the conversation occurred after hours from his personal home with one individual. *Id*. ¶ 59. Further, the specific content of the speech—that Kilborn might "become homicidal"—reflects a personal reaction to the exam controversy. *Clarke*, 574 F.3d at 379 (determining speech did not involve an issue of public concern when the speaker "responded to what he considered to be a personal challenge" and focused "solely on the personal effect upon" him). Consequently, Kilborn fails to state a retaliation claim for both student interactions.

### c.        January 23, 2020 In-Class Statements

In the Second Amended Complaint, Kilborn explicitly includes the statements made during his January 23, 2020 class—the "cockroaches" and "lynching" statements, as well as his use of AAVE to recite a Jay-Z lyric—as the basis for his retaliation claim. Doc. 47 ¶¶ 57, 61. Defendants argue that Kilborn's in-class statements do not involve matters of public concern because Kilborn alleges that they did not have racial implications. The Court agrees.

As Defendants note, Kilborn rejects the idea that his in-class statements about "cockroaches" and "lynching" considered race. Kilborn alleges that "[t]he notion that Kilborn had ever referred to racial minorities as 'cockroaches' is demonstrably false." *Id.* ¶ 35. The transcript that Kilborn attaches to the Second Amended Complaint demonstrates that the cockroach statement arise not in a discussion centered on racial discrimination, but instead

14

during a discussion about frivolous litigation.  Doc 47-1 at 6.  Similarly, Kilborn's statement regarding lynching, as alleged, did not occur in the context of a discussion of racial discrimination.  As alleged, the statement in its entirety states "I'm not subjecting my corporate bottom line to that public lynching; I'm sorry, that's not the right word to use."  Doc. 47 ¶ 36.  The plain language of the statements reflects that the statements did not address issues of racial discrimination.  *See Kluge*, 432 F. Supp. 3d at 839 (finding speech did not involve a matter of public concern where the speech did not directly add to the public discourse on issues of gender identity issues).

In his response, Kilborn tries another angle, arguing that because they arose during discussions of frivolous litigation, his "cockroaches" and "lynching" statements constitute matters of public concern.  However, even if Kilborn has correctly identified that frivolous litigation constitutes a matter of public concern,[5] "the pivotal question . . . is whether the speech might inform the public debate on the issue of interest."  *Clarke*, 574 F.3d at 381.  As alleged, neither statement informs the discourse on frivolous litigation.  *See id.* (holding that "although [the speaker's] speech may have been of general public interest," it still did not constitute a matter of public concern because its context and form emphasized its personal nature).

As to Kilborn's use of an AAVE accent to quote a Jay-Z lyric, Kilborn argues he used the lyric as an "example of how common such abusive pretextual stops are, to enliven and enlighten the discussion of a case involving allegations of similar race-based pretextual motives."  Doc. 59 at 16.  The Findings Letter took issue with Kilborn's use of AAVE when referencing a Black artist's lyrics, not his use of the lyrics themselves, however.  Doc. 47-1 at 3.  While issues relating to race discrimination constitute matters of public concern, *see, e.g.*, *Walker v. Bd. of*

---

[5] The Court could not find any authority identifying frivolous litigation as a matter of public concern, nor does Kilborn cite any.

*Regents of Univ. of Wis. Sys.*, 300 F. Supp. 2d 836, 860 (W.D. Wis. 2004) ("[R]ace

. . . discrimination [is a] matter[] of public concern." (citing *Connick v. Myers*, 461 U.S. 138

(1983))), Kilborn's use of a specific accent to convey the message does not inform the public of

a debate on an issue of interest, *see Clarke*, 574 F.3d at 381 ("[T]he pivotal question . . . is

whether the speech might inform the public debate on the issue of interest."); *Kluge*, 432 F.

Supp. 3d at 839 (professor "was not conveying a message concerning [gender identity] matters

when he refused to call students by their [preferred] names"). Therefore, he cannot proceed on

his retaliation claim for any of the January 2020 in-class statements. And because Kilborn has

failed to establish that any of the speech at issue involved matters of public concern, the Court

dismisses his retaliation claim.[6]

### 2. Compelled Speech

Next, Defendants move for dismissal of Kilborn's claims for compelled speech. Kilborn

alleges that Defendants violated the First Amendment by requiring him to undergo sensitivity

training, which "compel[led] [Kilborn] to express his commitment to the goals of the program in

order to be released back to teaching, even if he disagree[d] with the content and purpose of this

diversity training." Doc. 47 ¶ 56. Defendants argue that the Eleventh Amendment bars the

claim against Defendants in their official capacities and qualified immunity bars the claim

against Defendants in their personal capacities. Further, Defendants argue that Kilborn has

failed to identify the speech in the training that warrants constitutional protection.

Defendants once again raise the Eleventh Amendment as a bar to Kilborn's compelled

speech against Defendants in their official capacity. The Eleventh Amendment bars suits against

---

[6] Defendants also moved to dismiss Kilborn's retaliation claim on sovereign immunity and qualified immunity grounds. Because the Court dismisses the claim on the merits, it does not consider Defendants' immunity arguments.

a State in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984).

"[S]tate universities, as well as their governing bodies, are protected from suit under the Eleventh

Amendment." *Mutter v. Madigan*, 17 F. Supp. 3d 752, 757–58 (N.D. Ill. 2014) (citing

*Kaimowitz v. Bd. of Trs. of Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir. 1991))), *aff'd as modified*

*sub nom. Mutter v. Rodriguez*, 700 F. App'x 528 (7th Cir. 2017). However, the "immunity is not

absolute"; under the *Ex parte Young* doctrine, the Eleventh Amendment does not extend to

claims to enjoin a state officer in his or her official capacity from engaging in prospective action

that will violate federal law. *Brown v. Budz*, 398 F.3d 904, 917–18 (7th Cir. 2005) (citation

omitted). To determine whether Kilborn's Second Amended Complaint avoids the Eleventh

Amendment bar, the Court must determine whether it "alleges an ongoing violation of federal

law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv.*

*Comm'n of Md.*, 535 U.S. 635, 363 (2002) (citation omitted).

In considering the First Amended Complaint, the Court found that Kilborn could not

proceed against Defendants in their official capacities on his compelled speech claim because he

did not allege an ongoing violation of law. *See* Doc. 43 at 13 (citing *Verizon Md., Inc. v. Pub.*

*Serv. Comm'n of Md.*, 535 U.S. 635, 363 (2002). Kilborn has not remedied this flaw in his

Second Amended Complaint, failing to provide any allegation of an ongoing violation of the law.

Although he again expresses fear that Defendants will compel him to speak in the future, such

fear does not amount to an ongoing violation. *See Lawlor v. Metro. Water Reclamation Dist. of*

*Greater Chi.*, No. 17-CV-117, 2018 WL 1293227, at *3 (N.D. Ill. Mar. 13, 2018) ("To seek

injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is

concrete and particularized; the threat must be actual and imminent, not conjectural or

17

hypothetical[.]" (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009))), *on reconsideration in part*, No. 17-CV-117, 2019 WL 1429621 (N.D. Ill. Mar. 30, 2019).

