IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jason J. Kilborn, *Plaintiff*, v. Michael Amiridis, Caryn A. Bills, Julie M. Spanbauer, Donald Kamm, and Ashley Davidson, *Defendants*. | Case No.: 1:22-cv-00475 Judge Sara L. Ellis Magistrate Judge Sheila M. Finnegan |

## DEFENDANTS' PARTIAL MOTION TO DISMISS

Defendants Michael Amiridis, Caryn A. Bills, Julie M. Spanbauer, Donald Kamm, and Ashley Davidson (collectively "Defendants"), by and through their undersigned counsel, move to dismiss in part, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff Jason J. Kilborn's ("Kilborn") Second Amended Complaint (Dkt. 47 ("SAC")). Specifically, Defendants seek to dismiss with prejudice: (1) Count I for First Amendment retaliation to the extent it is asserted against Defendants in their official capacities, and (2) Counts IV and V for defamation and false light.[1] In support of this partial motion to dismiss (the "Motion"), Defendants state as follows:

### I. INTRODUCTION

Kilborn's sole surviving claims following remand from the Seventh Circuit—for First Amendment retaliation, defamation, and false light—suffer from legal and dispositive defects that

---

[1] This Court granted Defendants leave to file a partial motion to dismiss addressing these specific claims because neither this Court nor the Seventh Circuit addressed Defendants' previously raised arguments concerning these counts. (*See* Dkts. 74, 77.) In particular, this Court had no occasion to address Defendants' Eleventh Amendment immunity defense to Plaintiffs' official-capacity retaliation claim because it dismissed that claim on the merits, and, having dismissed all of Kilborn's other constitutional claims, it declined to exercise supplemental jurisdiction over Kilborn's state-law claims. (*See* 07/08/2025 Hearing Transcript, attached hereto as Exhibit A, at 8-9.)

cannot be cured. Defendants are current and former employees of the Board of Trustees of the University of Illinois at the University of Illinois Chicago ("UIC" or the "University"). Kilborn purports to sue Defendants in their "official and personal capacities," a phrase that appears exactly once in the SAC. However, it is well established that the Eleventh Amendment immunizes unconsenting states from suit in federal court, and that such immunity extends to state universities and state university officials sued in their official capacities. In dismissing Kilborn's SAC, this Court already concluded that the Eleventh Amendment barred Kilborn's compelled speech claim (the only claim it did not dismiss outright). It should now reach the same conclusion with respect to Kilborn's First Amendment retaliation claim. The *Ex parte Young* exception to Eleventh Amendment immunity is inapplicable here for the same reasons it was inapplicable to Kilborn's compelled speech claim: Kilborn does not allege an ongoing violation of federal law and does not seek prospective relief to enjoin such a violation. Accordingly, Count I should be dismissed with prejudice against the Defendants in their official capacities.

Kilborn's defamation and false light claims are defective for other reasons. In dismissing Kilborn's First Amended Complaint, this Court substantially narrowed the scope of these claims. It held that "Kilborn may not . . . proceed with his claim[s] based on comments that he 'used' racial slurs, denounced racial minorities' participation in civil rights claims, or referred to minorities as 'cockroaches'" (the "Dismissed Statements") because these statements were substantially true or subject to an innocent construction. (Dkt. 43 at 28.) Nothing changes that analysis now.

This Court's prior opinion limited Kilborn's defamation and false light claims to only the following statements or group of statements drawn from the Findings Letter: "(1) his actions 'interfered with Black students' participation in the University's academic program and therefore constituted harassing conduct'; (2) he expressed 'overtly intimidating and threatening reactions'

2

to students who criticized his in-class comments and exam question; (3) he made 'inappropriate' comments in class; and (4) his reactions created intimidation and fears of physical safety and retaliation" (the "Unresolved Statements"). (Dkt. 43 at 29-30; *see also* Dkt. 47-1 at 3-5 (CM/ECF page numbering).) These Unresolved Statements on which Kilborn was allowed to proceed are not actionable because they are statements of opinion. To the extent Kilborn attempts to bring a claim of defamation *per quod*, it should be dismissed for these same reasons, and because Kilborn fails to plead the special damages necessary to allege a claim for defamation *per quod*. Accordingly, Kilborn's defamation and false light claims should be dismissed with prejudice.

