**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JASON J. KILBORN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 475 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| MICHAEL AMIRIDIS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

University of Illinois Chicago ("UIC") School of Law professor Jason Kilborn, formerly

the subject of an investigation by UIC's Office of Access and Equity ("OAE"), filed this suit

against Defendants Michael Amiridis, Caryn Bills, Julie Spanbauer, Donald Kamm, and Ashley

Davidson, all UIC employees, in their official and individual capacities.  Based on OAE's

investigation and recommended sanctions, Kilborn alleges violations of the First Amendment,

Fourteenth Amendment, and state law, specifically defamation and false light.

After the Court granted Defendants' motion to dismiss the second amended complaint,

Kilborn appealed and the Seventh Circuit vacated the dismissal of his First Amendment

retaliation claim and state law claims.  The Court subsequently granted leave to Defendants to

file a partial motion to dismiss regarding two unaddressed issues: (1) whether the Eleventh

Amendment bars the First Amendment retaliation claim against Defendants in their official

capacities and (2) whether Kilborn has stated a claim for defamation and false light.

Before Defendants filed their partial motion to dismiss, Kilborn filed a renewed motion

for limited reconsideration regarding the Court's ruling on the defamation claim in his first

amended complaint.  Because the second amended complaint superseded the first amended

complaint, and because Kilborn makes the same arguments when responding to the motion to dismiss the second amended complaint, the Court denies Kilborn's motion for reconsideration as moot. The Court will instead address these issues in the context of the motion to dismiss.

Turning to the motion to dismiss, the Court finds that Kilborn's First Amendment retaliation claim falls under the *Ex parte Young* exception to the Eleventh Amendment and therefore denies the motion to dismiss the First Amendment retaliation claim against Defendants in their official capacities. With respect to Kilborn's state law claims, Kilborn may proceed with his defamation and false light claims predicated only on the statements that (1) he was guilty of race-based harassment of students because his actions interfered with Black students' participation in the University's academic program; (2) he overtly intimidated and threatened students; (3) his reactions created fears of physical safety and retaliation; and (4) he made inappropriate comments in class. Kilborn may not proceed with his defamation and false light claims based on comments that he used racial slurs, denounced racial minorities' participation in civil rights claims, or referred to minorities as "cockroaches."

**BACKGROUND**[1]

## I.      Factual Allegations

Kilborn is a tenured professor at UIC School of Law. In December of 2020, Kilborn gave his Civil Procedure II class a final exam, which included a hypothetical employment discrimination scenario that Kilborn had used on his exam for ten years. The scenario focused on an employee who "quit her job at Employer after she attended a meeting in which other

---

[1] The Court takes the facts in the background section from Kilborn's second amended complaint and exhibits attached thereto and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

2

managers expressed their anger at Plaintiff, calling her a 'n_____' and 'b_____' (profane expressions for African Americans and women) and vowed to get rid of her." Doc. 47 ¶ 15. Kilborn chose the "precise setting and language" of this question to further the themes discussed throughout the semester, namely "civil rights and race discrimination." *Id.* ¶¶ 62, 64. The exam question generated student criticism, including a petition circulated by the Black Law Students Association ("BLSA") (the "BLSA Petition").

On January 4, 2021, Kilborn emailed a former student expressing his sadness and pain over the BLSA Petition. Kilborn saw the student's name on the BLSA "attack letter" against him and conveyed that it was "[s]uch a shame to see all of [his] efforts to offer comfort and encouragement . . . only to be now vilified in the most vicious, cruel, and uncompassionate way." Doc. 47-1 at 10. Kilborn said that he felt "heart . . . broken." *Id.* A few days after sending the email, Kilborn discussed the controversy over Zoom with a member of BLSA, who had not been a student in Kilborn's class. The call occurred after class hours. About an hour into the over four-hour conversation with the student, the student asked Kilborn why the law school dean did not show him the BLSA Petition. Kilborn responded, in jest, that the law school dean might not have shared the petition because she feared that if Kilborn saw what students said about him, he might "become homicidal." Doc. 47 ¶ 20. The conversation continued with no indication that the student felt distressed or threatened.