Defendants also raise qualified immunity to argue that Kilborn cannot pursue his compelled speech claim against them in their personal capacities. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (citation omitted) (internal quotation marks omitted). Kilborn correctly notes that courts generally do not grant motions to dismiss on qualified immunity grounds because "an immunity defense usually depends on the facts of the case." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001); *see also Hanson v. LeVan*, 967 F.3d 584, 597 (7th Cir. 2020) ("The plausibility standard, which leads us to take as given the plaintiffs' allegations about the nature of their positions, is why 'a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds.'" (quoting *Alvarado*, 267 F.3d at 651)). Plaintiffs also do not have an "obligation to initially anticipate and overcome a defense of qualified immunity in their complaint." *Hanson*, 967 F.3d at 597 (citation omitted) (internal quotation marks omitted). However, courts can evaluate qualified immunity arguments at the motion to dismiss stage "if the allegations in the complaint fail to state a claim of a clearly established right having been violated." *Id.* at 591; *see also Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015) ("[I]ndeed, we have reversed the denial of qualified immunity at the pleading stage where appropriate.").

The First Amendment "prohibits the government from telling people what they must say." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 61 (2006). Defendants first argue that Kilborn has failed to set forth a constitutional violation based on compelled

18

speech because Defendants never required Kilborn to agree to the purposes of the program as described in the December 2020 letter. But, as the Court previously determined, Kilborn sufficiently alleged that the program required him to express his commitment to its goals through written responses and discussions with his advisor, and that he disagreed with those themes. *See* Doc. 43 at 16. Because Kilborn's allegations concerning his compelled speech claim have not changed, taking Kilborn's allegations as true and construing all inferences in his favor, the Court finds Kilborn has sufficiently stated a constitutional violation.[7] *See Telescope Media Grp. v. Lucero*, 936 F.3d 740, 750 (8th Cir. 2019) (state could not "'coerce [plaintiffs] into betraying their convictions' and promoting 'ideas they find objectionable'" (citing *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018))).

This does not end the inquiry, however, as the second step of the qualified immunity analysis requires the right to have been "'clearly established' at the time of the alleged violation, such that a reasonable public official would have known his conduct was unlawful." *Hanson*, 967 F.3d at 592; *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015) ("[T]he right in question must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." (citation omitted) (internal quotation marks omitted)). "In other words, the plaintiff must demonstrate either that a court has upheld the purported right in a case

---

[7] Defendants also argue for the first time in reply that Kilborn's speech emerging from the mandatory sensitivity training fell within Kilborn's official duties and therefore does not constitute protected speech under the First Amendment. However, Defendants waived this argument by failing to raise it in their motion to dismiss, and so the Court does not consider it here. *See Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 249 F.R.D. 530, 536 (N.D. Ill. 2008) ("Reply briefs are for replying, not raising new arguments or arguments that could have been advanced in the opening brief."); *Murphy v. Vill. of Hoffman Ests.*, No. 95 C 5192, 1999 WL 160305, at *2 (N.D. Ill. Mar. 17, 1999) ("[I]t is established beyond peradventure that it is improper to sandbag one's opponent by raising new matter in reply. Providing specifics in a reply in support of a general argument in an objection counts as new matter in reply. . . . Raising an argument generally in a motion . . . does not give a litigant license to be vague in his original submissions and provide the necessary detail in his reply.").

factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right." *Arlington Heights*, 782 F.3d at 915 (citation omitted) (internal quotation marks omitted). Defendants argue that enforcing UIC's anti-harassment policy against Kilborn and requiring Kilborn's participation in a diversity training course does not fall within clearly established law. Kilborn in response points to one case from the Sixth Circuit, *Hardy v. Jefferson Community College,* 260 F.3d 671, 683 (6th Cir. 2001), to argue that courts have not applied qualified immunity in similar cases. However, the Sixth Circuit's qualified immunity holding in *Hardy* concerns only the alleged failure to renew the plaintiff's contract in retaliation for statements he made in the classroom; therefore, it has no relevance to whether Kilborn's compelled speech claim conforms to clearly established law. *Id.* at 675–76, 683. And "although [Kilborn] does not need to point to a case identical to his own, he must show that, in light of pre-existing law, a reasonable defendant would have known that his actions were unlawful." *Alvarado*, 267 F.3d at 652. Kilborn fails to do so.[8] *See Arlington Heights*, 782 F.3d at 915 (finding that qualified immunity applied where the plaintiff failed to identify a case factually similar to hers and failed to show the alleged constitutional violation was obvious). Therefore, the Court finds that Defendants have qualified immunity and dismisses Kilborn's compelled speech claims against Defendants in their individual capacities.

---

[8] The Court similarly has been unable to confirm that pre-existing law would instruct a reasonable defendant that her actions were unlawful in this situation. Indeed, the Court has found caselaw instructing that colleges may prohibit speech that amounts to sexual, racial, or other harassment and inform faculty that their behavior amounts to a violation of the university's anti-harassment policy. *Piggee v. Carl Sandberg Coll.,* 464 F.3d 667, 674 (7th Cir. 2006). And the Court's search has not turned up cases striking down on First Amendment grounds an employer's ability to compel attendance at a sensitivity training pursuant to enforcing an anti-harassment policy.

**B.      Due Process Claims**

The Fourteenth Amendment prevents a State from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Kilborn's Second Amended Complaint alleges that Defendants failed to provide Kilborn adequate process by depriving him of the opportunity to respond to OAE's investigation and failing to follow UIC's procedures before suspending him. Kilborn also challenges the constitutionality of UIC's Nondiscrimination Policy as unconstitutionally vague and a prior restraint on speech.

**1.      Failure to Receive Adequate Process**

Determining whether Kilborn experienced a procedural due process violation requires a two-step analysis—"[t]he first step requires us to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process is due." *Luellen v. City of E. Chi.*, 350 F.3d 604, 613 (7th Cir. 2003). Defendants focus on the first step, arguing that Kilborn has not alleged a deprivation of a property interest because he does not allege economic loss. Doc. 56 at 19–20. To qualify as a constitutionally protected property interest, the interest must be created by "existing rules or understandings that stem from an independent source such as state law." *Kim Constr. Co. v. Bd. of Trs. of the Vill. of Mundelein*, 14 F.3d 1243, 1245–46 (7th Cir. 1994) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). A plaintiff "must have more than a unilateral expectation of" the claimed interest; he "must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. Kilborn bears the burden of alleging that he possesses a protected property interest. *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004).

Kilborn "must show some economic loss from the [state's] action, or at least an identifiable impact on his future income or economic benefits." *Bordelon v. Chi. Sch. Reform*

*Bd. of Trs.*, 233 F.3d 524, 530 (7th Cir. 2000). Kilborn argues he suffered an identifiable impact on his future income when he lost the 2% raise after Defendants suspended him because the loss of this raise reduces all future income he may earn at the university. Defendants argue that this indirect economic harm argument simply restates Kilborn's previous economic harm argument—that the 2% raise constituted his property interest—which the Court previously rejected. *See* Doc. 43 at 18–19.