## II. FACTUAL ALLEGATIONS

The factual allegations of the SAC are well known and set forth in this Court's opinion dismissing the SAC in full (Dkt. 62) as well as the Seventh Circuit's opinion affirming the dismissal of all of Kilborn's constitutional claims except his claim for First Amendment retaliation, *see Kilborn v. Amiridis*, 131 F.4th 550, 554-56 (7th Cir. 2025). Those allegations relevant to this Motion are briefly restated here.

Kilborn was and is a tenured professor at the University's law school. (SAC ¶ 7.) In December of 2020, his use of a redacted racial slur on an exam question sparked student criticism. (*Id.* ¶¶ 15-20.) Kilborn's reaction to this criticism exacerbated the situation on campus. This conduct included, among other things, Kilborn's statement that he might "become homicidal" if shown the Black Law Students Association's ("BLSA") petition concerning the exam question and email scolding a White student for signing BLSA's "horrible, horrible letter." (*Id.* ¶ 26; Dkt. 47-1 at 10 (CM/ECF page numbering).) Multiple students and one faculty member came forward with allegations of racial discrimination and harassment against Kilborn, which were not limited to the exam question. (*See* Dkt. 47-1 at 1-5 (CM/ECF page numbering).)

The University's Office for Access and Equity ("OAE") investigated the allegations. (*Id.*) Ultimately, the OAE concluded that the allegations that Kilborn's grade bump policy and decision to drop a Black student from his course constituted racial discrimination were unfounded. (*Id.* at 3.) However, the OAE concluded that Kilborn's repeated conduct, including his reaction to student criticism surrounding the exam question, constituted harassment in violation of the University's nondiscrimination policy. (*Id.* at 3-5.) The OAE issued to Kilborn a Findings Letter concluding Kilborn's behavior was harassing, threatening, inappropriate, and intimidating. (*Id.*) Kilborn alleges that OAE's underlying Investigation Report on which the Findings Letter was based was eventually released to a reporter pursuant to a FOIA request, and later, to members of the UIC community. (SAC ¶¶ 42-43.)

On March 1, 2023, Kilborn filed the SAC, asserting claims of retaliation and compelled speech in violation of the First Amendment (Count I), a claim for violation of his procedural due process rights and constitutional challenge to the University's Nondiscrimination Policy (Count III), and state-law claims for defamation and false light (Counts IV and V).[2] This Court dismissed all of Kilborn's constitutional claims with prejudice and declined to exercise supplemental jurisdiction over Kilborn's state-law claims. (*See* Dkt. 62.) The Seventh Circuit reversed this Court's dismissal of the retaliation claim only, thereby reinstating the state-law claims, and affirmed the dismissal of Kilborn's other constitutional claims. *Kilborn*, 131 F.4th at 557-66.

### III. LEGAL STANDARD

To withstand a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019)

---

[2] Count II of the SAC is a claim for a "violation of the University of Illinois Statutes." Kilborn previously conceded he did not intend for Count II to be a standalone claim, and this Court dismissed it—a dismissal not raised on appeal. (Dkt. 43 at 21 n.6.) Kilborn concedes this Court also dismissed Count VI, a claim for intentional infliction of emotional distress. (SAC at 26.)

4

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard is met when the plaintiff pleads sufficient factual content for the court to reasonably infer that the defendant is liable for the misconduct alleged. *Calderone v. City of Chicago*, 979 F.3d 1156, 1161 (7th Cir. 2020) (citation omitted). Although the court will accept all well-pleaded factual allegations as true, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (quotation marks omitted). Where "the plaintiff has repeatedly failed to remedy the same deficiency, the district court [does] not abuse its discretion by dismissing the claim with prejudice." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2003) (quotation marks omitted). "A claim is appropriately dismissed under Rule 12(b)(6) when an affirmative matter barring the claim is apparent on the face of the complaint." *Rohrbach v. AMS Hydro Excavation, LLC*, No. 09 C 50165, 2010 WL 11882523, at *1 (N.D. Ill. Nov. 12, 2010).