As a result of his conversation with the BLSA member, Kilborn alleges that "the law school dean, along with other Defendants," invoked UIC's Violence Prevention Plan and convened a Behavioral Threat Assessment Team to assess the purported threat of physical violence. *Id.* ¶ 22. On January 12, 2021, the first day of Kilborn's classes for the spring semester, the law school dean told Kilborn that he must take an "indefinite administrative leave";

3

cancelled his classes for the semester; forbade him from coming onto campus or engaging in UIC activities; prohibited him from meeting with colleagues, students, or alumni; and required Kilborn to seek prior approval before speaking at external conferences. *Id.* ¶ 24. Additionally, the dean told Kilborn "not [to] discuss" the events with anyone associated with UIC. *Id.* When Kilborn asked for the reason behind these actions, the dean conveyed that students raised additional concerns regarding possible violations of UIC policies, including UIC's nondiscrimination policy. The dean informed Kilborn that OAE would explain more in the coming days.

On January 15, 2021, Kilborn met with OAE. Caryn Bills, OAE's Associate Chancellor, told him that his comment about becoming homicidal predicated his administrative leave. Kilborn admitted that he made the comment but emphasized that he said it in jest. To clear the administrative leave, Kilborn had to meet with UIC health officials and undergo drug testing and examination by a nurse, social worker, and doctor. A few days later, Kilborn cleared administrative leave and began unrestricted duty. His classes remained cancelled.

A month later, on February 17, 2021, OAE provided Kilborn with a notice of investigation related to allegations of race-based discrimination and harassment. The notice included a list of allegations from unidentified sources to which Kilborn attempted to respond in writing and at an interview, although he objected that he could not respond to the vague allegations.

Three months later, on May 28, 2021, OAE provided a findings letter (the "Findings Letter") to Kilborn. The Findings Letter reflected that OAE did not substantiate the allegations of race-based discrimination against Kilborn. It did, however, conclude that Kilborn's actions amounted to harassment in violation of the nondiscrimination policy. OAE based its

4

determination on a variety of purported statements and actions taken by Kilborn, including that he interfered with Black students' participation in UIC's programs; made references to "cockroaches" and "lynching"; used an "African American Vernacular English" ("AAVE") accent when referencing a Black artist's lyrics over the course of one class; used an exam question that included an explicit (abbreviated) reference to a racial epithet; expressed anger and displeasure when he learned students had objected to the exam question; and discussed the possibility that he might become "homicidal" as a result of BLSA's Petition, among other findings. Doc. 47-1 at 3–5. All Defendants participated in creating the Findings Letter, which Kilborn alleges they published by sending to BLSA members and others. The entire Findings Letter eventually made its way into an ABA Journal article. Other news sources picked up the story and reported that Kilborn referred to minorities as "cockroaches" and used racial slurs. Protests and a press conference were held to "denounce" Kilborn. Doc. 47 ¶ 40.

A few weeks later, on June 18, Kilborn met with Julie Spanbauer, Interim Dean of UIC's law school, to discuss next steps for Kilborn resulting from the Findings Letter. Kilborn agreed to allow someone from UIC to review his class recordings for instances of potential racial harassment and report if any instance of potential racial harassment arose. Kilborn also agreed to speak with Spanbauer before responding to any arising race-based student complaint. Based on this conversation, Spanbauer provided Kilborn with a "final resolution." *Id.* ¶ 45. The resolution consisted of requirements and recommendations for Kilborn. One requirement mandated that, if a review of his class recordings over four semesters revealed that Kilborn maintained a harassing classroom environment, Kilborn would have to undergo sensitivity training.

Spanbauer later "reneg[ed]" on their "agreed settlement arrangement," which Kilborn accepted "to avoid a lawsuit," because Kilborn did not receive a 2% merit raise and Defendants

required him to complete sensitivity training, comprised of an eight-week diversity course. *Id.* ¶¶ 45–47, 50. As part of the course, Kilborn had to meet with a trainer who would provide feedback regarding Kilborn's engagement with and commitment to the program. Kilborn could not teach his courses until he satisfactorily completed the program. Kilborn "complied with" the training program. *Id.* ¶ 51. Kilborn has since changed his curriculum to avoid cases that discuss issues of racial discrimination for fear of violating UIC's policy.