The Court agrees with Defendants. Kilborn's argument falters because any economic harm Kilborn experienced originates from his loss of a raise to which he has no legal entitlement. *See Townsend v. Vallas*, 256 F.3d 661, 676 (7th Cir. 2001) (holding the loss of additional income "not protected by tenure rights was a foreseeable possibility for any teacher in this situation, one that would not impact a constitutionally cognizable property right"). While the Seventh Circuit acknowledges that indirect economic harm, such as the impediment to future job opportunities or other indirect effects on future income "can inflict an actionable deprivation of property," *Head v. Chi. Sch. Reform Bd. of Trs.*, 225 F.3d 794, 803 (7th Cir. 2000), deprivations of property "are not actionable under the Constitution unless they are atypical and significant in relation to the inevitable 'deprivations' that people suffer as a result of contractual disputes and the other ordinary frictions of life," *Baerwald v. City of Milwaukee*, 131 F.3d 681, 683 (7th Cir. 1997). The loss of a 2% raise, even with some compounding effects on Kilborn's future income, does not qualify as "atypical" or "significant," particularly because at the time of Kilborn's suspensions he still received his full pay. *See Townsend*, 256 F.3d at 664–66, 676 (no property deprivation where a school temporarily reassigned a teacher to an administrative position during a nearly three-month investigation, foreclosing his ability to earn extra income from coaching but still paying him his full teacher's salary); *Bordelon*, 233 F.3d at 526, 530–31 (no property

22

deprivation where a school board transferred a principal to an administrative position for fifteen months but still afforded him his full pay and benefits); *Swick v. City of Chi.*, 11 F.3d 85, 86–87 (7th Cir. 1993) (no property deprivation where a police department placed an officer on involuntary sick leave for over a year but still paid him his full income); *cf. Grady v. Bd. of Trs. of N. Ill. Univ.*, 78 F. Supp. 3d 768, 778 (N.D. Ill. 2015) (finding the plaintiff alleged indirect economic effects through allegations that his suspension led to a "loss of employment, loss of past and future income and benefits, loss of earning capacity, emotional distress, loss of reputation, and humiliation and embarrassment").

Kilborn also argues that he had a cognizable property interest in employment free from severe sanction under University of Illinois Statutes Article IX.  Article IX defines severe sanction to include suspension with pay.  *See* Doc. 47 ¶ 82.  While Kilborn identifies a state statute that confers a right to process when facing a "severe sanction" including suspension with pay, he fails to allege that the violation of that state statute rises to the level of a constitutional due process violation.  *See Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 571 (7th Cir. 2017) ("We have tirelessly reminded litigants that our determination of whether the requirements of federal due process were satisfied is different from a determination of whether there was perfect compliance with an institution's rules."); *Swartz v. Scruton*, 964 F.2d 607, 610 (7th Cir. 1992) ("Procedural interests under state law are not themselves property rights that will be enforced in the name of the Constitution.").  Therefore, the Court dismisses Kilborn's due process claims as they relate to his failure to receive adequate process.

### 2.    Vagueness of Nondiscrimination Policy

Defendants move to dismiss Kilborn's claim that UIC's Nondiscrimination Policy is unconstitutionally vague for lack of Article III standing and for failure to state a claim.  Article

III standing requires "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992)). Defendants argue Kilborn's void for vagueness due process claim fails to state an injury in fact because it relies on a speculative harm—namely, an allegedly credible threat of future enforcement of the anti-harassment policy.

Article III requires that an injury in fact be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Susan B. Anthony*, 573 U.S. at 157–58. "Where the plaintiff brings a facial challenge under the First Amendment, a prior enforcement action is not required" to establish an injury in fact. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (Sept. 4, 2020). Instead, courts "have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony*, 573 U.S. at 159. A plaintiff must satisfy one of two tests to establish an injury in fact in a pre-enforcement scenario. First, he "may show an intention to engage in a course of conduct arguably affected by a policy, and that he faces a credible threat the policy will be enforced against him when he does." *Speech First*, 968 F.3d at 638. Or, he "may show a chilling effect on his speech that is objectively reasonable, and that he self-censors as a result." *Id.* Additionally, the plaintiff must show that under either test, the threat of enforcement or chilling effect "affect[s] the plaintiff in a personal and individual way." *Id.* at 638–39 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)).

Kilborn has sufficiently alleged an injury in fact based on the first method. Kilborn states he has changed his curriculum to avoid discussing cases that use certain derogatory slurs despite the pedological benefits those cases may provide. Doc. 47 ¶ 68; *Bell*, 697 F.3d at 455 ("[W]hen

24

one cannot know what triggers the ordinance such that it will be enforced, he may fairly assume that it can and will always be enforced and that total abstention from the protected activity is necessary to avoid arrest and prosecution."). Given the fact that Defendants have already enforced UIC's Nondiscrimination Policy against him and that Kilborn "has never been told what he should have done differently, despite asking many times," Doc. 47 ¶ 68, Kilborn has sufficiently alleged the credibility of the threat, *see Bell*, 697 F.3d at 454 (finding the plaintiff's past arrest under the statute at issue "supports [plaintiff's] claim that the enforcement of the ordinance has chilled his willingness to participate again"); *cf. Capeheart v. Terrell*, 695 F.3d 681, 684 (7th Cir. 2012) (finding prior retaliatory actions did not support plaintiff's claim of vagueness where the prior actions emerged from discretionary actions taken by defendants).

Because Kilborn has standing to bring his void for vagueness claim, the Court turns to Defendants' arguments on the merits. A statute is void for vagueness "if people of common intelligence must necessarily guess at [the law's] meaning and differ as to its application." *Greer v. Amesqua*, 212 F.3d 358, 369 (7th Cir. 2000) (citing *Grayned v. City of Rockford*, 108 U.S. 108–09 (1972)). When statutes raise basic First Amendment freedoms, "rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 479 (7th Cir. 2012) (citing *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012)). "Even under the heightened standard for the First Amendment, though, the potential chilling effect on protected expression must be both 'real and substantial' to invalidate a statute as void for vagueness in a facial challenge." *Id.* (citing *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975)).

However, "the government acting in the role of employer enjoys much more latitude in crafting reasonable work regulations for its employees." *Greer*, 212 F.3d at 369 (holding that an

25

anti-harassment policy, despite using general language, "sufficiently define[d] a range of inappropriate conduct which a reasonable employee would understand to satisfy due process and convey adequate warning that [the action] would result in discipline."). "[E]mployment policies will only violate the Due Process Clause if they do not 'sufficiently define a range of inappropriate conduct which a reasonable employee would understand' or 'convey adequate warning' that particular conduct will result in discipline." *Hicks v. Ill. Dep't of Corr.*, No. 20-3099, 2022 WL 17637374, at \*7 (C.D. Ill. Dec. 13, 2022) (citing *Greer*, 212 F.3d at 369).

Here, Kilborn's unconstitutionally vague claim turns on the Nondiscrimination Policy's use of "harassment." The Nondiscrimination Policy states "[t]he University of Illinois System will not engage in discrimination or harassment against any person because of race, color, religion, sex, national origin, ancestry, age, marital status, order of protection status, genetic information, disability, pregnancy, sexual orientation including gender identity, unfavorable discharge from the military or status as a protected veteran and will comply with all federal and state nondiscrimination, equal opportunity and affirmative action laws, orders and regulations." Doc. 56 at 26 n.9.[9] Kilborn alleges "harassment . . . is not defined in any way, giving [him] no notice or guidance on the content of this policy or the kind(s) of conduct it purports to proscribe." Doc. 47 ¶ 84. Kilborn also highlights that the Findings Letter explicitly states that UIC's Nondiscrimination Policy has a broader application than applicable law, which the Findings letter indicated "means that discriminatory or harassing conduct may violate the Policy even where the conduct does not rise to the level of a violation of law." Doc. 47-1 at 3.