## IV.  ARGUMENT

**A.   The Eleventh Amendment bars Kilborn's First Amendment retaliation claim against Defendants in their official capacities.**

"The Eleventh Amendment immunizes unconsenting states from suit in federal court." *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 777 (7th Cir. 1991). This immunity extends to state universities, which are considered "arm[s] of the State," as well as state university officials sued in their official capacity. *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907-08 (7th Cir. 1991); *Freeman v. Univ. of Ill. at Chicago*, No. 17 C 1776, 2018 WL 701282, at *2 (N.D. Ill. Jan. 29, 2018). Eleventh Amendment immunity applies here to bar Kilborn's sole surviving constitutional claim to the extent it is asserted against Defendants in their official capacities. Indeed, this Court already concluded that the Eleventh Amendment barred Kilborn's compelled speech claim—a decision that Kilborn did not challenge on appeal. (*See* Dkt. 43 at 12-14; Dkt. 62

5

at 16-17.) Now that the Seventh Circuit has remanded the case on Kilborn's claim for First Amendment retaliation, this Court should again conclude that the Eleventh Amendment bars the claim against Defendants in their official capacities.

The *Ex parte Young* exception to Eleventh Amendment immunity does not save Kilborn's First Amendment retaliation claim because Kilborn does not allege an ongoing violation of federal law, nor does he seek prospective relief to enjoin such a violation. *See Gerlach v. Rokita*, 95 F.4th 493, 499 (7th Cir. 2024) (affirming Rule 12 dismissal and explaining that *Ex parte Young* is a narrow exception to Eleventh Amendment immunity permitting suit against state officials for prospective relief to enjoin ongoing violations of federal law). To determine whether *Ex parte Young* applies, this Court conducts "a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1051 (7th Cir. 2013). Kilborn does not satisfy this criteria. His retaliation claim is based upon allegations of prior violations of federal law that occurred no later than 2022: his temporary, and now completed, teaching hiatus and participation in a diversity training program. (*See* SAC ¶¶ 51, 55-58.) Kilborn does not allege that those purported constitutional violations are ongoing, leaving nothing for the Court to enjoin. *Green v. Mansour*, 474 U.S. 64, 73-74 (1985) (affirming dismissal of official-capacity claims because "[t]here is no claimed continuing violation of federal law, and therefore no occasion to issue an injunction"); *see also Balder v. Meeder*, No. 19-CV-7928, 2021 WL 1172243, at *4 (N.D. Ill. Mar. 29, 2021) (granting dismissal of official-capacity claims where there was no "ongoing violation of federal law" and only allegations of "discrete retaliatory actions taken by Defendants"); *Perkinson v. Ill. State Police*, No. 15-CV-526, 2016 WL 1321197, at *4 (S.D. Ill. Apr. 5, 2016) (granting Rule 12 dismissal of official-capacity claims where plaintiff failed to allege

6

a "course of conduct . . . that amounts to an ongoing violation of federal law" and instead described discrete acts that occurred more than a year ago). With respect to the retaliation claim, "[t]here is simply no ongoing violation of federal law that has been alleged for which prospective injunctive relief could be warranted." *Perkinson*, No. 15-CV-526, 2016 WL 1321197, at *4.

To the extent Kilborn claims that he remains subject to Defendants' further enforcement of the University's "vague, unpredictable, and unconstitutional" nondiscrimination policy, and is therefore afraid to teach certain cases, such argument does not bring Kilborn's retaliation claim within the *Ex parte Young* exception. As an initial matter, the Seventh Circuit affirmed this Court's ruling that the nondiscrimination policy is not unconstitutionally vague. *Kilborn*, 131 F.4th at 566. Subjective fears about the policy's future enforcement thus do not constitute a claim for any constitutional violation, regardless of the sole surviving retaliation claim. Moreover, *Ex parte Young* requires an ongoing violation of federal law and relief properly characterized as prospective—it does not contemplate injunctive relief "based upon the possibility" of a future violation of federal law. *See, e.g.*, *Judicial Watch, Inc. v. King*, No. 1:12-CV-800, 2014 WL 12755049, at *2 (S.D. Ind. May 13, 2014) (Eleventh Amendment immunity precluded claim where plaintiffs failed to show an ongoing violation of federal law). As this Court properly concluded, although Kilborn expresses fear about what may happen in the future "such fear does not amount to an ongoing violation" that brings Kilborn's claim within *Ex parte Young*. (*See* Dkt. 62 at 17 (citing *Lawlor v. Metro. Water Reclamation Dist. of Greater Chi.*, No. 17-CV-117, 2018 WL 1293227, at *3 (N.D. Ill. Mar. 13, 2018)).)