In November 2021, in response to a Freedom of Information Request, UIC released the investigation report upon which OAE based its Findings Letter. Kilborn received the report for the first time on November 11, 2021. Ashley Davidson, a Title IX and Equity Compliance Specialist in OAE during the relevant time period, drafted the report. On November 30, Michael Amiridis, the Chancellor of UIC, released the report to the UIC community along with a cover letter (together, the "UIC Community Letter"). The report included many of the same statements as the Findings Letter but added statements including that "certain alleged statements [by Kilborn] and threats did occur;" that Kilborn had created "race related fears of physical safety and retaliation"; and that Kilborn was wrong to "suggest killing anyone as a reaction to written or spoken criticism." *Id.* ¶ 43. Kilborn alleges each of these statements are false.

## II.     Procedural History

Kilborn filed his original complaint on January 27, 2022, and filed an amended complaint as a matter of course on February 17, 2022. After Defendants moved to dismiss, the Court dismissed Kilborn's First Amendment retaliation claim, First Amendment compelled speech claim against Defendants in their official capacity, and intentional infliction of emotional distress claim. Doc. 43. The Court also limited Kilborn's defamation and false light claims to certain allegedly false statements. Particularly relevant here, the Court held that Kilborn could not

proceed on his defamation and false light claims to the extent they are premised on comments that he referred to minorities as "cockroaches" because "[t]he Findings Letter does not state that Kilborn referred to racial minorities as 'cockroaches'; instead, it asserts that Kilborn 'ma[de] references to cockroaches during his January 23, 2020 class,' as evidenced by the transcript excerpt Kilborn included in his Amended Complaint." Doc. 43 at 28. Thus, the Court concluded that the Finding Letter's statement that Kilborn made references to "cockroaches" during his January 23, 2020 class is substantially true.

Shortly thereafter, Kilborn filed a motion for limited reconsideration, arguing that the Court's holding regarding the "cockroaches" reference was at odds with the Illinois Supreme Court's opinion in *Tuite v. Corbitt*, 224 Ill. 2d 490, 513–15 (2006), and the *ABA Journal*'s interpretation of the Findings Letter. Doc. 45 at 2–3. Around the same time, he also timely filed his second amended complaint, which alleged all the same claims except "the dismissed claims for (1) a property interest in the 2% across-the-board merit raise, and (2) intentional infliction of emotional distress." Doc. 47 at 1 n.1. The parties agreed that, for the sake of efficiency, they would address the issues raised by the motion for limited reconsideration while briefing the upcoming motion to dismiss the second amended complaint. The Court therefore denied the motion for reconsideration without prejudice.

Defendants again moved to dismiss, and the Court dismissed Kilborn's First Amendment retaliation claim after finding that he failed to sufficiently plead that his speech involved matters of public concern. The Court further held that sovereign and qualified immunity shielded Defendants from Kilborn's First Amendment compelled speech claim and dismissed that claim against Defendants in their official and personal capacities. Additionally, the Court dismissed Kilborn's Fourteenth Amendment due process claims for failing to state a cognizable claim.

Finally, given that Kilborn was left without any viable federal claims remaining, the Court declined to exercise supplemental jurisdiction over his state law claims and dismissed those claims without prejudice.

Kilborn appealed, and the Seventh Circuit reversed the dismissal of Kilborn's retaliation claim and state law claims. In doing so, the Seventh Circuit first determined that *Garcetti v. Ceballos*, 547 U.S. 410 (2006), which held that public employees are not speaking as citizens when they make statements pursuant to their official duties, does not apply to university teaching or scholarship. *Kilborn v. Amiridis*, 131 F.4th 550, 558 (7th Cir. 2025). This is due to the "special niche" universities occupy "in our constitutional tradition": "to impose any strait jacket upon the intellectual leaders in our colleges and universities would imperil the future of our Nation." *Id.* (quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957)). For similar reasons, the Seventh Circuit held that the University officials were not entitled to qualified immunity on this issue. *Id.* Finally, although the Seventh Circuit held that Kilborn's statements were all academic speech that address matters of public concern, it concluded that this "is not 'one of those rare cases' where we can engage in *Pickering* balancing 'on the basis of the pleadings alone." *Id.* at 562 (citations omitted). Thus, the Seventh Circuit reversed the dismissal of the retaliation claim. *Id.* As a result, the Seventh Circuit also vacated the district court's dismissal of the state law claims for further consideration. *Id.* at 566.