---

[9] Defendants quote the Nondiscrimination Policy in their Motion to Dismiss, providing a link to the actual document. Doc. 56 at 26 n.9 (citing UIC, Nondiscrimination Policy Statement, https://policies.uic.edu/uic-policy-library/access-and-equity/nondiscrimination-policy-statement/). The Court may consider the Nondiscrimination Policy in its analysis because it was "referred to in the complaint" and because "it [is] a concededly authentic document central to the plaintiff's claim." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

Yet, as Defendants argue, the Seventh Circuit has determined that anti-harassment policies in an employment setting, even when the policies use general language, can sufficiently define the range of inappropriate behavior that a reasonable employee may understand. *Greer*, 212 F.3d at 369 (finding a policy not to "engage in harassment on the basis of race, sex, religion, color, age, disability, national origin or sexual orientation" is not unconstitutionally vague). Kilborn challenges Defendants' application of *Greer* because it evaluated the employment policies of a fire department, which does not earn the same First Amendment protections that universities receive under the First Amendment. *See, e.g.*, *Grutter v. Bollinger,* 539 U.S. 306, 329 (2003) ("We have long recognized that, given the important purpose of public education and the expansive freedoms of speech and thought associated with the university environment, universities occupy a special niche in our constitutional tradition."). But, contrary to Kilborn's argument, courts have dismissed claims concerning other similar university policies for unconstitutional vagueness. *See, e.g.*, *Keating v. Univ. of S. Dakota*, 569 F. App'x 469, 471 (8th Cir. 2014) (dismissing a challenge to a "civility" policy and finding that although "the outer contours of the civility clause perhaps are imprecise" and "the policy employs broad language that alone does not necessarily prevent an ordinary person from recognizing that certain conduct will result in discharge or discipline"); *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1137 (3d Cir. 1992) (upholding a regulation authorizing dismissal of university professors for "failure to maintain standards of sound scholarship and competent teaching"); *cf. Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1183 (6th Cir. 1995) (holding a policy that prohibited speech that was "intentional or unintentional, regardless of political value" was void for vagueness). Here, following these cases, the Court similarly finds that the use of the term harassment in the Nondiscrimination Policy "sufficiently define[s] a range of inappropriate conduct which a

27

reasonable employee would understand." *Greer*, 212 F.3d at 369. Therefore, Kilborn's void for vagueness claim fails.

### 3. Prior Restraint

Kilborn also claims that the Nondiscrimination Policy "constitutes a prior restraint." Doc. 47 ¶ 70. Defendants argue that Kilborn failed to state a claim for prior restraint for lack of standing and on the merits. Kilborn does not address Defendants' substantive arguments but instead argues that Rule 12(b)(6) protects his prior restraint claim because the Court previously determined that Kilborn can state a claim for unconstitutional vagueness as it relates to the Nondiscrimination Policy.

That the Court previously determined that Kilborn stated a claim for unconstitutional vagueness relating to the Nondiscrimination Policy does not automatically mean that Kilborn's prior restraint claim may proceed. In fact, the Court did not consider Kilborn's claim for prior restraint when ruling on Defendants' First Amended Complaint because Kilborn pleads prior restraint for the first time in the Second Amended Complaint. While a plaintiff need not explicitly state every legal theory on which he seeks to proceed based on a given set of facts in his complaint, *see Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 742 (7th Cir. 2010), the same set of facts could warrant dismissal of one claim but not another, *see, e.g.*, *DeJong v. Pembrook*, No. 3:22-CV-01124-NJR, 2023 WL 2572617, at *6, 12 (S.D. Ill. Mar. 20, 2023) (dismissing plaintiff's void for vagueness claim but permitting her prior restraint claim to continue). Therefore, the fact that the Court previously allowed Kilborn's void for vagueness claim to proceed says nothing about the viability of his prior restraint claim. Because Kilborn failed to address Defendants' substantive arguments as to why his prior restraint claim fails, the Court

finds that Kilborn waived his claim. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

Even if the Court did not consider Kilborn's arguments waived, it would still dismiss Kilborn's prior restraint claim. To state a claim for prior restraint, Kilborn must allege: "(1) the speaker . . . appl[ied] to the decision maker before engaging in the proposed communication; (2) the decision maker [was] empowered to determine whether the applicant should be granted permission on the basis of its review of the content of the communication; (3) approval of the application require[d] the decision maker's affirmative action; and (4) approval [was] not a matter of routine, but involve[d] 'appraisal of facts, the exercise of judgment, and the formation of an opinion' by the decision maker." *Samuelson v. LaPorte Cmty. Sch. Corp.*, 526 F.3d 1046, 1051 (7th Cir. 2008) (citation omitted). Additionally, courts only consider the prior restraint analysis if the "policy applies to speech that is protected by the First Amendment." *Id.* at 1052. Assuming that the First Amendment protects Kilborn's speech, Kilborn's claim still fails on the first element, as he has not alleged that the Nondiscrimination Policy requires him to seek prior approval for his speech. *See Robinson v. Oklahoma ex rel. Bd. of Regents for the Reg'l Univ. Sys. of Okla.*, No. CIV-22-0091-F, 2022 WL 17083406, at *14 (W.D. Okla. Nov. 18, 2022) (dismissing prior restraint claim where a student failed to allege that "she was required to apply for approval to engage in such speech, and she does not allege such approval was denied"). Nor would Kilborn be likely to allege this, as "[o]rdinances prohibiting [] harassment achieve their purpose by imposing post-facto penalties on persons who engage in [] harassment, thereby dissuading potential perpetrators: they are not equivalent to court orders enjoining speech." *Jarman v. City of Northlake*, 950 F. Supp. 1375, 1379 (N.D. Ill. 1997) (determining there would be no First Amendment bar for a City employer to ban sexual harassment in the workplace when

29

evaluating a hostile environment claim).  The Court therefore dismisses Kilborn's prior restraint claim.

### C.     Dismissal With Prejudice

Having found that Kilborn has failed to state any federal claims, the Court must determine whether to dismiss them with prejudice or to permit Kilborn to file a third amended complaint.  The Court previously dismissed Kilborn's First Amendment retaliation claims, his compelled speech claims against Defendants in their official capacities, and his procedural due process claim for failure to receive adequate process without prejudice.  Given the prior dismissal and Kilborn's failure to cure the defects in these claims, the Court finds further amendment would be futile and dismisses these claims with prejudice.  *See Carter v. Ill. Gaming Bd.*, No. 18 C 7039, 2020 WL 1639914, at \*4 (N.D. Ill. Apr. 2, 2020) (dismissing a First Amendment retaliation claim with prejudice after plaintiff already had an opportunity to replead).  The Court dismisses Kilborn's compelled speech claim against Defendants in their personal capacities, prior restraint claim, and void for vagueness claim for the first time, however.  Although courts typically grant leave to amend liberally, the Court may divert from this general rule where amendment would be futile.  *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) (court may dismiss complaint with prejudice "[w]here it is clear that the defect cannot be corrected so that amendment is futile"); *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001) (leave to amend is futile if a new claim would be unable to survive a Rule 12(b)(6) motion to dismiss).  Here, providing Kilborn with the opportunity to amend these claims would be futile because he cannot correct the defects the Court has identified with these claims.  Therefore, the Court dismisses all of Kilborn's federal claims with prejudice.