Nor does Kilborn's prayer for relief assist him in avoiding the Eleventh Amendment. First, Kilborn's relief applies to alleged past violations. Kilborn seeks a declaratory judgment that his "punishment and compulsion of [] speech" violated the First and Fifth Amendments and the

University of Illinois Statutes (SAC at 28 ¶ A), relating only to allegations of *past* violations. *See, e.g.*, *Harden v. Bd. of Trs. E. Ill. Univ.*, No. 12-CV-2199, 2013 WL 6248500, at *8 (C.D. Ill. Dec. 2, 2013) (granting Rule 12 dismissal because "sovereign immunity dooms" plaintiff's official capacity claims against university officials where plaintiff requested a "declaratory judgment that Defendants [] violated Plaintiff's right to be free from discrimination in the workplace" in the past); *see also Green*, 474 U.S. at 73 (Eleventh Amendment bars "declaratory judgment that respondent violated federal law in the past"). Second, Kilborn's prayer for a "permanent injunction" seeks only to bar Defendants from engaging in some hypothetical and unspecified future conduct. (SAC at 28 ¶ B (requesting a "permanent injunction barring Defendants from enforcing the anti-discrimination policy in a way that violates faculty and student rights").) As set forth above, that is not the "prospective relief" that the *Ex parte Young* exception contemplates.

And, significantly, the Seventh Circuit affirmed this Court's dismissal of Kilborn's compelled speech claim against Defendants with prejudice. *Kilborn*, 131 F.4th at 564. In doing so, this Court correctly concluded that Kilborn did not allege an ongoing violation of law in his First Amended Complaint, and "has not remedied this flaw in his Second Amended Complaint, failing to provide any allegation of an ongoing violation of the law." (Dkt. 62 at 17.) The same holds true of Kilborn's retaliation claim because Kilborn does not allege an ongoing violation of federal law in the SAC. This Court should, therefore, dismiss Kilborn's retaliation claim against Defendants in their official capacities, with prejudice.

**B.   Kilborn's defamation and false light claims should be dismissed in full for multiple reasons.[3]**

---

[3] Kilborn asserts these claims against Defendants in their individual capacities only. (*See* Ex. A at 6 (Kilborn conceding that Eleventh Amendment analysis does not apply to state-law claims); Dkt. 23 at 8 (Kilborn stating in opposition to Rule 12 motion, "[t]he Eleventh Amendment does not apply to Kilborn's claims under Illinois state law because Kilborn is not suing Defendants in their official capacities, he does not seek damages against UIC, and he does not seek any injunctive relief under state law. Kilborn's state-

8

A plaintiff asserting defamation under Illinois law must allege: (1) the defendant made a false statement about the plaintiff; (2) the defendant made an unprivileged publication of the statement to a third party; and (3) the publication caused damages. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). In reviewing the sufficiency of the plaintiff's allegations, the court need not "take the plaintiff's interpretation of the allegedly defamatory words at face value," because "[f]iguring out the meaning of a statement and whether it is reasonably susceptible to an innocent construction is a question of law for the courts to resolve." *Lott v. Levitt*, 556 F.3d 564, 569 (7th Cir. 2009) (reiterating that in resolving a Rule 12 motion, "any reasonable, innocent interpretation sounds the death knell to a *per se* defamation claim"). Further, "an opinion—*i.e.,* a statement that is not objectively verifiable—cannot be the basis for a defamation claim." (Dkt. 43 at 23 (citing *Wynne v. Loyola Univ. of Chi.*, 318 Ill. App. 3d 443, 251 (1st Dist. 2000)).)

Kilborn purports to allege defamation *per se* (SAC ¶ 96), meaning that the alleged Unresolved Statements are so harmful to his reputation that damages are to be presumed. *See Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003). Kilborn also alleges, in the alternative, that at least one of the Unresolved Statements amounts to defamation *per quod*, which requires Kilborn to allege and ultimately prove that he "suffered actual damages of a pecuniary nature—special damages—because of a defamatory statement." *Rivera v. Allstate Ins. Co.*, 2021 IL App (1st) 200735, ¶ 49, *appeal denied by,* 183 N.E.3d 901 (Ill. 2021).[4]

---

law claims are the plain-vanilla torts presented in Counts IV, V, and VI, all of which give Kilborn a right to damages against Defendants in their individual capacities."); Dkt. 43 at 21 n.5 (this Court concluding that "Kilborn clarifies that he brings his state law claims against Defendants only in their individual capacities. The Court therefore need not address Defendants' argument that the Eleventh Amendment bars Kilborn's state law claims against Defendants in their official capacities.").) Should this Court find otherwise, the claims are likewise barred by the Eleventh Amendment for the same reasons set forth above. *See, e.g.*, *Lowe v. Cook Cty. Circuit Court Clerk*, No. 00 C 1422, 2000 WL 1372860, at *5 (N.D. Ill. Sept. 22, 2000) (dismissing defamation claim as barred by the Eleventh Amendment).