Defendants subsequently sought leave to file a renewed motion to dismiss to address (1) whether the Eleventh Amendment bars the retaliation claim against Defendants in their official capacities and (2) whether Kilborn has stated a claim for defamation and false light. Defendants had previously raised these issues in their original motion to dismiss the second

8

amended complaint, and neither the Court nor the Seventh Circuit resolved them. The Court granted the motion for leave, limiting the motion to these two issues. *See* Doc. 79 at 10:3–10.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.  Motion for Limited Reconsideration[2]

Kilborn renews his motion for limited reconsideration, again arguing that the Court's holding regarding the "cockroaches" reference was at odds with the Illinois Supreme Court's opinion in *Tuite*, 224 Ill. 2d at 513–15, and the *ABA Journal*'s interpretation of the Findings Letter. Defendants argue, however, that the motion improperly seeks reconsideration regarding the Court's ruling on a non-operative complaint. The Court agrees that the second amended

---

[2] Defendants argue, and Kilborn does not dispute, that he failed to comply with this Court's standing order requiring the parties to meet and confer before filing any contested motion. Because the Court denies the motion on other grounds, it does not reach this issue. However, the parties are on notice that further failure to comply with the Court's standing orders may result in summary denial of motions or other appropriate sanctions.

complaint superseded and voided the first amended complaint and therefore denies the motion

for limited reconsideration as moot. *See Arce v. Barnes*, No. 1:13-CV-01777, 2015 WL 736228,

at *1 (S.D. Ind. Feb. 19, 2015) ("[T]he Court denied Mr. Arce's motion to reconsider as moot

given that the second amended complaint superseded the amended complaint.").

That does not mean, however, that the Court cannot or should not address these issues

within the context of the motion to dismiss the second amended complaint. Given that the

second amended complaint also alleges that Defendants defamed Kilborn by stating that he

referred to racial minorities as "cockroaches," this issue is again a live controversy. Defendants

themselves seemingly acknowledged as such during the March 2, 2023 hearing, stating:

> With respect to the motion to reconsider . . . we would submit that
> the motion to reconsider is moot by virtue of the refiling. In any
> event, in the event we do file a motion to dismiss, we will be
> addressing the defamation counts again . . . and I anticipate that we
> would cover the issues that Mr. Kilborn is raising on the motion to
> reconsider. So for efficiency and practicality, we would think that
> denying the motion to reconsider as moot without prejudice and
> folding it all into a briefing schedule on the motion to dismiss the
> second amended complaint would get us there.

Doc. 52 at 4:19–5:6. Kilborn agreed, and the Court denied the motion without prejudice "with

the understanding that we will address this issue in the motion to dismiss" opinion. *Id.* at 5:11–

15. The Court, thus, will address these arguments in the context of the motion to dismiss.

## II.     Partial Motion to Dismiss

### A.     First Amendment Retaliation

Kilborn brings a First Amendment retaliation claim against Defendants, alleging that they

unlawfully retaliated against him for speech relating to race and workplace discrimination.

Defendants move to dismiss and argue that the Eleventh Amendment bars Kilborn from asserting

this claim against Defendants in their official capacities. Kilborn, on the other hand, argues that

this case falls under the exception laid out by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908).