### III. State Law Claims

Kilborn also bring state law defamation and false light claims, over which he contends the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. But because the Court has dismissed all of the federal claims over which it has original jurisdiction with prejudice, the Court declines to exercise supplemental jurisdiction over Kilborn's state law claims. *See* 28 U.S.C. § 1367(c); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). The Court therefore dismisses the state law claims without prejudice to refiling in state court.

## CONCLUSION

For the foregoing reasons, the Court grants in part Defendants' motion to dismiss [56]. The Court dismisses Kilborn's federal claims with prejudice. The Court dismisses Kilborn's state law claims without prejudice to refiling in state court. Civil case terminated.

Dated: November 1, 2023

_____
SARA L. ELLIS
United States District Judge

APPEAL,FINNEGAN,TERMED

### United States District Court
### Northern District of Illinois – CM/ECF NextGen 1.7.1.1 (Chicago)
### CIVIL DOCKET FOR CASE #: 1:22-cv-00475
### Internal Use Only

Kilborn v. Amiridis et al
Assigned to: Honorable Sara L. Ellis
Demand: $100,000
Cause: 42:1983 Civil Rights Act

Date Filed: 01/27/2022
Date Terminated: 11/01/2023
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Jason J. Kilborn**

represented by **Paul K Vickrey**
Vitale, Vickrey, Niro, Solon & Gasey LLP
311 South Wacker Drive
Suite 2470
Chicago, IL 60606
(312) 236-0733
Email: vickrey@vvnlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wayne B. Giampietro**
Poltrock & Giampietro
123 W. Madison
Suite 1300
Chicago, IL 60602
312-236-0606
Email: wgiampietro@giampietrolaw.com
*TERMINATED: 02/17/2022*
*LEAD ATTORNEY*

**Dylan Michael Brown**
Vitale, Vickrey, Niro, Solon & Gasey LLP
311 S. Wacker Drive - Suite 2470
Chicago, IL 60606
(312) 236-0733
Email: dbrown@vvnlaw.com
*ATTORNEY TO BE NOTICED*

**Patrick F. Solon**
Vitale, Vickrey, Niro, Solon & Gasey LLP
311 South Wacker Drive
Suite 2470
Chicago, IL 60606
(312) 236-0733
Email: solon@vvnlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Michael Amiridis**                    represented by **John Francis Kennedy**
Taft Stettinius & Hollister LLP
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 527-4000
Email: jkennedy@taftlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Sean Murphy**
Taft Stettinius & Hollister
111 E. Wacker Dr.
Suite 2800
Chicago, IL 60601
3128364145
Email: amurphy@taftlaw.com
*ATTORNEY TO BE NOTICED*

**Elizabeth Erin Babbitt**
Taft Stettinius & Hollister LLP
111 E. Wacker Drive
Suite 2800
Chicago, IL 60601
312-527-4000
Email: ebabbitt@taftlaw.com
*ATTORNEY TO BE NOTICED*

**Elizabeth Ann Winkowski**
Taft Stettinius & Hollister LLP
111 East Wacker Drive
Suite 2800
Chicago, IL 60601
(312) 840-4307
Email: ewinkowski@taftlaw.com
*ATTORNEY TO BE NOTICED*

**Paul John Coogan**
Taft Stettinius & Hollister LLP
111 E. Wacker Dr., Suite 2800
Chicago, IL 60601
(312) 840-4493
Email: pcoogan@taftlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Caryn A. Bills**                    represented by **John Francis Kennedy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Sean Murphy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Erin Babbitt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Ann Winkowski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul John Coogan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Julie M. Spanbauer**                    represented by    **John Francis Kennedy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Sean Murphy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Erin Babbitt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Ann Winkowski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul John Coogan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Donald Kamm**                    represented by    **John Francis Kennedy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Sean Murphy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Erin Babbitt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Ann Winkowski**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul John Coogan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ashley Davidson**                    represented by    **John Francis Kennedy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Sean Murphy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Erin Babbitt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Ann Winkowski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul John Coogan**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/27/2022 | 1 | COMPLAINT filed by Jason Kilborn; Jury. Filing fee $ 402, receipt number 0752-19096857. (Attachments: # 1 Exhibit A-g)(Giampietro, Wayne) (Entered: 01/27/2022) |
| 01/27/2022 | 2 | CIVIL Cover Sheet (Giampietro, Wayne) (Entered: 01/27/2022) |
| 01/27/2022 | | CASE ASSIGNED to the Honorable John Z. Lee. Designated as Magistrate Judge the Honorable Sheila M. Finnegan. Case assignment: Random assignment. (sxh, ) (Entered: 01/27/2022) |
| 01/27/2022 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (sxh, ) (Entered: 01/27/2022) |
| 02/03/2022 | 3 | MINUTE entry before the Honorable John Z. Lee: A Rule 16 initial status hearing is set for 3/30/22 at 9:00 a.m. The parties are directed to file a joint initial status report by 3/26/22. The report should comply with the requirements for initial joint status reports set forth in the Initial Status Conference standing order, which can be found |

| | | |
|---|---|---|
| | | on the Court's website. In light of the COVID-19 pandemic and the related General Orders, the Court finds that it is necessary to conduct the status hearing via telephone conference. The call-in number is 888-273-3658 and the access code is 1637578. Counsel of record will receive a separate email at least 12 hours prior to the start of the telephonic hearing with instructions on how to join the call. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in court-imposed sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. All participants should review the Court's standing order regarding telephone conferences that is on Judge Lee's website, which can be found at: https://www.ilnd.uscourts.gov/judge-info.aspx?4Qf5zc8loCI5U7rfMP9DHw==. (ca, ) (Entered: 02/03/2022) |
| 02/16/2022 | 4 | MOTION by Plaintiff Jason J. Kilborn to substitute attorney (Giampietro, Wayne) (Entered: 02/16/2022) |
| 02/17/2022 | 5 | MINUTE entry before the Honorable John Z. Lee:Motion to substitute attorney 4 is granted. The appearance of Wayne B. Giampietro is withdrawn. Substituted counsel should file their appearance on the docket. (ca, ) (Entered: 02/17/2022) |
| 02/17/2022 | 6 | ATTORNEY Appearance for Plaintiff Jason J. Kilborn by Dylan Michael Brown (Brown, Dylan) (Entered: 02/17/2022) |
| 02/17/2022 | 7 | ATTORNEY Appearance for Plaintiff Jason J. Kilborn by Patrick F. Solon (Solon, Patrick) (Entered: 02/17/2022) |
| 02/17/2022 | 8 | ATTORNEY Appearance for Plaintiff Jason J. Kilborn by Paul K Vickrey (Vickrey, Paul) (Entered: 02/17/2022) |
| 02/17/2022 | 9 | AMENDED complaint by Jason J. Kilborn against All Defendants (Attachments: # 1 Exhibit A-F)(Vickrey, Paul) (Entered: 02/17/2022) |
| 02/18/2022 | 10 | ATTORNEY Appearance for Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer by Elizabeth Erin Babbitt (Babbitt, Elizabeth) (Entered: 02/18/2022) |
| 02/18/2022 | 11 | ATTORNEY Appearance for Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer by John Francis Kennedy (Kennedy, John) (Entered: 02/18/2022) |
| 03/23/2022 | 12 | ATTORNEY Appearance for Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer by Paul John Coogan (Coogan, Paul) (Entered: 03/23/2022) |
| 03/23/2022 | 13 | ATTORNEY Appearance for Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer by Elizabeth Ann Winkowski (Winkowski, Elizabeth) (Entered: 03/23/2022) |
| 03/23/2022 | 14 | MOTION by Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm for extension of time to file answer regarding amended complaint 9 *Motion for an Extension of Time to Respond to Plaintiff's Amended Complaint and for Leave to File a Brief in Excess of 15 Pages* (Babbitt, Elizabeth) (Entered: 03/23/2022) |
| 03/24/2022 | 15 | RESPONSE by Jason J. Kilborn in Opposition to MOTION by Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm for extension of time to file answer regarding amended complaint 9 *Motion for an Extension of Time to* |