[4] *See* SAC ¶ 96 n.2 (referring to "cockroaches" statement).

9

The tort of false light invasion of privacy is similar to defamation, but aimed at protecting a plaintiff's "interest in being let alone from false publicity." *Dubinsky v. United Airlines Master Exec. Council*, 303 Ill. App. 3d 317, 331 (1st Dist. 1999). To assert false light, a plaintiff must show: (1) he was placed in a false light before the public as a result of a defendant's actions; (2) the false light was "highly offensive to a reasonable person;" and (3) the "defendants acted with actual malice . . . that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Kolegas v. Heftel Broad. Co.*, 154 Ill. 2d 1, 17 (1992). Kilborn's false light claim is based on the same alleged statements as his defamation claim, and the two claims rise and fall together. *See Kenyon v. Bd. of Educ. of Twp. High Sch. Dist. 113*, No. 24-CV-09878, 2025 WL 1101615, at *6 (N.D. Ill. Apr. 14, 2025) (dismissing false light and defamation claims at the pleadings stage for same deficiencies).

As explained below, Kilborn's defamation and false light claims should be dismissed because all of the statements Kilborn relies upon are substantially true, capable of an innocent construction, or are mere statements of opinion. Further, to the extent Kilborn attempts to allege defamation *per quod*, this claim fails because Kilborn has not pleaded special damages.

**1. Kilborn's defamation and false light claims should be dismissed to the extent they are based on statements that this Court previously found to be substantially true or capable of an innocent construction.**

In partially dismissing Kilborn's First Amended Complaint, this Court substantially narrowed the scope of Kilborn's defamation and false light claims. This Court previously held that Kilborn *could not* proceed with the Dismissed Statements. (*See* Dkt. 43 at 28-29.) This Court reached this conclusion because Kilborn mischaracterized each of these statements and because what Defendants actually said was substantially true or capable of an innocent construction. (*Id.*)

10

Nothing in Plaintiff's Second Amended Complaint alters the Court's prior ruling.[5] That decision is conclusive, is the law of the case, and the Court's analysis of those Dismissed Statements should end here. *See Butera v. Apfel*, 173 F.3d 1049, 1053 (7th Cir. 1999).

On February 24, 2023, Kilborn filed a motion for limited reconsideration challenging the portion of this Court's ruling on his First Amended Complaint (the "FAC") correctly concluding that the "cockroaches" statement was not actionable because "The Findings Letter does not state that Kilborn referred to racial minorities as 'cockroaches.'" (*See* Dkts. 45, 48.) Kilborn's reconsideration motion was denied as moot because the FAC was superseded by the SAC. (*See* Dkts. 47, 48). The day before this filing—without any notice to Defendants—Kilborn purported to "renew" his more than two-year-old motion for reconsideration of this Court's order on his now-inoperative FAC. (*See* Dkt. 80.) Defendants intend to oppose Kilborn's "renewed" motion.

In any event, the arguments raised in the "renewed" motion are without merit. Kilborn contends that "the construction that the Findings Letter accused Kilborn of calling minorities 'cockroaches' is . . . 'far more reasonable than any innocent construction.'" (Dkt. 80 at 5.) As this Court correctly recognized, however, Kilborn's argument based on the cockroaches comment ignores the Findings Letter's actual language, which stated that "[s]ix students and one faculty member *reported* that [Kilborn] . . . referred to racial minorities as 'cockroaches.'" (Dkt. 47-1 at 2-3 (emphasis added).) The Findings Letter also stated that OAE "substantiated" the assertion that Kilborn made "references" to cockroaches during a class on January 23, 2020. (*Id.*) But, contrary to Kilborn's mischaracterization, the Findings Letter objectively *did not* state that OAE

---

[5] Defendants respectfully disagree with this Court's prior decision to the extent it held (1) that Plaintiff's FAC "sufficiently pleaded Defendants' involvement in making the allegedly defamatory statements"; (2) "that Defendants (as opposed to Kilborn himself) published the [Findings] [L]etter"; and (3) actual malice on the part of Defendants; as well as (4) the Court's conclusion that the substantial truth of certain of the statements at issue cannot be determined at the pleading stage. (Dkt. 43 at 25-30.) Defendants contend that the SAC continues to suffer from these same deficiencies.