The Eleventh Amendment bars suits against a state in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). "Illinois state universities are state agencies subject to Eleventh Amendment immunity." *Harden v. Bd. of Trs.*, No. 12-CV-2199, 2013 WL 6248500, at *5 (C.D. Ill. Dec. 2, 2013) (citing *Cannon v. Univ. of Health Sci./Chi. Med. Sch.*, 710 F.2d 351, 357 (7th Cir. 1983)); *see also Mutter v. Madigan*, 17 F. Supp. 3d 752, 757–58 (N.D. Ill. 2014) ("[S]tate universities, as well as their governing bodies, are protected from suit under the Eleventh Amendment." (citing *Kaimowitz v. Bd. of Trs.*, 951 F.2d 765, 767 (7th Cir. 1991))), *aff'd as modified sub nom. Mutter v. Rodriguez*, 700 F. App'x 528 (7th Cir. 2017). However, the "immunity is not absolute"; under the *Ex parte Young* doctrine, the Eleventh Amendment does not extend to claims to enjoin a state officer in his or her official capacity from engaging in prospective action that will violate federal law. *Brown v. Budz*, 398 F.3d 904, 917–18 (7th Cir. 2005) (citation omitted). To determine whether Kilborn's retaliation claim avoids the Eleventh Amendment bar, the Court must determine whether it "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 363 (2002) (citation omitted).

The Court finds that this claim falls under the *Ex parte Young* exception to the Eleventh Amendment. The Seventh Circuit has held that "expungement of personnel records[] is clearly prospective in effect and thus falls outside the prohibitions of the Eleventh Amendment." *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986); *see also Malhotra v. Univ. of Ill. at Urbana-Champaign*, 77 F.4th 532, 536 (7th Cir. 2023) ("Malhotra's official capacity claims fall within the situation contemplated by *Ex parte Young*: he seeks to compel state officials to expunge his

11

suspension from his record on grounds that their failure to do so continues to violate his [Constitutional] rights."); *Doe v. Purdue Univ.*, 928 F.3d 652, 666 (7th Cir. 2019) ("John argued that he is also entitled to an injunction ordering university officials to expunge the finding of guilt from his disciplinary record . . . John's marred record is a continuing harm for which he can seek redress."). Thus, Kilborn seeks prospective relief—in the form of an injunction ordering Defendants to expunge the Findings Letter and any related determinations from his employment record—for an allegedly ongoing violation of federal law: the "ongoing, permanent stain" on his employment record as punishment for his protected speech. Doc. 87 at 4.

Defendants make various arguments in favor of dismissal, none of which are persuasive. Although they are correct that the second amended complaint does not include specific factual allegations about Kilborn's employment record, this does not doom his retaliation claim. The Seventh Circuit is clear that the Court may "consider additional facts set forth in" a response to a motion to dismiss "so long as those facts 'are consistent with the pleadings.'" *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Here, Kilborn alleges in his response brief that his official employment record "currently includes documentation of Defendants' unconstitutional actions, such as Defendants' May 28, 2021 Findings Letter." Doc. 87 at 1. The Findings Letter made "unsupported findings of harassment" to punish Kilborn for his protected speech, and is an "ongoing, permanent stain on Kilborn's record as a university professor and employee." *Id.* at 3–4. These allegations do not conflict with those in the complaint and are sufficient at this stage of the case to plausibly allege an ongoing violation. *Malhotra*, 77 F.4th at 536; *Elliott*, 786 F.2d at 302.

Next, Defendants argue that the second amended complaint does not seek prospective relief related to expungement and that "the generic, catchall request for 'all other and further

12

relief to which this Court finds Plaintiff is entitled" is "insufficient." Doc. 89 at 4. The Seventh Circuit rejected a similar argument in *Purdue University*, where the plaintiff sought "an injunction ordering university officials to expunge the finding of guilt from his disciplinary record." 928 F.3d at 666. Although the plaintiff did not specifically request this relief in his complaint and instead used a generic, catchall phrase similar to that used in Kilborn's second amended complaint, the Seventh Circuit held that he may still be entitled to such relief. *Id.* at 666–67. This is because "Federal Rule of Civil Procedure 54(c) states that every [] final judgment [other than default judgments] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.'" *Id.* at 667. The Court therefore concludes that Kilborn may be entitled to recover injunctive relief ordering expungement even though he did not specifically request it in his complaint.