| | | |
|---|---|---|
| | | *Respond to Plaintiff's Amended Complaint and for Leav* <u>14</u> *Response in Partial Opposition* (Vickrey, Paul) (Entered: 03/24/2022) |
| 03/25/2022 | <u>16</u> | STATUS Report *Initial Joint Status Report* by Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer (Kennedy, John) (Entered: 03/25/2022) |
| 03/28/2022 | <u>17</u> | MINUTE entry before the Honorable John Z. Lee:Motion for extension of time until 4/25/22 to answer the complaint and to file a brief in excess of fifteen pages <u>14</u> is granted. (ca, ) (Entered: 03/28/2022) |
| 03/28/2022 | <u>18</u> | MINUTE entry before the Honorable John Z. Lee: The status hearing set for 3/30/22 is reset for 4/28/22 at 9:00 a.m.The call-in number is 888-273-3658 and the access code is 1637578. Counsel of record will receive a separate email at least 12 hours prior to the start of the telephonic hearing with instructions on how to join the call. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in court-imposed sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. All participants should review the Court's standing order regarding telephone conferences that is on Judge Lee's website, which can be found at: https://www.ilnd.uscourts.gov/judge-info.aspx?4Qf5zc8loCI5U7rfMP9DHw==. (ca, ) (Entered: 03/28/2022) |
| 03/31/2022 | <u>19</u> | MINUTE entry before the Honorable John Z. Lee:The Court has reviewed the status report. Discovery in this case is stayed pending the Court's ruling on Defendant's motion to dismiss. (ca, ) (Entered: 03/31/2022) |
| 04/25/2022 | <u>20</u> | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer *Defendants' Motion to Dismiss Plaintiff's First Amended Complaint* (Kennedy, John) (Entered: 04/25/2022) |
| 04/26/2022 | <u>21</u> | MINUTE entry before the Honorable John Z. Lee: Plaintiff's response to Defendant's motion to dismiss <u>20</u> is due by 5/20/22; reply due by 6/3/22. (ca, ) (Entered: 04/26/2022) |
| 04/27/2022 | <u>22</u> | MINUTE entry before the Honorable John Z. Lee:The status hearing set for 4/28/22 is reset for 6/29/22 at 9:00 a.m.The call-in number is 888-273-3658 and the access code is 1637578. Counsel of record will receive a separate email at least 12 hours prior to the start of the telephonic hearing with instructions on how to join the call. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in court-imposed sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. All participants should review the Court's standing order regarding telephone conferences that is on Judge Lee's website, which can be found at: https:P//www.ilnd.uscourts.gov/judge-info.aspx?4Qf zc81oCI5U7rfMP9DHw==. (ca, ) (Entered: 04/27/2022) |
| 05/20/2022 | <u>23</u> | MEMORANDUM by Jason J. Kilborn in Opposition to Motion to Dismiss for Failure to State a Claim <u>20</u> (Attachments: # <u>1</u> Exhibit A)(Vickrey, Paul) (Entered: 05/20/2022) |
| 05/26/2022 | <u>24</u> | MINUTE entry before the Honorable John Z. Lee:The status hearing set for 6/29/22 is reset for 7/6/22 at 9:00 a.m. The call-in number is 888-273-3658 and the access |

| | | |
|---|---|---|
| | | code is 1637578. Counsel of record will receive a separate email at least 12 hours prior to the start of the telephonic hearing with instructions on how to join the call. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in court-imposed sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. All participants should review the Court's standing order regarding telephone conferences that is on Judge Lee's website, which can be found at: https:P//www.ilnd.uscourts.gov/judge-info.aspx?4Qf zc81oCI5U7rfMP9DHw==. (ca, ) (Entered: 05/26/2022) |
| 05/30/2022 | 25 | MOTION by Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer for extension of time to file response/reply as to Motion to Dismiss for Failure to State a Claim 20 , memorandum in opposition to motion 23 (Kennedy, John) (Entered: 05/30/2022) |
| 05/31/2022 | 26 | RESPONSE by Jason J. Kilborn in Opposition to MOTION by Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer for extension of time to file response/reply as to Motion to Dismiss for Failure to State a Claim 20 , memorandum in opposition to motion 23 < 25 *Plaintiff's Response in Opposition to Defendants' Motion for Extension of Time* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Vickrey, Paul) (Entered: 05/31/2022) |
| 05/31/2022 | 27 | RESPONSE by Jason J. Kilborn in Opposition to MOTION by Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer for extension of time to file response/reply as to Motion to Dismiss for Failure to State a Claim 20 , memorandum in opposition to motion 23 < 25 *Plaintiff's CORRECTED Response in Opposition to Defendants' Motion for Extension of Time* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Vickrey, Paul) (Entered: 05/31/2022) |
| 06/01/2022 | 28 | MINUTE entry before the Honorable John Z. Lee:Motion for extension of time to file response 25 is granted. Defendants Reply in support of their Motion to Dismiss the First Amended Complaint is due by June 24, 2022. (ca, ) (Entered: 06/01/2022) |
| 06/24/2022 | 29 | MOTION by Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer for sanctions *Defendants' Opposed Motion for Sanctions Under Federal Rule of Civil Procedure 11* (Kennedy, John) (Entered: 06/24/2022) |
| 06/24/2022 | 30 | MEMORANDUM by Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer in support of motion for sanctions 29 *Defendants' Memorandum in Support of Opposed Motion for Sanctions Under Federal Rule of Civil Procedure 11* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Kennedy, John) (Entered: 06/24/2022) |
| 06/24/2022 | 31 | REPLY by Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer to Motion to Dismiss for Failure to State a Claim 20 *Defendants' Reply in Support of Motion to Dismiss Plaintiff's First Amended Complaint* (Kennedy, John) (Entered: 06/24/2022) |
| 06/27/2022 | 32 | RESPONSE by Jason J. Kilborn in Opposition to MOTION by Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer for sanctions *Defendants' Opposed Motion for Sanctions Under Federal Rule of Civil Procedure 11* 29 *Plaintiff's Response in Opposition to Defendants' Motion for Rule 11 Sanctions* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Vickrey, Paul) (Entered: 06/27/2022) |