11

"substantiated" the allegation that Kilborn's use of the word "cockroaches" was a reference to "racial minorities." Further, Kilborn concedes he referred to cockroaches during the class in question and that UIC administrators received a number of complaints about remarks they regarded as racially insensitive. As such, the statements about Kilborn's cockroaches comment are substantially true or capable of a reasonably innocent construction—as are all of the Dismissed Statements this Court found insufficient to provide a basis for Kilborn's defamation and false light claims. *See Lott*, 556 F.3d at 568 (explaining that, in considering whether an allegedly defamatory statement is capable of innocent construction, "[c]ourts need not weigh the relative value of competing constructions; instead, any reasonable, nondefamatory interpretation is the one that sticks"); *see also Huon v. Denton*, 841 F.3d 733, 738 (7th Cir. 2016) ("[I]f a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail").

*Tuite v. Corbitt*, 224 Ill. 2d 490 (2006)—cited by Kilborn in the "renewed" motion—is inapplicable. The plaintiff in that case was a lawyer who alleged that he was defamed in a memoir that described, among other things, the plaintiff's alleged connections to organized crime. *Tuite,* 224 Ill. 2d at 495. The Illinois Supreme Court held that, in the context of a book about widespread corruption within the judiciary, a reasonable reader would understand the authors of the memoir as suggesting that the plaintiff had been "retained" for the purpose of paying out bribes to various public officials. *Id.* at 514-15. Here, by contrast, the statements at issue do not invite the reader to "read between the lines" and infer that Kilborn was guilty of some misconduct the authors had taken pains to avoid asserting explicitly. To the contrary, the Findings Letter was clear about what complaints University administrators had received about Kilborn, what complaints, in their opinion, they substantiated, and what complaints, in their opinion, they were unable to substantiate.

Relying on an *ABA Journal* article and out-of-context language from the Seventh Circuit's

opinion in this case, Kilborn argues that the only reasonable reading of the Findings Letter is one in which Defendants defamed him. (Dkt. 80 at 4-5.) Kilborn ignores the well-established principle that where—as here—a statement is capable of both an innocent and defamatory construction, the innocent construction must prevail. *See Huon*, 841 F.3d at 739 (rejecting defamation claim premised on article that arguably implied plaintiff was a serial rapist where article was capable of an innocent construction). In discussing why application of the *Pickering* balancing test was inapplicable at the pleadings stage, the Seventh Circuit stated in *dicta* that the University's investigation substantiated the allegation that Kilborn had referred to racial minorities as cockroaches. *Kilborn*, 131 F.4th at 550. The court was *not* analyzing whether the Findings Letter was capable of an innocent construction. Nothing in the opinion or the *ABA Journal* warrant a departure from the innocent construction rule or this Court's conclusion that "[t]he Findings Letter does not state that Kilborn referred to racial minorities as 'cockroaches.'" (Dkt. 43 at 28). The Findings Letter remains capable of an innocent construction today, just as it did in 2023.

        **2.    Kilborn's defamation and false light claims should be dismissed to the extent they are based on statements of opinion.**

This Court's prior ruling did not reach the issue of whether the Unresolved Statements were protected opinion statements. (*See* Dkt. 43 at 29; *see also* Dkt. 47-1 at 3-5.) As set forth below, this Court should dismiss Kilborn's defamation and false light claims with prejudice because the Unresolved Statements are statements of opinion.

Whether a statement constitutes an opinion or a factual assertion is a question of law that can be determined at the pleadings stage. *See Quinn v. Jewel Food Stores, Inc.*, 276 Ill. App. 3d 861, 865 (1st Dist. 1995). Among the factors courts consider in determining whether a statement constitutes an opinion are "[1] whether the statement has a precise and readily understood meaning; [2] whether the statement is verifiable; and [3] whether the statement's literary or social

13

context signals that it has factual content." *Solaia Tech., LLC v. Specialty Publ'g Co.*, 221 Ill. 2d 558, 581 (2006); *see also Navratil v. City of Racine*, 101 F.4th 511, 525 (7th Cir. 2024) (quotation marks omitted) (mayor's statements that individual "jeopardized public health" or engaged in "reckless behaviors that risked the health of our community" were non-actionable, pure opinion). "[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993).