Finally, Defendants argue that "this Court held, and the Seventh Circuit affirmed, that the University's nondiscrimination policy is not unconstitutionally vague." Doc. 89 at 4. Because of this holding, they argue that "Kilborn's record cannot be 'expunged.'" *Id.* But Kilborn seeks expungement to remedy the punishment he allegedly received due to his protected speech, which he claims includes the Findings Letter and its continued inclusion in his record. Thus, regardless of whether the underlying nondiscrimination policy itself is unconstitutionally vague, Kilborn may be entitled to obtain injunctive relief to the extent that the application of that policy violated his First Amendment rights.

Because Kilborn seeks prospective injunctive relief for an allegedly ongoing violation of federal law, the Eleventh Amendment does not bar his retaliation claim.

13

### B.    Defamation and False Light

Kilborn also brings claims for defamation and false light, alleging that Defendants made and broadly disseminated false statements about him in the Findings Letter and investigation report.  To state a claim for defamation, a plaintiff must allege (1) that the defendant made a false statement concerning him and (2) that the defendant caused an unprivileged publication of that false statement to a third party, (3) which damaged the plaintiff.  *Tuhey v. Ill. Tool Works, Inc.*, No. 17 C 3313, 2017 WL 3278941, at *5 (N.D. Ill. Aug. 2, 2017).  Kilborn pleads these as defamation *per se* claims, meaning the statement's harm "is obvious and apparent on its face." *Green v. Rogers,* 234 Ill. 2d 478, 491 (2009).  A false light publicity claim requires a plaintiff to plead that (1) he was placed in a false light before the public as a result of the Defendants' actions; (2) that false light would be highly offensive to a reasonable person; and (3) Defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false.  *See Kirchner v. Greene*, 294 Ill. App. 3d 672, 682 (1998).

Kilborn may not base either his defamation or false light claims on statements that are "substantially true."  Courts characterize a statement as substantially true "where the 'gist' or 'sting' of the allegedly defamatory material is true." *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 42.  The question of substantial truth, while usually reserved for a jury, may be determined as a matter of law if "no reasonable jury could find that substantial truth had not been established." *Id.* (citation omitted) (internal quotation marks omitted).  Similarly, an opinion cannot be the basis for a defamation claim.  *See Wynne v. Loyola Univ. of Chi.*, 318 Ill. App. 3d 443, 251 (2000).  And even if a plaintiff is not required to plead facts to counter an affirmative

14

defense, he can "plead himself out of court by alleging facts which show he has no claim." *Soo Line R.R. Co. v. St. Louis Sw. Ry. Co.,* 125 F.3d 481, 483 (7th Cir.1997).

Kilborn identifies the same purportedly defamatory statements in his second amended complaint as he did in his first amended complaint. Specifically, he again alleges that Defendants falsely stated that (1) he was guilty of race-based harassment of students because his actions interfered with Black students' participation in the University's academic program; (2) he overtly intimidated and threatened students; (3) his reactions created fears of physical safety and retaliation; (4) he made inappropriate comments in class; (5) he used racial slurs; (6) he referred to racial minorities as "cockroaches;" and (7) he denounced racial minorities' participation in civil rights claims. Kilborn alleges that these statements constitute defamation *per se* because they harmed him in his profession and damaged his professional reputation.

When ruling on the motion to dismiss the first amended complaint, the Court held that Kilborn could not proceed on his defamation and false light claims based on Defendants' statements that he used racial slurs or denounced racial minorities' participation in civil rights claims. Doc. 43 at 28. Defendants argue, and Kilborn does not dispute, that nothing in the second amended complaint casts doubt on this aspect of the Court's prior ruling. Therefore, the Court again holds that Kilborn cannot proceed with his defamation and false light claims to the extent he seeks to predicate them on these comments.

The Court will now address the parties' arguments regarding the remaining allegedly defamatory statements.

15

### 1. "Cockroaches" Statement[3]

The Court previously held that Kilborn could not proceed on his claims based on Defendants' comments that he referred to racial minorities as "cockroaches." Doc. 43 at 28. This is because, as explained in the Court's opinion, the Findings Letter does not state that Kilborn referred to racial minorities as "cockroaches." Instead, the Findings Letter asserted that "it is substantiated that" Kilborn "ma[de] references to cockroaches'" during his January 23, 2020 class. Doc. 47-1 at 3.[4] This statement is substantially true, as evidenced by the transcript excerpt Kilborn included in his complaints. Doc. 9 ¶ 35 (transcript of class wherein Kilborn used the term "cockroaches"); Doc. 47 ¶ 35 (same).