| 06/29/2022 | 33 | MOTION by Plaintiff Jason J. Kilborn for leave to file *Plaintiff's Surreply In Opposition to Defendants' Motion to Dismiss* (Attachments: # 1 Exhibit A)(Vickrey, Paul) (Entered: 06/29/2022) |
|---|---|---|
| 07/05/2022 | 34 | MINUTE entry before the Honorable John Z. Lee:Plaintiff's motion to file a surreply 33 is granted. Plaintiff should file the surreply on the docket as soon as possible. The status hearing previously set for 7/6/22 is stricken. Discovery is stayed pending a ruling on the pending motion to dismiss and motion for sanctions. Status hearing set for 9/7/22 at 9:15 a.m.The call-in number is 888-273-3658 and the access code is 1637578. Counsel of record will receive a separate email at least 12 hours prior to the start of the telephonic hearing with instructions on how to join the call. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in court-imposed sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. All participants should review the Court's standing order regarding telephone conferences that is on Judge Lee's website, which can be found at: https:P//www.ilnd.uscourts.gov/judge-info.aspx?4Qf zc81oCI5U7rfMP9DHw==. (ca, ) (Entered: 07/05/2022) |
| 07/05/2022 | 35 | SUR-REPLY by Plaintiff Jason J. Kilborn to Motion to Dismiss for Failure to State a Claim 20 *Sur-Reply in Opposition to Defendants' Motion to Dismiss* (Vickrey, Paul) (Entered: 07/05/2022) |
| 09/06/2022 | 36 | MINUTE entry before the Honorable John Z. Lee: Defendants have filed a motion to dismiss 20 and a motion for sanctions 17 . The Court previously stayed discovery pending a ruling on those motions 34 . The status hearing set for 9/7/22 is reset for 11/10/22 at 9:00 a.m. The telephone dial in number is 888-273-3658 and the access code is 1637578. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in court-imposed sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. All participants should review the Court's standing order regarding telephone conferences that is on Judge Lee's website, which can be found at: https://www.ilnd.uscourts.gov/judge-info.aspx?4Qf5zc8loCI5U7rfMP9DHw==. (ca, ) (Entered: 09/06/2022) |
| 09/06/2022 | 🔒 | (Court only) ***Deadlines and hearings Terminated. (ca, ). (Entered: 09/06/2022) |
| 09/08/2022 | 37 | EXECUTIVE COMMITTEE ORDER: The Honorable John Z. Lee having been confirmed for a seat on the Court of Appeals for the Seventh Circuit, It is hereby ordered that the cases on the attached list are to be reassigned to the other judges of this Court as indicated, pursuant to Local Rule 40.1(f). Case reassigned to the Honorable Sara L. Ellis for all further proceedings. Honorable John Z. Lee no longer assigned to the case. Signed by Honorable Rebecca R. Pallmeyer on 9/08/2022.(tg, ) (Entered: 09/09/2022) |
| 09/12/2022 | 38 | MINUTE entry before the Honorable Sara L. Ellis: Telephone Conference set for 9/28/2022 at 9:30 AM. This case has been re-assigned to the calendar of Judge Sara L. Ellis. All previously set status dates are stricken. All previously set discovery schedules remain intact. All previously set briefing schedules remain intact. Parties will not be required to file proposed orders along with their motions. All noticed motion dates are vacated. The Court will set new dates for filed but un-noticed motions at the reassignment joint status conference. The parties are directed not to |

| | | |
|---|---|---|
| | | notice any motions, with the exception of emergency motions, prior to appearing at the reassignment joint status conference. For all emergency motions arising prior to the date scheduled for the reassignment joint status conference, the parties are directed to contact chambers. To help the Court learn about the case, it is hereby ordered that by 9/21/2022, counsel are to confer, prepare, and file a joint status report, not to exceed five pages. If the defendant's counsel has not yet filed an appearance, the status report should be prepared by the plaintiff's counsel. The report shall contain the information requested in the attached Initial Status Report For Reassigned Case in the format provided. Members of the public and media will be able to call in to listen to this hearing. The call-in number is (866) 434-5269 and the access code is 8087837. Counsel of record will receive an email with instructions to join the call. Throughout the telephonic hearing, each speaker will be expected to identify themselves for the record before speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court.Mailed notice (Attachments: # 1 Initial Status Report for Reassigned Case) (rj, ) (Entered: 09/12/2022) |
| 09/20/2022 | 39 | STATUS Report *Initial Status Report for Reassigned Case* by Jason J. Kilborn (Vickrey, Paul) (Entered: 09/20/2022) |
| 09/27/2022 | 40 | MINUTE entry before the Honorable Sara L. Ellis: The Court strikes the status date set for 9/28/2022 and resets it to 1/17/2023 at 9:30 a.m. for ruling on Defendant's motions to dismiss 20 and for sanctions 29 . Members of the public and media will be able to call in to listen to this hearing. The call-in number is (866) 434-5269 and the access code is 8087837. Counsel of record will receive an email with instructions to join the call. Throughout the telephonic hearing, each speaker will be expected to identify themselves for the record before speaking. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (rj, ) (Entered: 09/27/2022) |
| 12/29/2022 | 41 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/29/2022: Mailed notice. (tg, ) (Entered: 12/29/2022) |
| 01/12/2023 | 42 | MINUTE entry before the Honorable Sara L. Ellis: The Court strikes the status date set for 1/17/2023 and resets it to 2/16/2023 at 1:30 p.m. for ruling on Defendant's motions to dismiss 20 and for sanctions 29 . Attorneys/Parties should appear for the hearing by calling the Toll-Free Number: (866) 434-5269, Access Code: 8087837. |

| | | |
|---|---|---|
| | | Throughout the telephonic hearing, each speaker will be expected to identify themselves for the record before speaking. Please note that the conference call-in will be used by all cases that are on the court's calendar for the said date, therefore counsel must be in a quiet area while on the line and must have the telephone muted until your case is called. Members of the public and media will be able to call in to listen to this hearing (use toll free number). Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (rj, ) (Entered: 01/12/2023) |
| 02/15/2023 | 43 | OPINION AND ORDER: The Court grants in part and denies in part Defendants' motion to dismiss 20 . The Court grants, without prejudice, Defendants' motion to dismiss Kilborn's First Amendment retaliation claim against all Defendants and his compelled speech claims against Defendants in their official capacities. The Court also grants Defendants' motion to dismiss Kilborn's claim for IIED without prejudice. Kilborn may proceed in part with all other claims, as discussed in the Court's written opinion. The Court denies Defendants' motion for sanctions 29 . The Court strikes the status date set for 2/16/2023 and resets it to 3/2/2023 at 1:30 p.m. The parties should file a revised joint status report with a proposed discovery schedule by 2/23/2023. Attorneys/Parties should appear for the hearing by calling the Toll-Free Number: (866) 434-5269, Access Code: 8087837. Throughout the telephonic hearing, each speaker will be expected to identify themselves for the record before speaking. Please note that the conference call-in will be used by all cases that are on the court's calendar for the said date, therefore counsel must be in a quiet area while on the line and must have the telephone muted until your case is called. Members of the public and media will be able to call in to listen to this hearing (use toll free number). Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Signed by the Honorable Sara L. Ellis on 2/15/2023. Mailed notice(smm) (Entered: 02/16/2023) |
| 02/23/2023 | 44 | STATUS Report *Joint Status Report* by Jason J. Kilborn (Vickrey, Paul) (Entered: 02/23/2023) |
| 02/24/2023 | 45 | MOTION by Plaintiff Jason J. Kilborn for reconsideration *Plaintiff's Motion for Limited Reconsideration* (Vickrey, Paul) (Entered: 02/24/2023) |
| 03/01/2023 | 46 | ATTORNEY Appearance for Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer by Andrew Sean Murphy (Murphy, Andrew) (Entered: 03/01/2023) |
| 03/01/2023 | 47 | *SECOND* AMENDED complaint by Jason J. Kilborn against All Defendants (Attachments: # 1 Exhibits A - F)(Vickrey, Paul) (Entered: 03/01/2023) |
| 03/02/2023 | 48 | MINUTE entry before the Honorable Sara L. Ellis: Telephone conference held on 3/2/2023. Plaintiff's motion for limited reconsideration 45 is denied without prejudice. Briefing schedule on motion to dismiss: Defendants' motion to dismiss is due by 3/31/2023; Plaintiff's response is due by 4/28/2023; Defendants' reply is due by 5/19/2023. Discovery stayed pending ruling on motion to dismiss. Next status date set for 8/23/2023 at 9:30 a.m. for ruling on motion to dismiss. Attorneys/Parties should appear for the hearing by calling the Toll-Free Number: (866) 434-5269, |