Here, the fact that Kilborn disagrees with how OAE characterized his conduct does not render the OAE's characterizations actionable. *See Fei Wang v. Bd. of Trustees of Univ. of Ill.*, 612 F. Supp. 3d 739, 753 (N.D. Ill. 2020) (plaintiff's "disagree[ment] with [Defendants'] characterization of his actions as . . . misconduct" did not amount to a defamation or false light claim). To the contrary, the characterization in the Findings Letter of Kilborn's actions as being "inappropriate" and as having created an "intimidating" atmosphere for Black students constitutes a matter of opinion that cannot be objectively verified. *See Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 839-41 (N.D. Ill. 2015) (Ellis, J.) (applying Illinois law and rejecting defamation and false light claims premised on opinions that professor's relationship with student was "deeply inappropriate" and that it "wouldn't be the right thing to do" to permit professor to teach class in light of "all the controversy and allegations" regarding university's investigation); *Liu v. Nw. Univ.*, 78 F. Supp. 3d 839, 851 (N.D. Ill. 2015) (Ellis, J.) (applying Illinois law and rejecting defamation and false light claims based on administrator's opinion that plaintiff was "uncooperative," "evasive," "not forthcoming," and "actively looking for anyone who will give her a different answer"); *see also Trahanas v. Nw. Univ.*, 64 F.4th 842, 859 (7th Cir. 2023) (applying Illinois law and rejecting defamation claim premised on letter stating that author was

14

withdrawing prior letter of recommendation because author could "no longer support [plaintiff's] candidacy to medical school").

The Findings Letter reflects OAE's investigation of the evidence and allegations made against Kilborn to conclude that Kilborn's conduct was harassing, threatening, inappropriate, and intimidating. It is an opinion, based on the OAE's interpretation of the evidence, of Kilborn's conduct. Accordingly, Kilborn's false light and defamation claims should be dismissed.

### 3. Kilborn's defamation *per quod* claim fails because he failed to plead special damages.

Any defamation *per quod* claim fails for the same reasons set forth above, which are fatal to his defamation *per se* claim. Moreover, Kilborn has not come close to adequately pleading a claim for defamation *per quod.* The only reference to such a claim is a footnote in which Kilborn asserts the reference in the Findings Letter to Kilborn's "cockroaches" comment "is, at a minimum, defamation per quod." (SAC ¶ 96 n.2.) However, Kilborn does not even attempt to plead special damages with particularity, as he must to state a claim for defamation *per quod. See Rivera*, 2021 IL App (1st) 200735, ¶ 49; *accord Madison v. Frazier*, 539 F.3d 646, 653 (7th Cir. 2008). He does not explain how the "cockroaches" reference in the Findings Letter was any more damaging than any of the other allegedly defamatory statements he alleges. And, Kilborn's claim that he may not be considered for other professorial positions, (SAC ¶ 97), is indistinguishable from the type of general allegations courts have repeatedly found insufficient to support a claim for defamation *per quod*. *See, e.g.*, *Rivera*, 2021 IL App (1st) 200735, ¶ 51; *Lott*, 556 F.3d at 570.

### V. CONCLUSION

Defendants respectfully request that this Court grant their Motion and dismiss with prejudice: (1) Count I for First Amendment retaliation to the extent it is asserted against Defendants in their official capacities, and (2) Counts IV and V for defamation and false light.

Dated: August 5, 2025

Respectfully submitted,

**MICHAEL AMIRIDIS, CARYN A. BILLS, JULIE M. SPANBAUER, DONALD KAMM, and ASHLEY DAVIDSON**

By: */s/ John F. Kennedy*
    One of their Attorneys

John F. Kennedy
jkennedy@taftlaw.com
Elizabeth E. Babbitt
ebabbitt@taftlaw.com
Paul J. Coogan
pcoogan@taftlaw.com
Andrew S. Murphy
amurphy@taftlaw.com
Elizabeth A. Winkowski
ewinkowski@taftlaw.com
Allison M. Lovell
alovell@taftlaw.com
Taft Stettinius & Hollister LLP
111 E. Wacker Dr., Suite 2600
Chicago, IL 60601
Phone: (312) 527-4000
Fax: (312) 527-4011