Kilborn now asks the Court to reconsider this reasoning, but his arguments do not hold weight. Kilborn fundamentally misunderstands the Court's earlier ruling. The Court did not hold that the "cockroaches" statement was non-actionable because it was reasonably capable of an innocent construction; rather, the Court held that the statement was non-actionable because it was substantially true. Yet Kilborn does not argue, in either the motion for reconsideration or the response to the motion to dismiss, that this statement was not substantially true. His

---

[3] Defendants argue that Kilborn waived these arguments because "Kilborn had the opportunity to challenge" the Court's ruling on the first amended complaint "but failed to do so." Doc. 89 at 8. This is unpersuasive, as Defendants themselves acknowledged that the second amended complaint rendered the prior ruling moot. Kilborn could not have raised a mooted issue on appeal. *See May v. Sheahan*, 226 F.3d 876, 879 (7th Cir. 2000) ("If these subsequent amended complaints have, in fact, superseded [plaintiff's] original Amended Complaint, the present appeal would be moot because there would no longer be a live dispute . . . based on the allegations in the Amended Complaint."); *Falck N. Cal. Corp. v. Scott Griffith Collaborative Sols., LLC*, 25 F.4th 763, 765 (9th Cir. 2022) ("The amended complaint made the First Amended Complaint no longer operative . . . Thus, Griffith's appeal is moot because we can no longer grant any effective relief on the First Amended Complaint.").

[4] Kilborn asserts that "the Seventh Circuit held that the Findings Letter accused Kilborn of using 'cockroaches' as a reference to racial minorities." Doc. 80 at 1. Importantly, however, the Seventh Circuit did not analyze the "cockroaches" statement in the context of the defamation claim or hold that the language in the finding letter was not substantially true. *See Kilborn*, 141 F.4th at 562. Regardless, this portion of the opinion was clearly dicta, and therefore does not bind the Court. *See United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (explaining that dicta includes "any statement made by a court for use in argument, illustration, analogy or suggestion").

arguments focus solely on the innocent construction analysis and are therefore inapposite. Truth is a complete defense to defamation, meaning that the Court need not address innocent construction after having found that the statement was substantially true. *J. Maki Constr. Co. v. Chi. Reg'l Council of Carpenters*, 379 Ill. App. 3d 189, 204 (2008) (having found that the statement was substantially true, the court need not address whether it is also capable of innocent construction). Therefore, Kilborn may not proceed with his defamation and false light claims based on the "cockroaches" statement.

### 2. Previously Allowed Statements

When ruling on the motion to dismiss the first amended complaint, the Court allowed Kilborn to proceed on his defamation and false light claims only to the extent they were premised on statements that (1) he was guilty of race-based harassment of students because his actions interfered with Black students' participation in the University's academic program; (2) he overtly intimidated and threatened students; (3) his reactions created fears of physical safety and retaliation; and (4) he made inappropriate comments in class. Defendants again move to dismiss the defamation and false light claims premised on these statements, arguing that they are all non-actionable statements of opinion.

As an initial matter, the Court addresses Kilborn's assertion that Federal Rule of Civil Procedure 12(g) bars this argument because Defendants did not raise it in their motion to dismiss the first amended complaint. Federal Rule of Civil Procedure 12(g) "requires litigants to consolidate certain dismissal arguments in a single motion." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). However, Rule 12(g) is subject to the exception in Rule 12(h)(2), which "makes it clear that a litigant need not consolidate all failure-to-state-a-claim arguments in a

17

single dismissal motion." *Id.* Therefore, Defendants' arguments are not barred and the Court may properly consider them.