| | | |
|---|---|---|
| | | Access Code: 8087837. Throughout the telephonic hearing, each speaker will be expected to identify themselves for the record before speaking. Please note that the conference call-in will be used by all cases that are on the court's calendar for the said date, therefore counsel must be in a quiet area while on the line and must have the telephone muted until your case is called. Members of the public and media will be able to call in to listen to this hearing (use toll free number). Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (rj, ) (Entered: 03/03/2023) |
| 03/21/2023 | 49 | MOTION by Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer for extension of time *Defendants' Unopposed Motion for an Extension of Time to File Motion to Dismiss the Second Amended Complaint* (Babbitt, Elizabeth) (Entered: 03/21/2023) |
| 03/21/2023 | 50 | NOTICE of Motion by Elizabeth Erin Babbitt for presentment of extension of time, 49 before Honorable Sara L. Ellis on 3/23/2023 at 01:30 PM. (Babbitt, Elizabeth) (Entered: 03/21/2023) |
| 03/23/2023 | 51 | MINUTE entry before the Honorable Sara L. Ellis:The Court grants Defendants' motion for extension of time 49 . The Court modifies the briefing schedule as follows: Defendants' motion to dismiss is due by 4/14/2023; Plaintiff's response is due by 5/12/2023; and Defendants' reply is due by 6/2/2023. The Court strikes the ruling date set for 8/23/2023 and resets it to 10/12/2023 at 1:30 p.m. Attorneys/Parties should appear for the hearing by calling the Toll-Free Number: (866) 434-5269, Access Code: 8087837. Throughout the telephonic hearing, each speaker will be expected to identify themselves for the record before speaking. Please note that the conference call-in will be used by all cases that are on the court's calendar for the said date, therefore counsel must be in a quiet area while on the line and must have the telephone muted until your case is called. Members of the public and media will be able to call in to listen to this hearing (use toll free number). Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (rj, ) (Entered: 03/23/2023) |
| 03/30/2023 | 52 | TRANSCRIPT OF PROCEEDINGS held on 03/02/23 before the Honorable Sara L. Ellis. Order Number: 45549. Court Reporter Contact Information: Patrick Mullen, (312) 435-5565, patrick_mullen@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 4/20/2023. Redacted Transcript Deadline set for 5/1/2023. Release of Transcript Restriction set for 6/28/2023. (Mullen, Patrick) (Entered: 03/30/2023) |

| 04/13/2023 | 53 | MOTION by Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer for leave to file excess pages *Defendants' Motion for Leave to File a Brief in Excess of 15 Pages in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint* (Attachments: # 1 Errata) (Babbitt, Elizabeth) (Entered: 04/13/2023) |
| 04/13/2023 | 54 | NOTICE of Motion by Elizabeth Erin Babbitt for presentment of motion for leave to file excess pages, 53 before Honorable Sara L. Ellis on 4/18/2023 at 09:45 AM. (Babbitt, Elizabeth) (Entered: 04/13/2023) |
| 04/14/2023 | 55 | RESPONSE by Jason J. Kilborn in Opposition to MOTION by Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer for leave to file excess pages *Defendants' Motion for Leave to File a Brief in Excess of 15 Pages in Support of Their Motion to Dismiss Plain* 53 *Plaintiff's Opposition to Defendants' Motion for Leave to File 30-Page Brief* (Vickrey, Paul) (Entered: 04/14/2023) |
| 04/14/2023 | 56 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer *Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint* (Attachments: # 1 Exhibit 1)(Kennedy, John) (Entered: 04/14/2023) |
| 04/14/2023 | 57 | REPLY by Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer to motion for leave to file excess pages, 53 *Defendants' Reply in Support of Their Motion for Leave to File a Brief in Excess of 15 Pages in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint* (Attachments: # 1 Exhibit, # 2 Exhibit)(Babbitt, Elizabeth) (Entered: 04/14/2023) |
| 04/17/2023 | 58 | MINUTE entry before the Honorable Sara L. Ellis: The Court grants Defendants' motion for leave to file excess pages 53 . Defendant's and Plaintiffs' briefs may be no longer than 30 pages. The Court limits Defendants' reply brief to 20 pages. Mailed notice (rj, ) (Entered: 04/17/2023) |
| 05/12/2023 | 59 | RESPONSE by Jason J. Kilborn in Opposition to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer *Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint* 56 *Plaintiff's Response in Opposition to Defendants' Motion to Dismiss* (Vickrey, Paul) (Entered: 05/12/2023) |
| 06/02/2023 | 60 | RESPONSE by Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauerin Support of MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Michael Amiridis, Caryn A. Bills, Ashley Davidson, Donald Kamm, Julie M. Spanbauer *Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint* 56 *Defendants' Reply in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint* (Kennedy, John) (Entered: 06/02/2023) |
| 09/29/2023 | 61 | MINUTE entry before the Honorable Sara L. Ellis: The Court strikes the ruling date set for 10/12/2023 and resets it to 11/2/2023 at 1:30 p.m. Attorneys/Parties should appear for the hearing by calling the Toll-Free Number: (866) 434-5269, Access Code: 8087837. Throughout the telephonic hearing, each speaker will be expected to identify themselves for the record before speaking. Please note that the conference call-in will be used by all cases that are on the court's calendar for the said date, therefore counsel must be in a quiet area while on the line and must have the telephone muted until your case is called. Members of the public and media will be able to call in to listen to this hearing (use toll free number). Persons granted remote access to proceedings are reminded of the general prohibition against |

| | | |
|---|---|---|
| | | photographing, recording, and rebroadcasting court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (rj, ) (Entered: 09/29/2023) |
| 11/01/2023 | 62 | OPINION AND ORDER. For the reasons stated in the accompanying Opinion and Order, the Court grants in part Defendants' motion to dismiss 56 . The Court dismisses Kilborn's federal claims with prejudice. The Court dismisses Kilborn's state law claims without prejudice to refiling in state court. Civil case terminated. Signed by the Honorable Sara L. Ellis on 11/1/2023:Mailed notice(rj, ) (Entered: 11/02/2023) |
| 11/01/2023 | 63 | ENTERED JUDGMENT. Mailed notice(rj, ) (Entered: 11/02/2023) |
| 11/02/2023 | 64 | NOTICE of appeal by Jason J. Kilborn regarding orders 62 Filing fee $ 505, receipt number AILNDC-21291715. Receipt number: n (Solon, Patrick) (Entered: 11/02/2023) |
| 11/02/2023 | 65 | DOCKETING Statement by Jason J. Kilborn regarding notice of appeal 64 (Solon, Patrick) (Entered: 11/02/2023) |
| 11/14/2023 | 66 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 64 . (jn, ) (Entered: 11/14/2023) |