Whether these statements are actionable is a close call. In determining whether a statement presents a fact or an opinion, the Court considers (1) whether the words have a precise and readily understood meaning, (2) whether the context negates the impression that the speaker intended to convey a fact, and (3) whether the statement can be objectively verified. *Hadley v. Doe*, 2014 IL App (2d) 130489, ¶ 36. Upon first impression, the descriptions of Kilborn's conduct as inappropriate, threatening, and intimidating seem relatively subjective. As Defendants point out in their motion, some courts have found similar language to be non-actionable opinions. *See, e.g.*, *Wynne*, 318 Ill. App. 3d at 452 (statement that plaintiff made telephone calls that "seemed inappropriate" were statements of opinion); *Pitale v. Holestine*, No. 11 C 00921, 2012 WL 638755, at *7 (N.D. Ill. Feb. 27, 2012) (statements accusing plaintiff of "inappropriate" practices are non-actionable opinion because they are "broad and could have multiple meanings").

However, the context within which the speakers made those statements was critical. In *Pitale*, the court clarified that the statements about plaintiff's "inappropriate" actions were "broad and could have multiple meanings *because they do not identify specific actions and management practices*." 2012 WL 638755, at *7 (emphasis added). The court further explained that the statements also "lack[ed] the specificity necessary for verification because they *do not reference anything specific that could be investigated* and would require examining all aspects of Pitale's employment." *Id.* (emphasis added). And in *Wynne*, the defendant clarified that her statements were "simply a summary of [her] own feelings about [her] experiences." 318 Ill. App. 3d at 452.

18

That is not the case here. The Findings Letter presents these statements in the context of objectively verifiable facts about Kilborn's conduct. OAE specified in the letter that their conclusions were based on an investigation that involved interviewing Kilborn and UIC law school community members and reviewing relevant documentation, including recordings of Kilborn's class sessions. Doc. 47-1 at 2–3. The Findings Letter details these investigatory findings in great depth, providing specific examples of the allegedly "inappropriate" comments made by Kilborn. OAE then compared their findings to UIC's policies, which led to the conclusion that Kilborn was guilty of race-based harassment. These statements are not expressed as opinions and the truth or falsity of these statements can be objectively verified by reviewing this same evidence and applying it to the policies at issue.

This case is therefore more like *Wesbrook v. Ulrich*, where defendants created memos and letters stating that employees called plaintiff's management style "retaliatory," "coercive," "threatening," "abusive," and "contentious." 90 F. Supp. 3d 803, 811–13 (W.D. Wis. 2015). The court rejected defendants' arguments that these statements were non-actionable because the statements all "resulted from a systematic data collection effort based on MCRF employee testimony that distinguishes [them] from pure opinion." *Id.* at 813. Because this evidence was "capable of being confirmed," the court denied the motion to dismiss. *Id.* at 811; *see also Gerrard v. Garda*, No. 08-CV-1146, 2009 WL 269028, at *3 (C.D. Ill. Jan. 30, 2009) (statements that plaintiff violated the sexual harassment policy and acted in an "intimidating" and "threatening" manner were actionable because "in the context of a sexual harassment policy violation, it is a relatively straightforward process to compare evidence of a person's conduct to conduct which is prohibited by objective policy guidelines"); *Eash v. Cnty. of York*, 450 F. Supp. 3d 568, 582 (M.D. Pa. 2020) ("The statement that Eash committed sexual harassment is not

19

expressed as an opinion, and its truth or falsity is readily capable of being determined by applying Eash's underlying conduct to the policy at issue.").

Because these statements can reasonably be construed as objectively verifiable, the Court cannot say, as a matter of law, that they are non-actionable opinions. Kilborn may therefore proceed with his defamation and false light claims based only on these previously allowed statements.

## CONCLUSION

For the forgoing reasons, the Court denies Kilborn's renewed motion for limited reconsideration [80] and grants in part and denies in part Defendants' motion to dismiss [82]. The Court denies Defendants' motion to dismiss Kilborn's First Amendment retaliation claim to the extent it is asserted against Defendants in their official capacities. The Court grants in part and denies in part Defendants' motion to dismiss the defamation and false light claims, holding that Kilborn may proceed only to the extent that these claims are based on statements that (1) he was guilty of race-based harassment of students because his actions interfered with Black students' participation in the University's academic program; (2) he overtly intimidated and threatened students; (3) his reactions created fears of physical safety and retaliation; and (4) he made inappropriate comments in class.

Dated: February 9, 2026

_____
SARA L. ELLIS
United States District Judge

20